2022-2204

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**
_____

TAU-KEN TEMIR, LLP

v.

UNITED STATES

Appeal from the United States Court of International Trade No. 21-173,
Judge Leo M. Gordon

PRINCIPAL BRIEF OF TAU-KEN TEMIR, LLP; MINISTRY OF TRADE AND
INTEGRATION OF THE GOVERNMENT OF THE REPUBLIC OF
KAZAKHSTAN; AND JSC NMC TAU-KEN SAMRUK, PLAINTIFFS-
APPELLANTS

Counsel to Tau-Ken Temir, LLP; Ministry of
Trade and Integration of the Government of
the Republic of Kazakhstan; and JSC NMC
Tau-Ken Samruk

Peter Koenig, Esq.
Squire Patton Boggs
2550 M Street NW
Washington DC 20236
202 669 1901
peter.koenig@squirepb.com

February 28, 2023

## CERTIFICATE OF INTEREST PER FEDERAL CIRCUIT RULE 47.4

See Exhibit 1 hereto

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

ARGUMENT ...................................................................................................... 6

    I.    COMMERCE SHOULD ACCEPT TKT'S QUESTIONNAIRE ........ 6

        A.    Commerce Should Have Fully Accepted TKT's Initial
              Two Extension Requests ............................................................ 6

        B.    Commerce Should Have Accepted TKT's Third
              Extension Request .................................................................... 8

        C.    Commerce Fails To Apply Any Standard, Much Less A
              Supportable One, To Deny The TKT Extension Request ....... 13

            1.    Commerce Interest In The Finality Of Its Investigation ... 14

            2.    The Burden "In The Investigation" To Consider The
                 Information ........................................................................ 14

            3.    Whether The Information Will Increase The Accuracy Of
                 The Calculated Subsidy Margin ........................................ 16

        D.    As Applied, Commerce's Regulation Violates The
              CVD/AD Statute ...................................................................... 17

        E.    Commerce Speculation Is Unlawful ....................................... 19

        F.    Commerce Violates Its Practice .............................................. 21

        G.    The Trade Court Opinion Erroneously Affirms The
              Commerce Decision For Reasonst Commerce Did Not
              State ....................................................................................... 32

    II.    COMMERCE UNLAWFULLY ENDED THE INCENTIVE
          TO COOPERATE ............................................................................ 35

    III.    COMMERCE APPLIED AN UNLAWFUL PUNITIVE CVD
          RATE ............................................................................................... 37

    IV.    CONCLUSION AND RELIEF SOUGHT ....................................... 39

010-9233-8739/1/AMERICAS

# TABLE OF AUTHORITIES

Page(s)

**STATUTES**

19 U.S. C 706(2)(A) ................................................................ 4

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................ 3

19 U.S.C. § 1677e ................................................................ 36

28 U.S.C. § 1295(a)(5) ........................................................... 1

28 U.S.C. § 1581(c) ............................................................... 1

**COMMERCE REGULATIONS**

19 CFR § 351.302 ................................................................ 10

19 CFR § 351.303 ................................................................ 10

Commerce, <u>Modification of Regulation Regarding the Extension of Time Limits,</u>
78 FR 3367 (Jan. 16, 2013) ................................... 17, 31, 32

Commerce, <u>Extension Of Time Limits, Final Rule,</u> 78 Fed. Reg.
57,790, 57793 (Sept. 20, 2013) .................... 9, 10, 12, 16, 17

**COURT CASES**

<u>Anderson v. U.S. Sec'y of Agric.</u>,
462 F. Supp. 2d 1333 (Ct. Int'l Trade 2006) ..................... 4

<u>Artisan Manufacturing Corp. v. United States,</u>
978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ................... 35

<u>Auto Telecom Co., Ltd. v. United States,</u>
765 F. Supp. 1094 (Ct. Int'l Trade 1991) ........................ 38

<u>Böwe–Passat v. United States,</u>
17 CIT 335 (1993) ............................................................ 32

<u>Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,</u>
419 US 281 (1974) ............................................................. 4

010-9233-8739/1/AMERICAS

Brenner v. Dept. of Veteran Affairs,
  990 F.3d 1313 (Fed. Cir. 2021) .............................................................. 5

Celik Halat Ve Tel Sonayi A.S. v. United States,
  557 F. Supp 3d 1348 (Ct. Int'l Trade 2022) ............................... 20, 36

Ceramica Regiomontana v. United States,
  10 CIT 399 (1986) ..................................................................................... 6

Christensen v. Harris Cty.,
  529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) .................................. 11

Clearon Corp. v. United States,
  Slip Op. 20- 141 (Ct. Int'l Trade 2020) ................................................. 34

CP Kelco v. United States,
  949 F.3d 1348 (Fed. Cir. 2020) .............................................................. 4

CS Wind Vietnam Co. v. United States,
  832 F. 3d. 1367 1373 (Fed. Cir. 2016) ................................................. 3

DAK Americas LLC v. United States,
  456 F. Supp. 2d 1340 (Ct. Int'l Trade 2020) ....................................... 29

Dongtai Peak Heavy Indus. v. United States,
  777 F. 3d 1343 (Fed. Cir. 2015) ...................................... 23, 24, 30, 32

Dupont Teijin Films USA, LP v. United States,
  407 F.3d 1211 (Fed. Cir. 2005) .............................................................. 3

Dupont Teijin Films v. United States,
  Slip Op. 13-11 (Ct. Int'l Trade 2013) ................................................... 5

Essar Steel Ltd. v. United States,
  678 F.3d 1268 (Fed. Cir. 2012) ............................................................ 33

F.11i De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,
  216 F.3d 1027 (Fed. Cir. 2000) ....................................................... 33, 36

Glycine & More, Inc. v. United States,
  880 F.3d 1335 (Fed. Cir. Jan. 23, 2018) ............................................ 11

Grobest & I-Mei Indus. (Viet.) Co. v. United States,
  815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ..................................... 13

010-9233-8739/1/AMERICAS

Guizhou Tyre Co. v. United States,
  415 F. Supp. 3d 1402 (Ct. Int'l Trade 2019) ........................................ 34

Julin Forest Industry Jinqiao Flooring Group Co. Ltd. vs. United
  States, Slip Op. 23-14 (Ct. Int'l Trade 2023) ..................................... 15

Kirovo Chepetsky Khimichesky Kombinat, JSC v. United States,
  58 F. Supp. 3d 1397 (Ct. Int'l Trade 2015) ........................................... 5

Lucent Techs., Inc. v. Gateway, Inc.,
  580 F.3d 1301 (Fed. Cir. 2009) ............................................................. 4

Marmen Inc. v. United States,
  Slip Op. 21-148 (Ct. Int'l Trade 2021) ................................................ 13

Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile
  Insurance Co.,
  463 U.S. 29 (1983) ........................................................................... 4, 31

Nippon Steel Corp. v. United States,
  337 F. 3d 1373 (Fed. Cir. 2003) ..................................................... 19, 34

Nippon Steel Corp. v. United States,
  458 F.3d 1345 (Fed. Cir. 2006) ............................................................. 4

NLRB v. Wash. Star Co.,
  732 F.2d 974 (D.C. Cir. 1984) (per curiam) ...................................... 29

NTN Bearing Corp. v. United States,
  74 F.3d 1204 (Fed. Cir. 1995) .................................................... 5, 13, 17

Prime Time Corn. LLC v. United States, 396 F. Supp. 3d 1319 (Ct.
  Int'l Trade 2019) ................................................................................. 31

Pro-Team Coil Nail Enterprise Inc. v. United States,
  419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ...................................... 17

Qingdao SeaLine Trading Co., Ltd. v. United States,
  766 F.3d 1378 (Fed. Cir. 2014) ..................................................... 29, 30

SKF USA Inc. v. United States,
  263 F. 3d. 1369 (Fed. Cir. 2001) ......................................................... 28

Skidmore v. Swift & Co.,
    323 U.S. 134 (1944) ............................................................................ 29

Solar World Americas Inc. v. United States,
    962 F. 3d. 1351 (Fed. Cir. 2020) ......................................................... 4

Sunpower Corp. v. United States,
    179 F. Supp. 3d 1286 (Ct. Int'l Trade 2016) ....................................... 4

Tau Ken Temir LLP et. al. vs. United States et. al., Slip Op. 22-82, (Ct.
    Int'l Trade July 14, 2022) .......................................................... *passim*

Timken U.S. Corp. v. United States,
    434 F.3d 1345 (Fed. Cir. 2006) ................................................. 13, 18

West Virginia v. EPA,
    142 S. Ct. 2587 (2022) ...................................................................... 15

Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,
    716 F.3d 1370 (Fed. Cir. 2013) ........................................................ 36

**AGENCY DECISIONS**

Silicon Metal from Kazakhstan: Preliminary CVD Determination, 85
Fed. Reg. 78,121, 78,122 (Dep't of Commerce Dec 3, 2020) ................................. 6

Silicon Metal from the Republic of Kazakhstan: Final CVD
    Determination, Inv. C-834-811 ................................................. *passim*

010-9233-8739/1/AMERICAS

# FEDERAL CIRCUIT RULE 47.5 STATEMENT OF RELATED CASES

There is no other appeal in or from this civil action or proceeding in the lower court or body that was previously before this or any other appellate court.

# JURISDICTION STATEMENT

Per its Rule 28(a)(5), this Court's jurisdiction rests on the following:

The Trade Court possessed jurisdiction to entertain this action per 28 U.S.C. § 1581(c).

The statutory basis for this Court's jurisdiction to entertain this appeal is 28 U.S.C. § 1295(a)(5).

The Trade Court entered its final judgment on July 14, 2022. Per Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure, this appeal was timely filed on September 11, 2022.

# STATEMENT OF ISSUES

Whether the U.S. Department of Commerce's ("Commerce") rejection of Plaintiffs-Appellants TKT extension request and questionnaire response was unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Whether the use of adverse facts was unsupported by substantial evidence or otherwise not in accordance with law.

010-9233-8739/1/AMERICAS

## STATEMENT OF CASE

Plaintiff-Appellants Tau Ken Temir LLP ("TKT"), Ministry ("Ministry") of Trade and Integration of the Government of the Republic of Kazakhstan ("GOK") and JSC NMC Tau-Ken Samruk ("TKS") (TKT and TKS also collectively referred to as TKT) contest the February 26, 2021 U.S. Department of Commerce ("Commerce") <u>Final Determination in the Countervailing Duty (CVD) Investigation Silicon Metal from the Republic of Kazakhstan</u>, Inv. C-834-811, 86 Fed. Reg. 11,725 ("<u>Commerce Final Determination</u>") and its accompanying February 22, 2021 Issues and Decision Memorandum,[1] Commerce Access Bar Code 4091341, PD354[2] ("<u>Commerce Decision Memorandum</u>").[3] The U.S. Court of International Trade ("Trade Court") sustained the <u>Commerce Final Determination</u> in <u>Tau Ken Temir LLP et. al. vs. United States et. al.</u>, Slip Op. 22-82, July 14, 2022 ("<u>Trade Court Opinion</u>"), which we also contest.

Kazakh silicon metal producer TKT was subject to a Commerce CVD investigation whether the Kazakh Government subsidizes Kazakh silicon metal exports to the United States. TKT and the Ministry participated in the investigation,

---

[1] Available at https://enforcement.trade.gov/frn/summary/kazakhstan/2021-04032-1.pdf.(last visited this date).

[2] PD354 is document #354 of the index to the Commerce public administrative record filed on June 1, 2021, filed with the Trade Court. ECF 22, document #22 in the Trade Court docket.

[3] ACCESS is Commerce's public website record where Commerce investigation documents and decisions are filed. <u>Trade Court Opinion</u> at 5.

answering Commerce questionnaires. Defendant-Appellees U.S. silicon metal producers Mississippi Silicon LLC and Globe Specialty Metals, Inc. (collectively, "Mississippi Silicon") filed the CVD petition that led to this Commerce investigation and participated therein.

## SUMMARY OF ARGUMENT

TKT followed Commerce regulations in its request for an extension to answer the Commerce Subsidy Questionnaire. Thus, the TKT extension requests to answer the Subsidy Questionnaire should have been granted. Further, Commerce imposed adverse inferences on TKT and the Kazakh Government, where substantial evidence was lacking that they did not act to the best of their ability, the statutory condition for adverse inferences.

## REVIEW STANDARD

When reviewing a final Commerce CVD decision, this Court applies the same standard of review as the Trade Court. Dupont Teijin Films USA, LP v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005). By statute, Commerce CVD decisions must be supported by substantial evidence, considering the record as a whole, and otherwise be in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i); CS Wind Vietnam Co. v. United States, 832 F. 3d. 1367 1373 (Fed. Cir. 2016).[4] Speculation

---

[4] As to the issues in this brief, the trade statute covering countervailing duty and antidumping (AD) is the same.

is not substantial evidence. <u>Lucent Techs., Inc. v. Gateway, Inc.</u>, 580 F.3d 1301, 1327 (Fed. Cir. 2009).

Per this standard, Commerce decisions must be reasonable. <u>Nippon Steel Corp. v. United States</u>, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Commerce must "examine the relevant data and articulate a satisfactory explanation for its action," <u>Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.</u>, 463 U.S. 29, 43 (1983), including "a 'rational connection between the facts found and the choice made.'" <u>Id</u>.

Commerce decisions also cannot be arbitrary and capricious. 19 U.S. 706(2)(A); <u>Solar World Americas Inc. v. United States</u>, 962 F. 3d. 1351, 1359 n. 2 (Fed. Cir. 2020). A decision is unlawfully arbitrary and capricious when it (a) "fails to consider an important aspect of the problem" (<u>State Farm</u>, 463 U.S. at 43; <u>Sunpower Corp. v. United States</u>, 179 F. Supp. 3d 1286, 1295 (Ct. Int'l Trade 2016)), or (b) treats "similar situations in dissimilar ways." <u>Anderson v. U.S. Sec'y of Agric.</u>, 462 F. Supp. 2d 1333, 1339 (Ct. Int'l Trade 2006).

Commerce's decision path must "reasonably be discerned, … the required explanation must reasonably tie the contested determination to the statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding." <u>CP Kelco v. United States</u>, 949 F.3d 1348, 1356 (Fed. Cir. 2020); <u>Bowman Transp., Inc. v. Arkansas-Best Freight Sys.</u>,

010-9233-8739/1/AMERICAS

Inc., 419 US 281, 286 (1974). Commerce's exercise of its discretion must be reasonable in light of its statutory mandate to calculate accurate subsidy margins – Commerce abuses its discretion when its decision is "clearly unreasonable, arbitrary, or fanciful." NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995).

"The enforcement of . . . deadlines is an exercise of Commerce's discretion, and should therefore be examined to ensure against abuse of discretion." Kirovo Chepetsky Khimichesky Kombinat, JSC v. United States, 58 F. Supp. 3d 1397, 1411 (Ct. Int'l Trade 2015). When considering whether Commerce's application of a non-statutory deadline in a given case is an abuse of discretion, Commerce's discretion "is bounded at the outer limits by the obligation to carry out its statutory duty of determining {CVD} margins as accurately as possible." Dupont Teijin Films v. United States, Slip Op. 13-11 at 13 (Ct. Int'l Trade 2013). An agency abuses its discretion where, inter alia, `the decision . . . represents an unreasonable judgment in weighing relevant factors.'" Brenner v. Dept. of Veteran Affairs, 990 F.3d 1313, 1324 (Fed. Cir 2021).

"Of course, this Court will not allow an agency, under the guise of lawful discretion, to contravene or ignore the intent of the legislature or the guiding purpose of the statute. . . . Thus, in reviewing a Commerce CVD decision, the court must ensure that" Commerce "methodology is a reasonable means of assessing the

net benefit received as a result of the illegal subsidy." <u>Ceramica Regiomontana v. United States</u>, 10 CIT 399, 405 (1986).

## ARGUMENT

## I. COMMERCE SHOULD ACCEPT TKT'S QUESTIONNAIRE

### A. Commerce Should Have Fully Accepted TKT's Initial Two Extension Requests

TKT timely filed (without extension request) answers to Commerce's first two questionnaires, identifying five cross-owned affiliates to answer Commerce questionnaires on any government subsidies.[5]  Commerce then issued to these companies its Subsidy Questionnaire as to any government subsidies.[6]

Well before the deadline to answer the Subsidy Questionnaire, TKT counsel requested a <u>two-week</u> extension to answer, noting the huge information requested, the individuals involved were new to the CVD process and all had to respect COVID travel and stay at home restrictions, making questionnaire response preparation difficult, all good cause for an extension.  Without explanation, Commerce rejected the two-week extension request, granting a week.  Then, again well before that

---

[5] For record cites to this paragraph, see TKT questionnaire responses dated August 6, August 18 and September 8, 2020, PD 32, 35 & 46, ACCESS barcodes 4012611-01, 4017285-01 and 4023436-01; TKT Case Brief Comments On The Preliminary Determination, Jan. 4, 2021 at 8, ACCESS barcode 4071221-01 & 02, PD 337-338. Accord <u>Trade Court Opinion</u> at 4.

[6] Commerce Preliminary Determination, <u>Silicon Metal from Kazakhstan</u>, 85 Fed. Reg. 78,121, 78,122 (Dep't of Commerce Dec 3, 2020), ACCESS barcode 4062128-01, PD 326.

-6-

initially granted one-week extended date, TKT counsel requested a second extension to September 17, 2020 for the same reasons as indicated in the first extension request. Commerce again rejected the request, granting only to September 15, 2020.[7]

Commerce should not have denied the above full extension requests. That denial is not supported by substantial evidence. Indeed, Commerce provided no evidence (much less substantial evidence) or explanation for the denial. In contrast, Commerce granted itself <u>4 months</u> extension for COVID reasons when Commerce needed the time. <u>Calik Halat ve Tel Sonayi AS v. United States</u>, Slip Op 22-12 at 24 and Slip Op 22-13 at 33 (Ct. Int'l Trade Feb. 15, 2022) (Commerce granting itself extensions as to COVID and not so much for respondents unlawful).

If the full extension in the first two extension requests had been granted, TKT's filed Subsidy Questionnaire response here would have been timely and accepted, not rejected.

---

[7] For record cites to the above, see Commerce Nov. 19, 2020 Letter, ACCESS barcode 4055736-01, PD 319; TKT Case Brief Comments On The Preliminary Determination, Jan. 4, 2021, at 11, ACCESS barcode 4071221, PD 337-338; TKT Extension Request, Aug. 25, 2020, ACCESS barcode 4019325, PD 39; Commerce Response to Extension Request, Aug. 27, 2020, ACCESS barcode 4020151-01, PD 41; TKT Extension Request, Sept. 9, 2020, ACCESS barcode 4023768, PD 47; Commerce Partial Granting Of Extension Request, Sept. 9, 2021, Bar Code 4024197, PD 49; <u>Trade Court Opinion</u> at 13-14.

010-9233-8739/1/AMERICAS

## B. Commerce Should Have Accepted TKT's Third Extension Request

TKT worked hard to answer the questionnaires. They were finally done and received by TKT's counsel the morning (10AM) of the filing deadline. Counsel, experienced in this matter (<u>Trade Court Opinion</u> at 14-15), felt received within the time to meet the 5:00PM deadline.

But then unanticipated technical file issues emerged – *e.g.*, in the assimilation of the response, file corruption, creating the requisite searchable PDFs of foreign language documents, etc.[8] These issues had not occurred as to received files from TKT as to the first two filings, further indicating that they were unanticipated. And while counsel may be experienced in <u>CVD</u>, these were unanticipated <u>computer</u> document issues. When it became apparent in the finalization of the received questionnaire for filing that the 5:00PM deadline could not be met and that an extension was needed, TKT counsel immediately filed (at 3:50PM of the due date) on Commerce ACCESS for internet filings a stand-alone written third extension request for one more day to answer the Subsidy Questionnaire. The <u>Trade Court Opinion</u> at 4-6 correctly said that:

---

[8] TKT Case Brief Comments On Preliminary Determination, Jan. 4, 2021 at pages 9 & 12, Bar Code 4071221, PD 337-338; Commerce's Letter and Memorandum, Rejection Of Submission, Oct. 1, 2020, Bar Code 4035242, PD 238; TKT Extension Request, Sept. 15, Bar Code 4027065-01, PD 220; TKT Extension Request, Sept. 17, 2020, Bar Code 4027935-01, PD 224. Cf. Trade Court Opinion at 11.

The parties agree that {TKT} filed a third request for an extension of time on a <u>timely</u> basis. (emphasis added)

The <u>Trade Court Opinion</u> at 10-11 incorrectly states that TKT counsel tried to file at 3:46 PM on September 15, 2023 and that:

Counsel indicated that it experienced technical/computer problems when initially attempting to file on ACCESS; yet again, it continued to believe that these problems were fixable before the 5:00 pm filing deadline on September 15th.

Actually, the <u>Trade Court Opinion</u>'s cited record does not say that. And no party argued that. At no point did TKT counsel try to file TKT's questionnaire response by 5:00 PM September 15, 2020 filing deadline. The reason was that counsel was working to address the unanticipated technical computer issues as to the documents, that preceded then seeking to file them on Commerce ACCESS. That was the core issue. Commerce ACCESS does not help with questionnaire response document preparation. The claim that TKT counsel did not call ACCESS (<u>Trade Court Opinion</u> at 14) thus misses the mark. Anyway, the full extent of the problem was not known until after business hours when Commerce ACCESS was closed. Actually, TKT counsel did not start to file the submission until 5:31AM September 16. <u>Trade Court Opinion</u> at 14. There was no one to call as Commerce ACCESS was closed.

By TKT filing of the extension request on Commerce ACCESS, the many involved Commerce officials immediately learned of the extension request.

Commerce, <u>Extension Of Time Limits, Final Rule,</u> 78 Fed. Reg. 57,790, 57793

(Sept. 20, 2013) ("<u>Extension Of Time Limits</u>").  Commerce regulations do not say

to do more than that because Commerce ACCESS is designed to immediately alert

all Commerce officials simultaneously (<u>Id.</u>), many of whom the respondent may not

even know are working on the case, or at that point in time.  No phone call can do

that, which may be why Commerce regulations do not say make a phone call and

rather say file an extension request electronically on Commerce ACCESS for

immediate notification to all.

Commerce regulation 19 CFR § 351.302 (c) states that "before the applicable

time limit" to answer a Commerce request "expires, a party may request an

extension" via filing a written request on Commerce's internet site ACCESS for

filing documents.  Any extension "request must be in writing, in a separate, stand-

alone submission, filed consistent with § 351.303 {*e.g.*, on ACCESS}, and state the

reasons for the request." In its <u>Extension Of Time Limits</u>, 78 Fed. Reg. at 57791-92,

Commerce explains that its regulation 19 CFR § 351.302:

> considers that an extension request is untimely if it is filed after the
> applicable time limit expires. Therefore, we have determined that the
> term untimely in the final rule is defined as an extension request that is
> received after the applicable time limit expires

to answer the questionnaire.  Similarly, the Commerce Initial Questionnaire Cover

Letter at 3, July 23, 2020, ACCESS barcode 4005169-01 PD 27 to TKT states that

any extension request must "be communicated in writing to Commerce; otherwise the original deadline will apply."

Following Commerce's regulation, TKT counsel did all the above outlined in Commerce's regulations to perfect a timely one-day final, third extension request, as soon as knew that more time was needed, and how much – *i.e.*, at about 3:50 p.m. of the September 15, 2020 due date.

Commerce and the <u>Trade Court Opinion</u> (at 14) say that TKT counsel is experienced. They do not explain the significance of that comment. If they mean that counsel was aware of the above regulation, it supports our argument here.

> Where the regulation
>
> is clear, no deference {to Commerce claims} is warranted. Deferring to Commerce's position "would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." <u>Christensen v. Harris Cty.</u>, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (unambiguous regulation could not be rewritten by agency under guise of interpreting regulation and judiciary owed no deference to agency interpretation).

<u>Glycine & More, Inc. v. United States</u>, 880 F.3d 1335, 1345 (Fed. Cir. Jan. 23, 2018); <u>Hontex Enterprises, Inc. v. United States</u>, Slip Op. 03-17 at 41 (Ct. Int'l Trade Feb. 13, 2003) (Commerce's "incompatible departure from the clear meaning of the regulation" is unlawful.)

Counsel was able to file the TKT several thousand page questionnaire response by 10:11AM the next morning, one hour and forty-one minutes after

Commerce's 8:30AM opening for business the next business day after the deadline, and before 5:00PM that day requested in the one-day extension request. Trade Court Opinion at 5 (TKT "was unable to complete the entirety of the filing until 10.11am on September 16th, one hour and 41 minutes beyond the 8:30 am deadline.")

Two weeks later Commerce said that:[9]

> Commerce was unable to respond to this {TKT extension} request. Therefore, in accordance with the Extension of Time Limits notice, where Commerce is unable to notify the party requesting an extension of the disposition of that request by 5:00 p.m., the submission would be due by the opening of business, i.e., 8:30 a.m., on the next work day. {we call this Next Day 8:30AM}

Commerce's Letter and Memorandum, Rejection Of Submission, Oct. 1, 2020. ACCESS barcode 4035242, PD 238; Commerce Decision Memorandum at Cmt 1 at 15. Commerce said that since the questionnaire response was filed at 10:41am, and not 8:30AM, it was untimely and so rejected.[10]

Commerce and the Trade Court Opinion (at 14) say that TKT counsel did not attempt to contact Commerce. In fact, TKT counsel followed Commerce's

---

[9] Commerce's Letter and Memorandum, Rejection Of Submission, Oct. 1, 2020. Access Bar Code 4035242, PD 238.

[10] Commerce also initially claimed TKT's questionnaire response was incomplete. Commerce's Letter and Memorandum, Rejection Of Submission, Oct. 1, 2020 at 1. ACCESS Bar Code 4035242, PD 238. Id. at 1. TKT replied that that claim was unsupported by substantial or any evidence and indeed wrong. TKT Comment on Preliminary Determination, Jan 4, 2021 at 20-25, ACCESS barcode 4071221-01 and 4071221-02, PD 337-338. Commerce did not answer the specific record facts and argument of TKT's reply except to say that incompleteness was not the basis for rejection of the Subsidy Questionnaire response. See Commerce Decision Memorandum, Comment 1 at 20-21; Trade Court Opinion at 15.

-12-

regulation and questionnaire, which say to do an ACCESS filing, and does not say to call. That makes sense as the ACCESS filing immediately notifies all concerned at Commerce. See above. Anyway, as Commerce admits above, no one was available at Commerce ("Commerce was unable to respond" to the ACCESS request that went to many).

The <u>Trade Court Opinion</u> at 14-15 just states that Commerce granted multiple extensions but fails to address the above. The statement just begs the question, to which we further address as follows.

**C.** **Commerce Fails To Apply Any Standard, Much Less A Supportable One, To Deny The TKT Extension Requests**

It is well-established that the factors that Commerce decisions must consider as to whether to reject filings as untimely are: (1) Commerce's interest in ensuring finality as to its final (not preliminary) decision, (2) the burden on Commerce "in the investigation" in particular (not more broadly) to consider the CVD questionnaire response to calculate the CVD/AD margin and (3) whether the information will increase the accuracy of the calculated subsidy margins; Commerce failure to consider all these factors is an unlawful abuse of discretion. <u>NTN Bearing Corp. v. United States</u>, 74 F.3d 1204, 1208 (Fed. Cir. 1995); <u>Timken U.S. Corp. v. United States</u>, 434 F.3d 1345 (Fed. Cir. 2006); <u>Marmen Inc. v. United States</u>, Slip Op. 21-148 at 15 (Ct. Intl Trade 2021); <u>Grobest & I-Mei Indus. (Viet.) Co. v. United States</u>, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012), and the many cases cited therein.

-13-

Commerce effectively did not consider, much less discuss, any of these three factors as to whether to accept TKT's three extension requests as to the Subsidy Questionnaire response, rendering Commerce's decisions thereon unlawful.

Consider each factor:

1.    **Commerce's Interest In The Finality Of Its Investigation**

This information in the Subsidy Questionnaire was submitted before Commerce's final determination. So this factor was met to accept the questionnaire response.

2.    **The Burden "In The Investigation" To Consider The Information**

Commerce never says that fully granting TKT's three extension requests would have hindered it "in its investigation" to meeting its statutory mandate to calculate the accurate subsidy margin in this investigation involving Kazakh silicon metal. Sufficient time remained to complete the investigation and issue a final decision. At the time TKT submitted its Subsidy Questionnaire response within the period for which TKT had requested an extension, Commerce's final decision was 158 days away (preliminary decision was 73 days away).

Rather, the Commerce Final Determination abstractly says that:

Commerce establishes deadlines so that it can conduct this (and its numerous other trade remedy proceedings) in an efficient manner within its statutory and regulatory deadlines. Therefore, it is critical that parties file documents by the established deadline, or timely request an extension of such a deadline such that Commerce can provide a considered response. Timely filings and timely extension requests contribute to Commerce's efficient administration

-14-

of the numerous cases before it and the AD/CVD laws. Conversely, untimely filings and last-minute extension requests hinder the efficient conduct of our proceedings, and require that Commerce devote additional time and resources to addressing such untimely filings and last-minute requests. Additionally, although the burden associated with a single late-filed questionnaire response may be perceived as minimal, that burden is not minimal when aggregated across all proceedings. Accordingly, for the efficient conduct of its proceedings, it is critical that parties adhere to the deadlines established by Commerce.

Commerce does not say the above in the many other cases where have been untimely or last minute extension requests or questionnaire responses and yet Commerce still accepts the extension request and questionnaire, which belies the above claim. See below. It is thus unlawfully arbitrary and capricious to apply the above <u>broad</u> statement to TKT in particular and perhaps an isolated few others, and not others similarly situated. This claimed reason is also contrary to the above discussed court decisions which solely focus on Commerce's burden "in the investigation" at hand, not abstractly and generally.

Further, Commerce can and does decide extension requests after the deadline, as convenient. See below cited decisions. So there is no such burden that Commerce claims above. In fact, here, Commerce decided TKT's one-day extension request two weeks after it was filed.

More fundamentally, the ultimate source for the development of agency policy that affects rights is legislative, the Congress. *West Virginia v. EPA,* 142 S. Ct. 2587, 2609 (2022) ("We presume that `Congress intends to make major policy decisions

-15-

itself, not leave those decisions to agencies"); *Whitman v. Am. Trucking Ass 'ns,* 531 U.S. 457, 468 (2001) (Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions."); <u>Julin Forest Industry Jinqiao Flooring Group Co. Ltd. vs. United States</u>, Slip Op. 23-14 at 33-36 (Ct. Int'l Trade Feb. 9, 2023). Here, the statutory mandate is to accurately calculate CVD/AD margins within the statutory deadlines set for an investigation. Congress did not say that Commerce may elect to not meet its statutory obligations to save money or for its own convenience. Commerce provides no support for such an implicit assumption in its claim.

3. **Whether The Information Will Increase The Accuracy Of The Calculated Subsidy Margin**

In rejecting the TKT Subsidy Questionnaire response, Commerce did not have information with which to calculate the subsidy margin and thus used adverse inferences not based on data as to the actual subsidy amounts. Accepting the TKT Subsidy Questionnaire response as to any actual subsidies received would have increased the accuracy of the calculated subsidy margin.

For the above reasons, the Subsidy Questionnaire Response should have been accepted per long-established court precedent. Neither Commerce nor the <u>Trade Court Opinion</u> address the above.

**D.    As Applied, Commerce's Regulation Violates The CVD/AD Statute**

Commerce's failure to fully grant an of TKT's timely extension requests and consequent rejection of TKT's filed questionnaire response violates Commerce's <u>Extension Of Time Limits</u> regulation (78 Fed. Reg. at 57795). That rule states that, notwithstanding "Next Day 8:30AM", giving the respondent until 8:30AM the next day to make the filing, if Commerce fails to answer an extension request by the deadline.  But Commerce still "will continue to grant extensions of time limits to the extent that they are warranted and deadlines for the segment permit." <u>Id.</u> In other words, Commerce can decide extension requests made close to the deadline after the deadline, and does.  See below.

Further, in this spirit, Commerce states as to its <u>Extension Of Time Limits</u> (at 57795-96) that Commerce will not adopt rules that are "inflexible to permit" Commerce "to effectively and fairly administer the AD and CVD laws" – *i.e.*, Commerce will not adopt rules that unnecessarily hamstring/prevent Commerce to achieve its statutory mandate to calculate accurate subsidy (or dumping) margins. Commerce, <u>Modification of Regulation Regarding the Extension of Time Limits</u>, 78 Fed. Reg. 3367, 3370 (Dep't of Commerce Jan. 16, 2013).

But that is what Commerce's initial rejection of TKT's questionnaire response did, stating that, since Commerce did not decide TKT's extension request by the 5:00PM deadline, then Commerce is inflexibly boxed in by its regulation, where the

deadline was 8:30AM the next day.  When this legal error was noted, Commerce seemingly later changed its reason for denying the TKT extension request.

That said, the Trade Court Opinion and Commerce effectively said that under the Extension Of Time Limits, the above generally principles do not apply, meaning that Commerce is not free to be flexible in the above regards and cannot follow its above-stated overarching guiding principles.  That position runs afoul of this Court's decisions – i.e., Commerce's exercise of discretion as to extension requests and timeliness of submissions (even late ones) must be reasonable in light of its statutory mandate to calculate accurate CVD margins within the statutory time limits of the particular investigation. NTN Bearing Corp. v. United States, 74 F.3d. 1204, 1207 (Fed. Cir. 1995); Pro-Team Coil Nail Enterprise Inc. v. United States, 419 F. Supp. 3d 1319, 1332 (Ct. Int'l Trade 2019).  "A regulation which is not required by statute … must be waived where failure to do so would amount to an abuse of discretion" as to the statutory mandate to accurately calculate CVD/AD margins. Timken U.S. Corp. v. United States, 434 F.3d 1345, 1353-54 (Fed. Cir. 2006). Failure to waive any regulation deadline here is an abuse of discretion. The Commerce artificial deadline here was not necessary to satisfy statutory obligations as to the statutory deadlines in the particular investigation.  Id.

010-9233-8739/1/AMERICAS

## E.    Commerce Speculation Is Unlawful

The final Commerce Decision Memorandum speculates that TKT counsel "gambled unwisely" as to when it filed its extension request. Speculation is not substantial evidence to support a lawful determination.

But TKT counsel did not gamble.  There is no substantial evidence otherwise. As counsel stated in a certified statement, it filed the extension request as soon it became apparent that it could not meet the 5:00PM deadline.

Commerce and the Trade Court Opinion say that TKT counsel is experienced in CVD and then makes the unsupported implicit assumption without explanation or substantial evidence that experienced  CVD counsel would be experienced in computer corruption issues.

Further, the Trade Court and Commerce assumes without support that if TKT counsel had filed the extension request earlier, it would have been granted even though Commerce did not grant any of TKT's three extensions as to the time requested.  Note that if TKT counsel had filed earlier and it was rejected, then the deadline would be 5:00PM that day versus 8:30AM the next morning and TKT would have been even worse off as to prospects.  Note that Commerce had already previously rejected TKT extension requests as to a deadline beyond September 15.

Commerce and the Trade Court Opinion seem to question TKT counsel's initial experienced judgement that it could meet the 5:00PM deadline when it

-19-

received TKT's final questionnaire response the morning of the deadline. But they offer no explanation or support for such seeming question.

Notably, in <u>Oman Fasteners LLC v. United States</u>, Slip Op. 23-17 at 5-9 (Ct. Int'l Trade February 2, 2023), the long experienced counsel in that case thought on receipt of the respondent's final questionnaire response 50 minutes until the 5:00PM deadline was  sufficient to file by the 5:00PM deadline. In response, Commerce "said counsel did not allow enough time because, as is often said on Wall Street, past performance is no guarantee of future results." <u>Id.</u> So Commerce seems to be saying that experience doesn't count for anything. And yet Commerce bases its decision on the involvement of experienced counsel. Commerce belies its own decision. The Trade Court in that case was not impressed with Commerce claims, reversing them.

In addition, at the time of the TKT 3:50PM extension request, Commerce was saying do not begin filings after <u>4:45PM</u>. Later, based on its experience in many cases with many experienced counsel, Commerce has since changed its position to say that do not begin filings after <u>12:00PM</u>, as now indicated in Commerce ACCESS decisions in all cases. Going forward, TKT counsel is now following that Commerce's now revised experienced advice that Commerce only recently arrived at and announced as a best practice based on Commerce's new found experience of late.

Finally, the CVD standard applied to respondents "does not require perfection and recognizes that mistakes sometimes occur," which cannot be the basis of adverse inferences, which are only permissible under the CVD statute if one did not act to the best of one's ability. Nippon Steel Corp. v. United States, 337 F. 3d 1373, 1374 & 1382 (Fed. Cir. 2003). Even those so doing do make mistakes.

Commerce and the Trade Court Opinion (at 14) say that TKT counsel was experienced and aware of the 8:30AM deadline. That misses the mark as to the arguments here. It is not clear where Commerce and the Trade Court are going with the TKT counsel is experienced point as to supporting a lawful Commerce decision. In the below cited Commerce decisions, counsel was experienced and yet Commerce granted an extension that it denied TKT though the situations were similar.

### F.    Commerce Violates Its Practice

In denying the TKT's three extension requests as to the full time requested and rejecting TKT's Subsidy Questionnaire response, Commerce violates its own practice. The Trade Court has held that Commerce's "insist{ance} on technical perfection with the filing of its documents on its ACCESS system" is unreasonable and inconsistent with its own precedent, where Commerce "acknowledges that it has allowed for out of time extensions due to technical filing issues in the past despite the language of its regulations." Celik Halat Ve Tel Sonayi A.S. v. United States, 557 F. Supp 3d 1348, 1361 (Ct. Int'l Trade 2022). The Trade Court stresses that

"No one who has confronted issues in using automated filing systems will dispute the unanticipated technical difficulties do sometimes occur." Id. at 1362.

Consider the following examples where Commerce accepted questionnaire responses in cases that are similar or less compelling than for acceptance of TKT's questionnaire response:

- Respondent failed to make a filing by the deadline. The day after the deadline, the respondent claimed in an email undefined "technical issues", and said that it had made an "inadvertent mistake." After the deadline, Commerce gave the respondent two more days to make the filing. Commerce, Stainless Steel Flanges from India, C-533-878, Jan. 26, 2023, Feb. 17, 2023, ACCESS barcode 4334269, 4343287.

- Respondent filed extension request 39 minutes before the deadline. Commerce granted extension 12 minutes later. Commerce, Preserved Mushrooms from Poland, A-455-806, Feb. 2, 2023, ACCESS barcode 4336887, 4336898.

- Respondent missed deadline for questionnaire response. Later, after the deadline, Commerce on its own initiative and without explanation extended the deadline and accepted the questionnaire response. Commerce, Stainless Steel Wire Rod from Korea (A-580-829), Dec. 29, 2022, Jan. 13, 2023, ACCESS barcode 4330993, 4325570.

-22-

- Respondent states without more that, "because of a problem encountered in filing a response," the respondent missed the deadline and also without more explanation, did not request an extension until after the deadline and then just by email. After the deadline, Commerce granted one day extension and accepted the questionnaire response. Commerce, <u>Gas-Powered Pressure Washers from Vietnam</u>, A-552-008, February 10, 2023, ACCESS barcode 4341321.

- Respondent had its own technical ACCESS difficulties, not further explained. It requested an extension at 4:34PM of the deadline day. Commerce granted at 4:52PM. Commerce, <u>Utility Scale Wind Towers from Malaysia</u>, C-557-822, Jan. 10, 2023, ACCESS barcode 4329323, 4329382.

- Respondent sent a 4:30PM email seeking an extension in the 5:00 PM deadline to file a questionnaire response. Extension request filed on Commerce ACCESS six days after the deadline. Commerce granted the extension and accepted the late questionnaire response. Commerce, <u>Ripe Olives from Spain</u> (C-469-818), April 30, 2020, ACCESS barcode 3970287.

- Last minute request based on "many documents to upload" so another day requested. That is "good cause" to grant, where Commerce

answers in one hour 31 minutes. Commerce, <u>Certain Pasta from Italy</u>, C-475-819, Jan. 30, 2023, ACCESS barcode 4335527, 4335434.

- Respondent filed extension request at 4:37 PM of deadline day, citing without much further discussion "technical difficulties" in making the filing. The next day after the deadline, Commerce granted the extension. Commerce, <u>Hot Rolled Steel Flat Products from Korea</u> (C-580-884), Feb. 23/24, 2023, ACCESS barcode 4345060 & 4345176.

- Respondent filed extension request at 4:38PM as to 5:00PM deadline, noting events that well preceded the deadline day and saying needed more time to complete the full response. Commerce granted, seems after 5:00PM. Commerce, Oil <u>Country Tubular Goods from Russia</u>, A-821-833, Feb. 14/15, 2022, ACCESS barcode 4212296, 4212207.

- Filed extension request at 3.37PM for 5:00PM deadline, claiming without more "technical difficulties in finalizing and filing" data files. Commerce granted extension for whole questionnaire and accepted questionnaire. Commerce, <u>Crystalline Silicon Photovoltaic Cells from China</u>, A-570-979, ACCESS bar code 4273305 and 4273344.

We also especially note the following case that the <u>Commerce Final Determination</u> highlighted as allegedly on point driving its decision as to TKT:

- Respondent filed an extension request five minutes before the deadline. After the deadline, Commerce accepted the extension request and untimely questionnaire response. <u>Dongtai Peak Heavy Indus. v. United States</u>, 777 F. 3d 1343, 1347 & 1352 (Fed. Cir. 2015). Commerce (<u>Commerce Decision Memorandum,</u> cmt. 1 at 6) rests on this Court's <u>Dongtai Peak</u> decision for its decision as to TKT, saying it is "on point", but wrongly instead cites to the factually inapposite part (<u>Dongtai Peak</u> at 1347) where as to another questionnaire the same respondent filed an extension request two days <u>after</u> the deadline, based on reasons known before the deadline, and even then did not thereafter file its questionnaire response within its requested extended time, but rather even later. <u>Dongtai Peak</u> (at 1351-52) emphasized that must file extension requests with Commerce <u>before</u> the deadline of the questionnaire response.

This Court in <u>Dongtai Peak</u> (at 1351) also said that the respondent requested the Commerce review and thus should have been prepared to answer the questionnaire earlier. In contrast, here, TKT did not request the CVD investigation. Rather, here only Petitioner Mississippi Chemical requested the investigation.

Moreover, in <u>Dongtai Peak</u> (at 1347, 1352), Commerce said that Commerce could not grant the above second extension request because of particular issues as to that respondent "in the investigation" as to whether sales were bona fide that required time to fully investigate, time which Commerce said was now lacking by the time that the respondent submitted its questionnaire response, given the impending statutory deadline in the investigation.

In short, Commerce misuses this Court's <u>Dongtai Peak</u> decision to say this Court says the opposite of what this Court in fact said, where <u>Dongtai Peak</u> actually supports TKT.

In addition, Commerce even grants extension requests after the deadline that only cite as the reason for the extension request:

● misunderstanding of Commerce ACCESS requirements. Commerce, <u>Certain Steel Nails from Oman,</u> Oct. 1, 2014 letter to respondent granting its Sept. 15, 2014 extension request.

● respondent refused to timely file a questionnaire response because of misunderstanding of European Union privacy laws that long preceded Commerce's issuance of its questionnaire, as to which counsel had not timely addressed. After the deadline, respondent requested extension and filed the questionnaire response. Commerce accepted the

-26-

questionnaire response. Commerce, <u>Finished Carbon Steel Flanges from Italy,</u> decision as to Forgital Italy SpA Feb. 22, 2019 request for reconsideration and extension March 5, 2019.

- respondent printer jams. Commerce, <u>Carbon and Certain Alloy Steel Wire Rod from Mexico,</u> Aug. 25, 2017, Aug. 25, 2017 ACCESS barcode 3611780/3611722.

- confused paralegal of counsels. Commerce, <u>Certain Steel Nails from Malaysia,</u> Nov. 5, 2014 granting respondent Nov. 3, 2014 extension request.

- respondent deadline calendaring errors. Commerce, <u>Cold-Rolled Steel Flat Products from Korea,</u> Jan. 11, 2016 memorandum granting Jan. 5, 2016 extension request.

- respondent requested extension for the wrong questionnaire. Commerce, <u>Narrow Woven Ribbons with Woven Selvedge from Taiwan,</u> Feb. 27, 2015 letter granting respondent Feb. 18, 2015 extension request. ACCESS barcode 3260204/3261940-01.

- counsel "overlooked" a deadline due to a "culmination of a number of factors" that included inclement weather. Commerce, <u>Certain Softwood Lumber Products from Canada,</u> March 16, & 17, 2017, ACCESS barcode 3552802/3553216.

- deadline missed due to the "year-end holiday period." Commerce, <u>Certain Cold-Rolled Steel Flat Products from Korea</u>, Jan. 5 & 16, 2016 ACCESS barcode 3429991/3431804.

- deadline missed because counsel "inadvertently overlooked the specific 10:00 am deadline" due to the July 4th holiday, and also simultaneous other work being done by counsel on other questionnaires. Commerce, <u>Carbon and Certain Alloy Steel Wire Rod from the United Kingdom</u>, Jul. 7/10, 2017, ACCESS barcode 3590026/ 3591490.

- counsel "overlooked" the 10AM filing deadline, Commerce, <u>Citric Acid and Certain Citrate Salts from Thailand</u>, Nov. 17, 2017, ACCESS Barcode 3642674/3642978.

Finally, the <u>Commerce Decision Memorandum</u> (at cmt. 1) states that the rejection of TKT's questionnaire response is based on the fact that the "the facts in <u>Bebitz (CVD)</u>" Slip Op. 20-26 (Ct. Int'l Trade March 2, 2020) "parallel those in this {TKT} investigation nearly exactly …

- … Notably, Bebitz was represented by the same counsel" as TKT. But in <u>Bebitz CVD</u> (at 15, fn. 10), the Trade Court said that should not blame counsel for what was client Bebitz's own doing, not its lawyer. The <u>Trade Court Opinion</u> makes the same error.

-28-

- in <u>Bebitz CVD</u> at 4-8, 12, 14-17 (n. 14) & 19-20, the Trade Court emphasized that the respondent (a) from day one was not forthcoming and was intentionally obtuse as to key investigation issues – e.g., failing to reveal cross-owned affiliates key to the CVD investigation; (b) was given "multiple opportunities" to answer the subsidy questionnaire over two months and did not do so, where (c) Commerce found at the time of its rejecting of the respondent's questionnaire response that only one month remained until Commerce's already extended preliminary CVD decision deadline, such that no more extension could be granted "in the investigation" and still meet statutory deadlines in that particular investigation, and that (d) sufficient time and opportunity was given the respondent to respond. And beyond the above in the companion <u>Bebitz (AD)</u> (at 1316-26), (e) after sixteen respondent extension requests, with some after the deadline but Commerce granted, and eight Commerce supplemental questionnaires, the respondent still had not answered half of Commerce's initial questionnaire issued five months prior, information that had been repeatedly requested, with multiple opportunities for the respondent to provide the requested information, with serious respondent misstatement of the facts.

010-9233-8739/1/AMERICAS

No <u>Bebitz</u> fact applies to TKT.  See above.  Yet Commerce says that it bases its decision to reject the TKT Subsidy Questionnaire on <u>Bebitz</u>.  The contested decision claim that <u>Bebitz</u> must be shown for adverse inferences supports that adverse inferences are not supported for TKT.

The list goes on.  But the point is clear.  Commerce practice is to accept questionnaires in situations similar to TKT's Subsidy Questionnaire response.  It is well-established that an "agency action is arbitrary" and thus unlawful "when the agency offers insufficient reasons for treating similar situations differently." <u>SKF USA Inc. v. United States</u>, 263 F. 3d. 1369, 1382 (Fed. Cir. 2001).  "Consistency has long been a core interest of administrative law, and inconsistent treatment is inherently significant." <u>DAK Americas LLC v. United States,</u> 456 F. Supp. 2d 1340, 1355-56 (Ct. Int'l Trade 2020) (citing <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944).)

The <u>Commerce Decision Memorandum</u> (at cmt 1) responded to TKT cites "where Commerce accepted untimely submissions" in situations similar to TKT's. It says that this Court "confirmed that Commerce is not bound by its actions in prior proceedings, as each proceeding 'is a separate act of Commerce's authority that allows for different conclusions based on different facts in the record.'" <u>Qingdao SeaLine Trading Co., Ltd. v. United States</u>, 766 F.3d 1378, 1387 (Fed. Cir. 2014). But <u>Commerce Decision Memorandum</u> ends its claim there and does not claim

different facts in the TKT cited Commerce decisions indicating that TKT's Subsidy Questionnaire should be accepted, much less that the claimed differences make a difference. Above are many on point Commerce cases where Commerce accepted the respondent's questionnaire response under circumstances less compelling than TKT's.

Effectively, as the above indicates, the Commerce decision as to TKT repudiates the principle that similar cases must be decided similarly, even though doing so is required to not be arbitrary and capricious. Commerce effectively dismisses stare decisis. See NLRB v. Wash. Star Co., 732 F.2d 974, 977 (D.C. Cir. 1984) (per curiam) ("The present sometimes-yes, sometimes-no, sometimes-maybe policy of [enforcing] due dates cannot, however, be squared with our obligation to preclude arbitrary and capricious management of the [agency]'s mandate.")

The Commerce Decision Memorandum also fails to note, much less address, that, in Qingdao SeaLine, this Court proceeded to say that in that case Commerce "explained the differences" between the records of the cases and "reasonably concluded" that there was a basis for different decisions, thus rendering it "not improper" to reach different decisions. Here, the Commerce Decision Memorandum did not. Commerce has again miscited and misused this Court's decisions.

010-9233-8739/1/AMERICAS

To be sure, since briefing before the Trade Court and then the <u>Trade Court</u> <u>Opinion</u>, yet more Commerce decisions continue to flood in contrary to how Commerce treated TKT and we cite them above as additional confirmation of our argument, beyond the above ones that we cited before Commerce and Commerce ignored.

Finally, as indicated above, Commerce claims that **<u>Dongtai Peak</u>** and <u>Bebitz</u> are exactly on point as to TKT, contradicting its claim that every case is different in some way, so do not have to distinguish. In any event, <u>Dongtai Peak</u> (part Commerce cites) and <u>Bebitz</u> are decidedly not on point, and especially compared to the cases TKT cites.

### G.   The <u>Trade Court Opinion</u> Erroneously Affirms The Commerce Decision For Reasons That Commerce Did Not State

The <u>Trade Court Opinion</u> (at 15) states that in its personal opinion TKT's third extension request should have had more detail. The Commerce decision did not say that. It is "well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." <u>Motor Vehicle Mfrs. Ass 'n of U.S., Inc. v.</u> <u>State Farm Mut. Auto. Ins. Co.,</u> 463 U.S. 29, 50 (1983); <u>Prime Time Corn. LLC v.</u> <u>United States</u>, 43 CIT n. 14, 396 F. Supp. 3d 1319, 1331 n.14 (Ct. Int'l Trade 2019) ("not for this court to provide a rationale supporting Commerce's determination.").

In fact, TKT's third extension request was comparable to other similarly situated extension requests that Commerce granted. Compare the <u>Trade Court</u>

<u>Opinion</u> quote of the TKT third extension request to the above cites where Commerce granted an extension request.

Commerce states that

an extension request is a straightforward and usually concise document, identifying only the material to be submitted, the current time limit, the requested extension of that time limit, and the reason for the extension request.

The above cited Commerce decisions implement that Commerce standard, and are contrary to the <u>Trade Court Opinion</u> personal view here.

Further, Commerce, <u>Extension of Time Limits</u>, 78 FR at 3369, states that:

a standard under which untimely-filed {i.e., after the deadline} extension requests will be considered is not provided under the current regulation, and so the inclusion of a standard will provide clarity to parties appearing before the Department … If the Department maintained the current rule, then there would be no standard under which the Department would consider untimely-filed extension requests. This would not provide certainty to parties participating in AD and CVD proceedings, and would not address the administrative issues which the Department has encountered.

Note that Commerce admits that it has no standard as to deciding extension requests, but now has added one as to extension requests filed after the deadline. There is still no Commerce standard as to extension requests filed before the deadline (like TKT's) and Commerce ignores the court one discussed above. It is well-established that when an agency acts without standards, that itself is arbitrary and capricious, which the record of this case illustrates.

Finally, this counsel, said to be an experienced counsel, and in that regard has filed many extension requests similar to done here, would be surprised that after the

record closed, the extension request is deemed insufficient, a new "standard" for an extension request announced post hoc, as least just for this case, and an impermissible "gotcha policy" where an opportunity was not provided to address before the record closed. The Trade Court rejects that. Böwe–Passat v. United States, 17 CIT 335 (1993) (Commerce refusal to address previously unidentified deficiencies is an impermissible "'gotcha policy" policy). It would seem that that is what the Trade Court Opinion embraces.

Notably, the Trade Court in Oman Fasteners, supra at 14, said that an experienced trade counsel would seem well advised under Commerce's Next Day 8:30AM approach to have a boilerplate extension request ready to file just before 5:00PM when hard pressed as to a Commerce deadline. Overall, the Trade Court in Oman Fasteners (at 14-16) seemed deeply troubled by Commerce's Next Day 8:30AM approach with its genesis based on an "off hand comment response with which has never been codified through a regulation or otherwise reasonably communicated to the bar."

The Trade Court Opinion also seeks to rewrite the Commerce Final Decision to say that it did not rely on Dongtai Peak and Bebitz. But the Commerce Final Decision explicitly did, and at great length and emphasis. See above. Again, the Trade Court cannot rewrite a Commerce decision as a vehicle to affirm it. See above.

## II. COMMERCE UNLAWFULLY ENDED THE INCENTIVE TO COOPERATE

The Government of the Republic of Kazakhstan fully cooperated, answering Commerce questionnaires. Then Commerce unlawfully rejected TKT's Subsidy Questionnaire response. At that point, Commerce effectively made clear that no matter what the Kazakh Government did, Commerce would reach the same result – i.e., a 160% adverse inference CVD import duty margin on Kazakh silicon metal. Commerce's unlawful actions as to TKT eliminated any reason or incentive for the Kazakh Government to further cooperate.

But the sole purpose of use of adverse inferences is to incentivize cooperation with Commerce. Essar Steel Ltd. v. United States, 678 F.3d 1268, 1276 (Fed. Cir. 2012). Commerce itself undermined that incentive as to the Kazakh Government. Commerce cannot then impose adverse inferences on the Kazakh Government, as here adverse inference is doing the opposite of what intended.

Commerce has an obligation to balance its statutory mandate to find an accurate subsidy margin with inducing compliance. F.11i De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000). An adverse inference may not be drawn merely from failure to respond, but rather only where it is reasonable for Commerce to expect a more forthcoming response under the specific circumstances of the case. Nippon Steel Corp. v. United States, 337 F.3d 1373, 1383 (Fed. Cir. 2003). Again, Commerce eliminated any incentive or

-35-

reason for the Kazakh Government to cooperate further. Adverse inferences here undermine both the statutory mandate to calculate an accurate subsidy margin and to encourage compliance. Again, Commerce acts contrary to the decisions of this Court.

Further, Commerce cannot *per se* impose adverse inferences on a respondent company for the actions of a third party, here a government. Clearon Corp. v. United States, Slip Op. 20- 141 (Ct. Int'l Trade Oct. 8, 2020); Guizhou Tyre Co. v. United States, 415 F. Supp. 3d 1402, 1405 (Ct. Int'l Trade 2019). In reply, Commerce says that:

> an adverse inference in a CVD investigation may have "a collateral impact on a cooperating party," without being rendered "improper." Where, as here, an adverse inference made against the {government} "collaterally reaches" a cooperating company that is "within the {country}, benefitting directly from subsidies the {government} may be providing," then the adverse inference is permissible, because it "has the potential to encourage the {government} to cooperate so as not to hurt its overall industry."

Commerce Decision Memorandum, cmt 8 at 40-50.

But there is only one Kazakh silicon metal producer, TKT.[11] No others. There is no evidence otherwise, much less substantial evidence otherwise. Commerce again acts unsupported by any evidence, much less substantial evidence.

---

[11] Commerce, Preliminary Determination Decision Memorandum, Nov. 27, 2020 at 2, Access barcode 4059305, PD 323; CVD Petition, June 30, 2020, Vol. 1 at pages 17-19, Access barcode 3992974-01, PD 1 (Note that all indicated producers are TKT and its deemed cross owned affiliates). Notably, Commerce only issued a CVD questionnaire to TKT for that reason. No other Kazakh silicon metal respondents.

## III.   COMMERCE APPLIED AN UNLAWFUL PUNITIVE CVD RATE

The consequence of Commerce's rejection of TKT's Subsidy Questionnaire response was unlawful because grossly disproportionate, compared to any minor, technical infraction – *i.e.*, an adverse trade-stopping 160% CVD import cash deposit rate.  Commerce, <u>Notice Of Intent To Rescind Administrative Review of the CVD Order On Silicon Metal from The Republic Of Kazakhstan</u>, 12/3/20-12/31/2021 Review Period, C-834-811, June 22, 2022, ACCESS barcode 4253727 (Commerce proposes to end its first CVD administrative review of Kazakh silicon metal following the original investigation because TKT had no U.S. sales).

In <u>Artisan Manufacturing Corp. v. United States</u>, 978 F. Supp. 2d 1334, 1345 & 1348 (Ct. Int'l Trade 2014), the Trade Court held that Commerce's rejection of a respondent's questionnaire response as untimely was an unlawful abuse of discretion. <u>Artisan</u> found that the respondent's missing a deadline and not timely requesting an extension (instead requesting after the deadline) was inconsequential and would not have had an adverse impact on the conduct of the investigation, given it was only a one-day delay and given the time remaining in the particular investigation under the statutory deadlines.  <u>Id.</u> at 1345-1348. <u>Artisan</u> continued (at 1347) that rejection means a consequence that is "grossly disproportionate to the mistake" – i.e., imposition of the high adverse inference margin, and so an unlawful abuse of discretion.

Similarly, in Celik Halat ve Tel Sanayi A.S. v United States, 557 F.Supp.3d 1348, 1361 (Ct. Int'l Trade 2022), the Trade Court found that "Commerce imposed a grossly disproportionate penalty for what essentially was a minor technical violation that had no discernible effort on the investigation," where Commerce entirely rejected responses to Commerce's initial questionnaires. In making its determination, the Trade Court said that:

> nothing in that regulation justified the Department's misuse of 19 U.S.C. § 1677e. … Commerce abused its discretion … imposing a draconian sanction for what essentially was a minor and technical violation that had no discernible effect on the investigation. Commerce is not free to apply its regulations in a way that exceeds its statutory authority. Nor is it justifiable to do what it has done here, … to produce a manifestly unwarranted and unjust result. In applying that rule and related regulations on the filing of, and rejection of, responses to requested information, Commerce must be mindful of the limitations on the exercise of its statutory and regulatory powers.

Id. at 1380-81.

Even when Commerce exercises its discretion to apply adverse inferences, the rate must be consistent with Commerce's obligation to calculate fair and accurate subsidy margins. Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States, 716 F.3d 1370, 1379 (Fed. Cir. 2013). This Court has affirmed that "the purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins." F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000). Again, Commerce ignores this Court's decisions.

-38-

## IV.    CONCLUSION AND RELIEF SOUGHT

As a result of the contested decision, TKT has been subject to a 160% CVD cash deposit rate any silicon metal sales to the United States.  That stops any imports. TKT has thus not been able to sell silicon metal to the United States for four years.

There is no substantial evidence that TKT has benefited from any subsidies. TKT has been denied the right to meaningfully participate in the investigation (*i.e.,* answer subsidy questionnaires).  Commerce has just relied on adverse inferences, as opposed to actual facts to calculate the subsidy import duty. A reasonable person would not deny the accused a fair right to respond as to subsidy allegations and then decide there were subsidies, much less huge ones (160%). A negative final CVD determination should thus issue as a matter of law.  Mississippi Silicon has enjoyed four years of the unjust and unlawful action that it strongly pushed for.  A negative subsidy finding should issue on the basis that there was no substantial (reasonable) evidence of subsidies on the record as created by Commerce and Mississippi Silicon, at the time of the statutory deadline for Commerce to decide in this investigation.

Alternatively, but erroneously, an affirmative subsidy finding where no duties or cash deposits are imposed pending any later Commerce administrative review, a do-over of what should have been done in the original investigation -- to actually determine if there are any subsidies, which by statute should have been done by the statutory deadline in the original investigation but was not.  At least that would end

-39-

the unlawful 160% subsidy duty on Kazakh silicon metal versus continue it further by an investigation that should have properly been done four years ago. With approval of the Trade Court, Commerce has done this approach before, at least where the consequence of its investigation was substantial evidence of dumping/subsidies as to a particular country found via the questionnaire process and verification as to a particular exporter, but not as to the other exporters. Small Business Telephones from Taiwan, 43 Fed. Reg. 42,543, 42,550 (Dep't of Commerce Oct. 17, 1989), affirmed in Auto Telecom Co., Ltd. v. United States, 765 F. Supp. 1094 (Ct. Int'l Trade 1991). Here though, in this investigation, there is not even substantial evidence of any subsidies as to any exporter, none found by Commerce via is questionnaire and verification procedure, as not done here. See above. Thus, as a matter of law, a negative final subsidy determination is warranted.

Finally, again alternatively and again erroneously, Commerce could accept TKT's Subsidy Questionnaire response and not use any adverse inferences and proceed to calculate a subsidy margin for TKT (if any). But three problems in doing so: (a) at the time of the statutory deadline for Commerce to decide in the original investigation, there was no substantial evidence of subsidies (see above) and thus a negative subsidy finding should issue; (b) this approach rewards Mississippi Silicon for pushing for the unlawful imposition of 160% subsidy duties on TKT/Kazakhstan for 4 years that stopped all Kazak silicon metal trade and means Commerce can

-40-

unlawfully impose 160% duties on Kazakh silicon metal for years without consequence except harm to Kazakhstan; (c) this alternative just prolongs the 160% subsidy duty pending a belated Commerce investigation that could take many months.

We appreciate the Court's attention to this matter.

Very truly yours,

Peter Koenig
Counsel to TKT and Ministry

February 28, 2023

**ADDENDUM: WORD COMPLIANCE CERTIFICATION (Exhibit 2)**
**TRADE COURT (Exhibit 3) AND COMMERCE (Exhibit 4) DECISIONS**