22-2204

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

TAU-KEN TEMIR LLP, JSC NMC TAU-KEN SAMRUK, MINISTRY OF TRADE AND INTEGRATION OF THE REPUBLIC OF KAZAKHSTAN,

*Plaintiffs-Appellants*

v.

UNITED STATES, GLOBE SPECIALTY METALS, INC., MISSISSIPPI SILICON LLC,

*Defendants-Appellees*

Appeal from the United States Court of International Trade No. 21-173, Judge Leo M. Gordon

PRINCIPAL BRIEF OF TAU-KEN TEMIR, LLP; MINISTRY OF TRADE AND INTEGRATION OF THE GOVERNMENT OF THE REPUBLIC OF KAZAKHSTAN; AND JSC NMC TAU-KEN SAMRUK, PLAINTIFFS-APPELLANTS

Counsel to Tau-Ken Temir, LLP; Ministry of Trade and Integration of the Government of the Republic of Kazakhstan; and JSC NMC Tau-Ken Samruk

Peter Koenig, Esq.
Squire Patton Boggs
2550 M Street NW
Washington DC 20236
202 669 1901
peter.koenig@squirepb.com

May 8, 2023 Corrected (per Court instruction plus more corrections by TKT)

# CERTIFICATE OF INTEREST PER FEDERAL CIRCUIT RULE 47.4

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

**Case Number** 22-2204

**Short Case Caption** Tau-Ken Temir LLP v. United States

**Filing Party/Entity** Tau-Ken Temir LLP; Ministry of Trade and Integration of the Republic of Kazakhstan; JSC NMC Tau-Ken Samruk

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/28/2022

Signature: /s/ Peter Koenig

Name: Peter Koenig

FORM 9. Certificate of Interest

Form 9 (p. 2)
July 2020

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Tau-Ken Temir LLP | None | JSC NMC Tau-Ken Samruk |
| JSC NMC Tau-Ken Samruk | None | None |
| Ministry of Trade and Integration of the Republic of Kazakhstan | None | None |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable            ☐    Additional pages attached

| Jeremy Dutra | Of Counsel | Squire Patton Boggs |
|---|---|---|
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☑    None/Not Applicable            ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable            ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. iii

FEDERAL CIRCUIT RULE 47.5 STATEMENT OF RELATED CASES ............ 1

JURISDICTION STATEMENT .............................................................. 1

ISSUES ........................................................................................... 1

STATEMENT OF CASE ...................................................................... 2

SUMMARY OF ARGUMENT ............................................................... 3

ARGUMENT .................................................................................... 3

    I.      REVIEW STANDARD ................................................................ 3

    II.     COMMERCE SHOULD ACCEPT TKT'S QUESTIONNAIRE ........ 6

           A.      Commerce Should Have Granted TKT's Initial Two
Extension Requests .................................................. 6

           B.      Commerce Should Have Accepted TKT's Third
Extension Request .................................................. 7

           C.      Commerce Fails To Apply Any Standard, Much Less A
Supportable One, To Decide TKT Extension Requests ......... 13

                1.     Commerce Interest In Finality Of Its Decision ............. 14

                2.     The Burden "In The Investigation" To Consider
Information .................................................. 14

                3.     Whether Information Increases Accuracy Of The
Calculated Subsidy Margin ........................................... 16

           D.      The Commerce Regulation Violates The Statute .................... 17

           E.      Commerce Speculation Is Unlawful ........................................ 19

           F.      Commerce Violates Its Practice ............................................. 23

           G.      The Trade Court Opinion Unlawfully Affirms Commerce
For Reasons Commerce Does Not Say .................................... 33

III.   COMMERCE UNLAWFULLY ENDED THE INCENTIVE
       TO COOPERATE ............................................................................35

IV.    COMMERCE APPLIED AN UNLAWFUL ADVERSE,
       PUNITIVE CVD RATE.....................................................................37

V.     CONCLUSIONS AND RELIEF SOUGHT ......................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

19 U.S.C. 706(2)(A) ................................................................ 4

19 U.S.C. § 1516a(a)(2)(B)(i) ................................................ 1

19 U.S.C. § 1516a(b)(1)(B)(i) ............................................... 3

19 U.S.C. § 1677e ................................................................ 38

28 U.S.C. § 1295(a)(5) .......................................................... 1

28 U.S.C. § 1581(c) .............................................................. 1

**Agency Regulations**

19 CFR § 351.302 (c)10Extension Of Time Limits, Final Rule, 78 Fed. Reg. 57,790
(Dep't of Commerce Sept. 20, 2013) ..........................................*passim*

Modification of Regulation Regarding the Extension of Time Limits,
78 Fed. Reg. 3367, 3370 (Dep't of Commerce Jan. 16, 2013) .......................... 18

**Court Cases**

Anderson v. U.S. Sec'y of Agric.,
462 F. Supp. 2d 1333 (Ct. Int'l Trade 2006) ...................................... 4

Artisan Manufacturing Corp. v. United States,
978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ..................................... 38

Auto Telecom Co., Ltd. v. United States,
765 F. Supp. 1094 (Ct. Int'l Trade 1991) ........................................ 40

Bebitz Flanges Works Private Ltd. v. United States,
433 F. Supp. 3d 1297 (2020) ...................................................*passim*

Böwe–Passat v. United States,
17 CIT 335 (1993) .............................................................. 34

Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,
    419 US 281 (1974) ............................................................... 4

Brenner v. Dept. of Veteran Affairs,
    990 F.3d 1313 (Fed. Cir 2021) ......................................... 5

Celik Halat Ve Tel Sonayi A.S. v. United States,
    557 F. Supp 3d 1348 (Ct. Int'l Trade 2022).................. 23, 38

Celik Halat Ve Tel Sonayi A.S. v. United States,
    Slip Op 22-12, Slip Op 22-13 (Ct. Int'l Trade 2022)........... 7

Ceramica Regiomontana v. United States,
    10 CIT 399 (1986) .............................................................. 5

Christensen v. Harris Cty.,
    529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) ..................... 11

Clearon Corp. v. United States,
    Slip Op. 20-141 (Ct. Int'l Trade 2020)............................... 36

CP Kelco v. United States,
    949 F.3d 1348 (Fed. Cir. 2020) ........................................ 4

CS Wind Vietnam Co. v. United States,
    832 F. 3d. 1367 (Fed. Cir. 2016) ...................................... 3

DAK Americas LLC v. United States,
    456 F. Supp. 2d 1340 (Ct. Int'l Trade 2020)..................... 31

Dongtai Peak Heavy Indus. v. United States,
    777 F. 3d 1343 (Fed. Cir. 2015)................................. *passim*

Dupont Teijin Films USA, LP v. United States,
    407 F.3d 1211 (Fed. Cir. 2005) ........................................ 3

Dupont Teijin Films v. United States,
    Slip Op. 13-11 (Ct. Int'l Trade 2013)................................. 5

Essar Steel Ltd. v. United States,
    678 F.3d 1268 (Fed. Cir. 2012) ....................................... 35

-iv-

F.11i De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,
    980 F. Supp. 485 (Ct. Int'l Trade 1997) ............................................................. 36

F.11i De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,
    216 F.3d 1027 (Fed. Cir. 2000) ............................................... 36, 38, 39

Glycine & More, Inc. v. United States,
    880 F.3d 1335 (Fed. Cir. Jan. 23, 2018) ........................................... 11

Grobest & I-Mei Indus. (Viet.) Co. v. United States,
    815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ..................................... 13

Guizhou Tyre Co. v. United States,
    415 F. Supp. 3d 1402 (Ct. Int'l Trade 2019) ..................................... 36

Hontex Enterprises, Inc. v. United States,
    Slip Op. 03-17 (Ct. Int'l Trade 2003) ............................................... 11

Julin Forest Industry Jinqiao Flooring Group Co. Ltd. vs. United
    States, Slip Op. 23-14 (Ct. Int'l Trade 2023) ..................................... 15

Kirovo Chepetsky Khimichesky Kombinat, JSC v. United States,
    58 F. Supp. 3d 1397 (Ct. Int'l Trade 2015) ......................................... 5

Lucent Techs., Inc. v. Gateway, Inc.,
    580 F.3d 1301 (Fed. Cir. 2009) ........................................................... 3

Marmen Inc. v. United States,
    Slip Op. 21-148 (Ct. Int'l Trade 2021) ............................................... 13

Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile
    Insurance Co.,
    463 U.S. 29 (1983) .................................................................. 4, 33

National Steel Corp. v. United States,
    913 F. Supp. 593 (Ct. Int'l Trade 1996) ............................................. 17

Nippon Steel Corp. v. United States,
    337 F. 3d 1373 (Fed. Cir. 2003) ................................................ 22, 36

Nippon Steel Corp. v. United States,
    458 F.3d 1345 (Fed. Cir. 2006) ........................................................... 3

NLRB v. Wash. Star Co.,
732 F.2d 974 (D.C. Cir. 1984) ........................................................... 32

NTN Bearing Corp. v. United States,
74 F.3d 1204 (Fed. Cir. 1995) ................................................ 5, 13, 18

Olympic Adhesives v. US,
Court No. 89-1367 (Fed. Cir. 1990) .................................................. 36

Oman Fasteners LLC v. United States,
Slip Op. 23-17 (Ct. Int'l Trade 2023) ...................................... 20, 21, 34

Prime Time Corn. LLC v. United States,  396 F. Supp. 3d 1319 (Ct.
Int'l Trade 2019) ............................................................................ 33

Pro-Team Coil Nail Enterprise Inc. v. United States,
419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ..................................... 18

Qingdao SeaLine Trading Co., Ltd. v. United States,
766 F.3d 1378 (Fed. Cir. 2014) .................................................. 31, 32

SKF USA Inc. v. United States,
263 F. 3d. 1369 (Fed. Cir. 2001) ...................................................... 31

Skidmore v. Swift & Co.,
323 U.S. 134 (1944) ........................................................................ 31

Solar World Americas Inc. v. United States,
962 F. 3d. 1351 (Fed. Cir. 2020) ........................................................ 4

Sunpower Corp. v. United States,
179 F. Supp. 3d 1286 (Ct. Int'l Trade 2016) ....................................... 4

Tau Ken Temir LLP et. al. vs. United States et. al., Slip Op. 22-82 (Ct.
Int'l Trade July 14, 2022) .......................................................... *passim*

Tel Sonayi AS v. United States,
Slip Op 22-12 (Ct. Int'l Trade 2022) .................................................. 7

Timken U.S. Corp. v. United States,
434 F.3d 1345 (Fed. Cir. 2006) .................................................. 13, 18

010-9233-8739/1/AMERICAS

West Virginia v. EPA,
 142 S. Ct. 2587 (2022) ..................................................................... 15

Whitman v. Am. Trucking Ass 'ns,
 531 U.S. 457 (2001) ......................................................................... 15

Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,
 716 F.3d 1370 (Fed. Cir. 2013) ....................................................... 39

**Commerce Decisions**

Carbon and Certain Alloy Steel Wire Rod from the United Kingdom,
 A-412-826 (Dep't of Commerce Jul. 7, 2017) .................................. 29

Carbon and Certain Alloy Steel Wire Rod from the United Kingdom,
 A-412-826 (Dep't of Commerce Jul. 10, 2017) ................................ 29

Carbon and Certain Alloy Steel Wire Rod from Mexico, A-201-830
 (Dep't of Commerce Aug. 25, 2017) ................................................ 28

Certain Cold-Rolled Steel Flat Products from Korea, A-580-881 (Dep't
 of Commerce Jan. 5, 2016) ............................................................... 29

Certain Cold-Rolled Steel Flat Products from Korea, A-580-881 (Dep't
 of Commerce Jan. 16, 2016) ............................................................. 29

Certain Pasta from Italy, C-475-819 (Dep't of Commerce Jan. 30,
 2023) ................................................................................................. 25

Certain Softwood Lumber Products from Canada, C-122-858 (Dep't of
 Commerce Mar. 16, 2017) ................................................................ 29

Certain Softwood Lumber Products from Canada, C-122-858 (Dep't of
 Commerce Mar. 17, 2017) ................................................................ 29

Citric Acid and Certain Citrate Salts from Thailand, A-549-833 (Dep't
 of Commerce Nov. 17, 2017) ............................................................ 29

Crystalline Silicon Photovoltaic Cells from China, A-570-979 (Dep't
 of Commerce Aug. 10, 2022) ............................................................ 26

Final Determination, Silicon Metal from the Republic of Kazakhstan,
 Inv. C-834-811 .............................................................................. *passim*

Gas-Powered Pressure Washers from Vietnam, A-552-008 (Dep't of
 Commerce Feb. 10, 2023) ................................................................... 24

Hot Rolled Steel Flat Products from Korea, C-580-884 (Dep't of
 Commerce Feb. 23, 2023) ................................................................... 25

Hot Rolled Steel Flat Products from Korea, C-580-884 (Dep't of
 Commerce Feb. 24, 2023) ................................................................... 25

Narrow Woven Ribbons with Woven Selvedge from Taiwan, A-583-
 844 (Dep't of Commerce Feb. 27, 2015) ............................................ 28

Notice Of Intent To Rescind Administrative Review of the CVD Order
 On Silicon Metal from The Republic Of Kazakhstan, C-834-811,
 12/3/20-12/31/2021 ............................................................................ 37

Oil Country Tubular Goods from Russia, A-821-833 (Dep't of
 Commerce Feb. 14, 2022) ................................................................... 25

Oil Country Tubular Goods from Russia, A-821-833 (Dep't of
 Commerce Feb. 15, 2022) ................................................................... 25

Preserved Mushrooms from Poland, A-455-806 (Dep't of Commerce
 Feb. 2, 2023) ...................................................................................... 23

Ripe Olives from Spain, C-469-818 (Dep't of Commerce April 30,
 2020) ................................................................................................... 25

Small Business Telephones from Taiwan, 43 Fed. Reg. 42,543, 42,550
 (Dep't of Commerce Oct. 17, 1989) .................................................... 40

Stainless Steel Flanges from India, C-533-878 (Dep't of Commerce
 Jan. 26, 2023) ..................................................................................... 23

Stainless Steel Flanges from India, C-533-878 (Dep't of Commerce
 Feb. 17, 2023) ..................................................................................... 23

Stainless Steel Wire Rod from Korea, A-580-829 (Dep't of Commerce
 Dec. 29, 2022) ..................................................................................... 24

Stainless Steel Wire Rod from Korea, A-580-829 (Dep't of Commerce
 Jan. 13, 2023) ..................................................................................... 24

Tapered Roller Bearings from China, A-570-061 (Dep't of Commerce
    Mar. 3, 2023) ........................................................................ 10, 21, 23

Utility Scale Wind Towers from Malaysia, C-557-822 (Dep't of
    Commerce Jan. 10, 2023) ................................................................ 24

## FEDERAL CIRCUIT RULE 47.5 STATEMENT OF RELATED CASES

There is no other appeal in or from this civil action or proceeding in the lower court or body previously before this or any other appellate court.

## JURISDICTION STATEMENT

Per Rule 28(a)(5), this Court's jurisdiction rests on:

The Trade Court had jurisdiction here under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c). Trade Court Opinion at 2-3; Appx56-57.

The statutory basis for this Court's jurisdiction for appeal is 28 U.S.C. § 1295(a)(5).

The Trade Court entered final judgment on July 14, 2022. Appx2-3. Per Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure, this appeal was timely filed September 11, 2022.

## ISSUES

Whether the U.S. Department of Commerce's (Commerce) rejection of Plaintiffs-Appellants TKT extension request and questionnaire response was unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Whether the adverse facts were unsupported by substantial evidence or otherwise not in accordance with law.

## STATEMENT OF CASE

Plaintiff-Appellants Tau Ken Temir LLP ("TKT"), Ministry ("Ministry") of Trade and Integration of the Government of the Republic of Kazakhstan ("GOK") and JSC NMC Tau-Ken Samruk ("TKS") (TKT and TKS also collectively referred to as "TKT") contest the February 26, 2021 U.S. Department of Commerce ("Commerce") Final Determination in the Countervailing Duty Investigation Silicon Metal from the Republic of Kazakhstan, Inv. C-834-811, 86 Fed. Reg. 11,725 (Commerce, Feb. 26, 2021) ("Commerce Final Determination"), Appx136-138, and Commerce's accompanying February 22, 2021 Issues and Decision Memorandum, ("Commerce Decision Memorandum"). Appx189-245. The U.S. Court of International Trade ("Trade Court") sustained the Commerce Final Determination in Tau Ken Temir LLP et. al. vs. United States et. al., Slip Op. 22-82, July 14, 2022 ("Trade Court Opinion"), Appx55-86, which we also contest.

Kazakh silicon metal producer TKT was subject to a Commerce CVD investigation into whether the Kazakh Government subsidizes Kazakh silicon metal exports to the United States. TKT and the Ministry participated in the investigation, answering Commerce questionnaires. Defendant-Appellees U.S. silicon metal producers Mississippi Silicon LLC and Globe Specialty Metals, Inc. (collectively, "Mississippi Silicon") filed the countervailing duty (CVD) subsidy petition that led to this Commerce investigation and participated therein.

-2-

## SUMMARY OF ARGUMENT

TKT followed Commerce regulations in its request for an extension to answer the Commerce Subsidy Questionnaire. Thus, the TKT extension requests to answer the Subsidy Questionnaire should have been granted. Further, Commerce imposed adverse inferences on TKT and the Kazakh Government, where substantial evidence was lacking that they did not act to the best of their ability, the statutory condition for adverse inferences.

## ARGUMENT

## I.    REVIEW STANDARD

When reviewing a final Commerce CVD decision, this Court applies the same standard of review as the Trade Court. Dupont Teijin Films USA, LP v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005). By statute, Commerce CVD decisions must be supported by substantial evidence, considering the record as a whole, and otherwise be in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i); CS Wind Vietnam Co. v. United States, 832 F. 3d. 1367, 1373 (Fed. Cir. 2016).[1]  Speculation is not substantial evidence. Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1327 (Fed. Cir. 2009).

Per this standard, Commerce decisions must be reasonable. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Commerce must

---

[1] As to issues in this brief, the trade statute and Commerce regulations on countervailing duty and antidumping (AD) are the same. Trade Court Opinion at 5-7, Appx59-61.

-3-

"examine the relevant data and articulate a satisfactory explanation for its action," Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 43 (1983), including "a rational connection between the facts found and the choice made." Id.; Trade Court Opinion at 3-4; Appx57-58.

Commerce decisions also cannot be arbitrary and capricious. 19 U.S.C. 706(2)(A); Solar World Americas Inc. v. United States, 962 F. 3d. 1351, 1359 n. 2 (Fed. Cir. 2020); Trade Court Opinion at 7-8, Appx61-62 (addressing TKT argument). A decision is unlawfully arbitrary and capricious when it (a) "fails to consider an important aspect of the problem" (State Farm, 463 U.S. at 43; Sunpower Corp. v. United States, 179 F. Supp. 3d 1286, 1295 (Ct. Int'l Trade 2016)), or (b) treats "similar situations in dissimilar ways." Anderson v. U.S. Sec'y of Agric., 462 F. Supp. 2d 1333, 1339 (Ct. Int'l Trade 2006).

Commerce's decision path must "reasonably be discerned, … the required explanation must reasonably tie the contested determination to the statutory standard and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding." CP Kelco v. United States, 949 F.3d 1348, 1356 (Fed. Cir. 2020); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 US 281, 286 (1974). Commerce's exercise of its discretion must be reasonable in light of its statutory mandate to calculate accurate subsidy margins – Commerce abuses its discretion when its decision is "clearly unreasonable, arbitrary,

-4-

or fanciful." <u>NTN Bearing Corp. v. United States,</u> 74 F.3d 1204, 1208 (Fed. Cir. 1995).

"The enforcement of . . . deadlines is an exercise of Commerce's discretion, and should therefore be examined to ensure against abuse of discretion." <u>Kirovo Chepetsky Khimichesky Kombinat, JSC v. United States,</u> 58 F. Supp. 3d 1397, 1411 (Ct. Int'l Trade 2015). When considering whether Commerce's application of a non-statutory deadline in a given case is an abuse of discretion, Commerce's discretion "is bounded at the outer limits by the obligation to carry out its statutory duty of determining {CVD} margins as accurately as possible." <u>Dupont Teijin Films v. United States</u>, Slip Op. 13-11 at 13 (Ct. Int'l Trade 2013). An agency abuses its discretion where, inter alia, "the decision . . . represents an unreasonable judgment in weighing relevant factors." <u>Brenner v. Dept. of Veteran Affairs</u>, 990 F.3d 1313, 1324 (Fed. Cir 2021).

"Of course, this Court will not allow an agency, under the guise of lawful discretion, to contravene or ignore the intent of the legislature or the guiding purpose of the statute. Thus, in reviewing a Commerce CVD decision, the court must ensure that" Commerce "methodology is a reasonable means of assessing the net benefit received as a result of the illegal subsidy." <u>Ceramica Regiomontana v. United States,</u> 10 CIT 399, 405 (1986).

## II.   COMMERCE SHOULD ACCEPT TKT'S QUESTIONNAIRE

### A.   Commerce Should Have Granted TKT's Initial Two Extension Requests

TKT timely answered (and without extension request) Commerce's first three questionnaires on cross-owned affiliate companies, to facilitate this matter. Trade Court Opinion at 4, Appx58; Appx607, Appx719, Appx778, Appx830, Appx982, Appx1034, Appx2032, Appx2418. Based on those answers, Commerce said six companies must answer Commerce's Subsidy Questionnaire as to any government subsidies to TKT. Appx2195.[2]

Well before the deadline to answer the Subsidy Questionnaire, TKT counsel requested a two-week extension to answer, noting the huge amount of information requested, that the individuals involved were new to the CVD process, that all had to respect COVID travel and stay at home restrictions, precluding travel or in person meetings, the fact that six different entities had to respond, COVID furloughs of staff leaving short-staffed, where at the same time Commerce continued adding to the list of companies to answer, and that TKT was working flat out to answer. Appx882, Appx1814-1815, Appx1924, Appx2087, Appx2432-2433, Appx2426-2427, Appx2430, Appx2446, Appx2451-2457. Without explanation, Commerce only gave a week. Appx932. Then, again, well before that initially granted one-week extended

---

[2] At times, the Trade Court Opinion at 4, 10, 12 (Appx58, Appx64, Appx66) calls this Subsidy Questionnaire the First Supplemental Questionnaire.

-6-

date, TKT counsel requested a second extension to September 17, 2020, for the same reasons as indicated in the first extension request. Appx1091. Without explanation, Commerce only granted to September 15, 2020. Appx1142. Note that counsel filed the extension requests early when the circumstances so permitted, and it was clear an extension was needed. Appx2418.

Commerce's denial of the above full extension requests is not supported by substantial evidence. Commerce provides no support otherwise.  Actually, proximate to the time of its rejection of the TKT's full extension requests above and thus questionnaire response, Commerce gave itself <u>4 months</u> extension when Commerce needed time given the same stay at home COVID restrictions, an inconsistency the Trade Court finds unlawful.  <u>Celik Halat ve Tel Sonayi A.S. v. United States</u>, Slip Op 22-12 at 24 and Slip Op 22-13 at 33 (Ct. Int'l Trade Feb. 15, 2022).

If full extension in the first two TKT extension requests to September 17 was granted, requests that no one disputes as timely and adequately explained, TKT's September 17 filed Subsidy Questionnaire response would have been timely and accepted, not rejected. The <u>Trade Court Opinion</u> and <u>Commerce Decision Memorandum</u> fail to mention, much less address, this fatal legal error in Commerce's rejection of TKT's Subsidy Questionnaire response.

## B.   Commerce Should Have Accepted TKT's Third Extension Request

TKT counsel received the final, fully completed TKT questionnaire responses from TKT at 10:58AM of the due date. TKT counsel, experienced, felt this was

-7-

received within the time to meet the 5:00PM deadline. <u>Commerce Decision Memorandum</u> at 16, Appx205; <u>Trade Court Opinion</u> at 10-11, 14-15, Appx59-60, Appx64-65, Appx68-69.

But unanticipated technical file issues emerged – *e.g.*, in the assimilation of the response, file corruption, difficulty creating the requisite searchable PDFs of foreign language documents, etc. <u>Trade Court Opinion</u> at 5-6, 11, Appx59-60, Appx65; Appx 1306, Appx1815. These unanticipated issues had not occurred as to received files from TKT for the first two filings that were timely filed.

While counsel may be experienced in <u>CVD</u> law, these were unanticipated <u>computer</u> document issues. When it became apparent that technical computer issues in the finalization of the received full questionnaire for filing that the 5:00PM deadline could not be met and that an extension was needed, TKT counsel immediately filed (at 3:50PM of the due date) on Commerce ACCESS for internet filings a stand-alone written third extension request for one more day to answer the Subsidy Questionnaire. <u>Trade Court Opinion</u> at 5 &10 (Appx59, Appx64). [3] The <u>Trade Court Opinion</u> at 4-6 (Appx58-60) correctly said that:

> The parties agree that {TKT} filed a third request for an extension of time on a <u>timely</u> basis. (emphasis added)

_____

[3] ACCESS is Commerce's public website record where Commerce investigation documents and decisions appear. <u>Trade Court Opinion</u> at 5, 7, Appx59, Appx61; Commerce CVD Questionnaire at 2,6, Appx605, Appx615.

-8-

The Trade Court Opinion at 10-11 (Appx64-65) incorrectly says without support that TKT counsel tried to file before 5:00PM on the September 15 due date. TKT counsel did not begin to file the questionnaire response until 5:31AM September 16. Commerce Decision Memorandum at 15, Appx204; Trade Court Opinion at 14, Appx68.

Counsel sought to address unanticipated technical computer issues as to documents, that preceded then seeking to file them on Commerce ACCESS. Commerce ACCESS does not help with questionnaire response document preparation (e.g., file corruption). No one says, much less supports, otherwise. The claim that TKT counsel did not call ACCESS (Trade Court Opinion at 14) on September 15 thus misses the mark.

More significant, the full extent of the problem was not known until after business hours on September 15, when Commerce ACCESS was closed. Appx59, Appx1815, Appx1816, Appx2419, Appx2427. TKT counsel did not start to file the submission until 5:31AM September 16. Trade Court Opinion at 14, Appx68; Appx1356-1358. There was no one to call at Commerce, including its ACCESS staff, as they were closed and would not open until 8:30AM, which was when the filing was due such that the deadline is necessarily missed. Appx2427.  Commerce now acknowledges this infirmity in its practice and now says that, if request extension for technical difficulties, and Commerce not decide by deadline, then contact the Commerce case analyst at 8:30am the day after the deadline to address/remedy.

-9-

Commerce, <u>Tapered Roller Bearings from China</u>, A-570-061, March 3, 2023, Commerce ACCESS barcode 4349546 at 2.

By TKT's filing of the extension request on Commerce ACCESS, the many involved Commerce officials immediately learned of the extension request. Commerce, <u>Extension Of Time Limits, Final Rule,</u> 78 Fed. Reg. 57,790, 57793 (Sept. 20, 2013) ("<u>Extension Of Time Limits</u>"). Commerce regulations do not say to do more than that (<u>Trade Court Opinion</u> at 7; Appx61) because Commerce ACCESS is designed to immediately alert all Commerce officials simultaneously (<u>Extension Of Time Limits</u>, at 57793), many of whom the respondent may not even know are working on the case at that point in time. No phone call can do that, which may be why Commerce regulations do not say to make a phone call, and rather state to file an extension request electronically on Commerce ACCESS for immediate notification to all. See below.

Commerce regulation 19 CFR § 351.302 (c) states that "before the applicable time limit" to answer a Commerce request "expires, a party may request an extension" via filing a written request on Commerce's internet site ACCESS for filing documents. Any extension "request must be in writing, in a separate, stand-alone submission, filed consistent with § 351.303 {*e.g.*, on ACCESS}, and state the reasons for the request." In its <u>Extension Of Time Limits</u>, 78 Fed. Reg. at 57791-92, Commerce explains that its regulation 19 CFR § 351.302:

-10-

> considers that an extension request is untimely if it is filed after the
> applicable time limit expires. Therefore, we have determined that the
> term untimely in the final rule is defined as an extension request that is
> received after the applicable time limit expires

to answer the questionnaire. Similarly, the Commerce Questionnaire Cover Letter

states (Appx604) that any extension request must "be communicated in writing to

Commerce; otherwise the original deadline will apply."

As discussed above, TKT counsel did all the above outlined in Commerce's

regulations to perfect a timely one-day final, third extension request, as soon as it was

known that more time was needed, and how much – *i.e.*, at about 3:50 p.m. of the

September 15, 2020 due date.

> Where the regulation
>
> is clear, no deference {to Commerce claims} is warranted. Deferring to
> Commerce's position "would be to permit the agency, under the guise of
> interpreting a regulation, to create *de facto* a new regulation." <u>Christensen v.
> Harris Cty.</u>, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)
> (unambiguous regulation could not be rewritten by agency under guise of
> interpreting regulation and judiciary owed no deference to agency
> interpretation).

<u>Glycine & More, Inc. v. United States</u>, 880 F.3d 1335, 1345 (Fed. Cir. Jan. 23, 2018);

<u>Hontex Enterprises, Inc. v. United States</u>, Slip Op. 03-17 at 41 (Ct. Int'l Trade Feb.

13, 2003) (Commerce's "incompatible departure from the clear meaning of the

regulation" is unlawful.)

Counsel was able to file TKT's several thousand-page questionnaire response

by 10:11AM the next morning, one hour and forty-one minutes after Commerce's

8:30AM opening for business the next business day after the deadline, and before

-11-

5:00PM that day requested in the one-day extension request. <u>Trade Court Opinion</u> at

5, Appx59 (TKT "was unable to complete the entirety of the filing until 10.11am on

September 16th, one hour and 41 minutes beyond the 8:30 am deadline."); Appx2418.

Two weeks later Commerce said (Appx1712) that:

> Commerce was unable to respond to this {TKT extension} request. Therefore, in accordance with the <u>Extension of Time Limits</u> notice, where Commerce is unable to notify the party requesting an extension of the disposition of that request by 5:00 p.m., the submission would be due by the opening of business, i.e., 8:30 a.m., on the next work day. {we call this Next Day 8:30AM}

<u>Commerce Decision Memorandum</u> at 15, 16, 18, Appx204-205, Appx207; <u>Trade</u>

<u>Court Opinion</u> at 10-11, Appx65-66. Commerce said that since the questionnaire

response was filed at 10:10AM, and not 8:30AM, it was untimely and so rejected.

Appx1712.[4]

The <u>Commerce Decision Memorandum</u> (at 17, Appx206) and the <u>Trade Court</u>

<u>Opinion</u> (at 14; Appx68) say that TKT counsel did not attempt to contact Commerce.

In fact, TKT counsel followed Commerce's regulation and questionnaire, which say

to do an ACCESS filing to contact Commerce and does not say to make a telephone

---

[4] Commerce also initially claimed TKT's Subsidy Questionnaire response was incomplete. Appx1712. TKT documented that claim was unsupported by substantial or any evidence. Appx1921-1922, Appx2030-2032, Appx2420-2421, Appx2437-2443. Commerce did not discuss, much less refute, that TKT reply, instead saying "Commerce is continuing to base its determination to reject TKS/TKT's initial questionnaire response as untimely based on the lateness of the submission, rather than the content of the" filing rendering its completeness "moot." <u>Commerce Decision Memorandum</u> at 20, Appx209; <u>Trade Court Opinion</u> at 15, Appx69 (Commerce did not rely on any claimed TKT "failure to provide a full version of the submission as a reason for its rejection.").

call. That makes sense as the ACCESS filing immediately notifies/contacts all concerned at Commerce. See above. Anyway, as Commerce admits above (Appx1712), no one was available at Commerce ("Commerce was unable to respond").

### C.    Commerce Fails To Apply Any Standard, Much Less A Supportable One, To Decide TKT Extension Requests

It is established that legal factors that must be considered to reject a filing as untimely are: (1) Commerce's interest in finality of its final (not preliminary) decision, (2) the burden on Commerce "in the investigation" at issue (not broadly) to consider the filing to calculate the CVD/antidumping (AD) margin, and (3) if the information in the filing increases accuracy of calculated subsidy margins; Commerce's failure to do so is an unlawful abuse of discretion. NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995); Timken U.S. Corp. v. United States, 434 F.3d 1345 (Fed. Cir. 2006); Marmen Inc. v. United States, Slip Op. 21-148 at 15 (Ct. Intl Trade 2021); Grobest & I-Mei Indus. (Viet.) Co. v. United States, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012).

The Commerce Decision Memorandum did not consider, much less discuss, any of these factors on whether to fully accept any of TKT's three extension requests as to the Subsidy Questionnaire, much less the filed Subsidy Questionnaire, rendering Commerce's action unlawful.

Consider each factor:

-13-

### 1.    Commerce Interest In Finality Of Its Decision

TKT extension requests were for, and TKT's Subsidy Questionnaire was submitted by, September 16, 2020, well before Commerce's final decision. See below. So this factor is met to accept it.

### 2.    The Burden "In The Investigation" To Consider Information

Commerce never says that fully granting TKT's first two extension requests to September 17, or TKT's Subsidy Questionnaire filed September 16, would hinder its investigation to meet its statutory mandate to accurately calculate the subsidy margin in its investigation of Kazakh silicon metal by the statutory deadline. Sufficient time remained to complete the investigation and issue a final decision. At the time TKT submitted its Subsidy Questionnaire response, that was also within the period for which TKT requested an extension, Commerce's final decision was 158 to 258 days away (preliminary decision was 73 days away). Commerce Decision Memorandum at 2, Appx191; Appx2419, Appx2425, Appx2463.

Rather, the Commerce Final Determination says:

> Commerce establishes deadlines so that it can conduct this (and its numerous other trade remedy proceedings) in an efficient manner within its statutory and regulatory deadlines. Therefore, it is critical that parties file documents by the established deadline, or timely request an extension of such a deadline such that Commerce can provide a considered response. Timely filings and timely extension requests contribute to Commerce's efficient administration of the numerous cases before it and the AD/CVD laws. Conversely, untimely filings and last-minute extension requests hinder the efficient conduct of our proceedings, and require that Commerce devote additional time and resources to addressing such untimely filings and last-minute requests. Additionally, although the burden associated with a single late-filed questionnaire response may be perceived as minimal, that burden is not minimal when aggregated

-14-

across all proceedings. Accordingly, for the efficient conduct of its proceedings, it is critical that parties adhere to the deadlines established by Commerce.

Commerce does not say the above in other cases where there are claimed untimely or last-minute extension requests, and Commerce accepts the extension request and questionnaire. See below cites. That belies this claim. It is unlawfully arbitrary and capricious to apply the above to TKT and not others. This claimed reason is also contrary to the above discussed court decisions which focus on Commerce's burden "in the investigation," not abstract generally. A claim that Commerce can simply not decide matters and not satisfy the statutory mandate to calculate CVD/AD margins to conserve resources violates the CVD/AD statute. Zheijiang Native Produce & Animal By-Products Import & Export Corp., 637 F. Supp 2d 1260, 61-63 (Ct. Int'l Trade 2009); Appx1815, Appx1817.

Further, Commerce can and does decide extension requests after the deadline. See below. So, there is no such burden that Commerce claims above. In fact, here, Commerce decided TKT's one-day extension request two weeks after it was filed. See above.

More fundamentally, the ultimate source of authority for an agency to develop policy that affects rights is legislative, here the Congress. West Virginia v. EPA, 142 S. Ct. 2587, 2609 (2022) ("We presume that Congress intends to make major policy decisions itself, not leave those decisions to agencies"); Whitman v. Am. Trucking Ass 'ns, 531 U.S. 457, 468 (2001) (Congress "does not alter the fundamental details

-15-

of a regulatory scheme in vague terms or ancillary provisions."); Julin Forest Industry Jinqiao Flooring Group Co. Ltd. vs. United States, Slip Op. 23-14 at 33-36 (Ct. Int'l Trade Feb. 9, 2023).  Here, the statutory mandate is accurately calculating CVD/AD margins within the statutory deadlines set for an investigation. See above. Congress did not say that Commerce may elect to not meet these statutory obligations to conserve resources. That is an impermissible Commerce departure from the statutory scheme.

The Trade Court Opinion does not note, much less defend, this basis of the contested Commerce decision.

### 3. Whether Information Increases Accuracy Of The Calculated Subsidy Margin

In rejecting the TKT Subsidy Questionnaire response, Commerce did not then have information to calculate the subsidy margin and thus used adverse inferences as to claimed subsidy margin. Accepting the TKT Subsidy Questionnaire response as to any actual subsidies received would necessarily have increased the accuracy of the calculated subsidy margin.

For the above reasons, the TKT Subsidy Questionnaire Response should have been accepted as a matter of law.

———————

Indeed, Commerce admits that it is not applying any standard to decide extension requests. Commerce, Extension of Time Limits, 78 FR at 3369, said that:

a standard under which untimely-filed {i.e., after the deadline} extension requests will be considered is not provided under the current regulation, and so

-16-

the inclusion of a standard will provide clarity to parties appearing before the {Commerce}… If {Commerce} maintained the current rule, then there would be no standard under which {Commerce} would consider untimely-filed extension requests. This would not provide certainty to parties participating in AD and CVD proceedings, and would not address the administrative issues which {Commerce} has encountered.

Here, Commerce admits that it has no standard to decide extension requests, but then now only adds a standard as to extension requests filed <u>after</u> the deadline, not <u>before</u>, the situation here.  There is still no Commerce standard as to extension requests filed <u>before</u> the deadline (like TKT's). Commerce ignores the long-established court standard discussed above. It is well-established that when an agency acts without standards, that itself is arbitrary and capricious.  <u>National Steel Corp. v. United States</u>, 913 F. Supp. 593, 595 (Ct. Int'l Trade 1996). Commerce unlawfully did so here.

### D.    The Commerce Regulation Violates The Statute

Commerce's failure to fully grant any of TKT's timely extension requests and consequent rejection of TKT's filed questionnaire response violates Commerce <u>Extension Of Time Limits</u> regulation (78 Fed. Reg. at 57795). That rule says that, notwithstanding "Next Day 8:30AM," giving the respondent until 8:30AM the next day to make the filing, if Commerce fails to answer an extension request by the deadline, Commerce still "will continue to grant extensions of time limits to the extent that they are warranted and deadlines for the segment permit." <u>Id</u>. In other words, Commerce can still decide extension requests made close to the deadline after

-17-

the deadline, and does. See below. Commerce unlawfully, inconsistently failed to do so here.

In like vein, Commerce said in its <u>Extension Of Time Limits</u> (at 57795-96) that Commerce will not adopt rules that are "inflexible to permit" Commerce "to effectively and fairly administer the AD and CVD laws" – *i.e.*, Commerce will not adopt rules that unnecessarily hamstring/prevent Commerce to achieve its statutory mandate to calculate accurate subsidy (or dumping) margins. Commerce, <u>Modification of Regulation Regarding the Extension of Time Limits</u>, 78 Fed. Reg. 3367, 3370 (Dep't of Commerce Jan. 16, 2013).

But that is what Commerce's rejection of TKT's questionnaire response did, stating that, since Commerce did not decide TKT's extension request by the 5:00PM deadline, then Commerce is inflexibly boxed in by its regulation, where the deadline is inexorably 8:30AM the next day.

The <u>Trade Court Opinion</u> at 17, Appx71, said that under the <u>Extension Of Time Limits</u>, the above general fairness principles mandated by the statute do not apply, meaning that Commerce is not free to be flexible in the above regards and cannot achieve the statutory mandate to accurately calculate the subsidy margin. That position runs afoul of this Court's decisions – i.e., Commerce's exercise of discretion as to extension requests and timeliness of submissions (even late ones) must be reasonable considering the statutory mandate to calculate accurate CVD/AD subsidy/dumping margins within the statutory time limits of the particular

-18-

investigation. <u>NTN Bearing Corp. v. United States</u>, 74 F.3d. 1204, 1207 (Fed. Cir. 1995); <u>Pro-Team Coil Nail Enterprise Inc. v. United States</u>, 419 F. Supp. 3d 1319, 1332 (Ct. Int'l Trade 2019). "A regulation which is not required by statute … must be waived where failure to do so would amount to an abuse of discretion" as to the statutory mandate to accurately calculate CVD/AD margins. <u>Timken U.S. Corp. v. United States</u>, 434 F.3d 1345, 1353-54 (Fed. Cir. 2006). Failure to waive any regulation deadline here is an unlawful abuse of discretion. The Commerce artificial deadline here was not necessary to satisfy statutory obligations as to the statutory deadlines in the particular investigation to accurately calculate the CVD/AD margin. <u>Id.</u>

### E.     Commerce Speculation Is Unlawful

The <u>Commerce Decision Memorandum</u> (at 19, Appx208) and <u>Trade Court Opinion</u> at 18-19 (Appx68, 72-73) speculate that TKT counsel "gambled unwisely" (term used) as to when it filed its extension request. Speculation is not substantial evidence to support a lawful determination. See above.

But TKT counsel did not gamble. There is no substantial evidence otherwise. Counsel filed its extension request as soon it became apparent that it could not meet the 5:00PM deadline. See above. <u>Commerce Decision Memorandum</u> and <u>Trade Court Opinion</u> (at 14) provide no reason, much less support, to dispute that assessment, and indeed effectively support it when they call counsel experienced in CVD.  Appx68.

Both then make the unsupported implicit assumption without explanation or substantial evidence that experienced <u>CVD</u> counsel would be experienced in <u>technical computer file corruption</u> issues (that counsel would only come to see as progressed with the filing throughout the night that it had not experienced before, discussed above). The reason for and timing of the third extension request was solely due to technical computer file corruption issues. See above.

Further, the <u>Trade Court Opinion</u> and <u>Commerce Decision Memorandum</u> implicitly assume without support that if TKT counsel had filed the one-day extension request earlier, it would have been granted, even though Commerce did not fully grant any of TKT's extensions as to the time requested. See above. Further, Commerce had already previously rejected TKT extension requests as to a deadline beyond September 15. See above.

Here, the <u>Commerce Decision Memorandum</u> (at 19, Appx208) seems to question TKT counsel's initial experienced judgement that it could meet the 5:00PM deadline when it received TKT's final, completed questionnaire response the morning of the deadline. But it offers no explanation or support for such seeming question.

Notably, in <u>Oman Fasteners LLC v. United States</u>, Slip Op. 23-17 at 5-9 (Ct. Int'l Trade February 2, 2023), experienced counsel in that case thought that it had sufficient time to file the respondent's final questionnaire response received 50 minutes before the 5:00PM deadline. In response, Commerce "said counsel did not

-20-

allow enough time because, as is often said on Wall Street, past performance is no guarantee of future results." Id. So, Commerce seems to be saying that experience doesn't matter. And yet Commerce based its decision there and here on the involvement of experienced counsel. Commerce belies its own decision in that explanation. The Trade Court in Oman Fasteners reversed Commerce illogical "experienced" claim. See above.

In addition, at the time of the TKT 3:50PM extension request, Commerce advised counsel based on Commerce's experience with all counsel to not to begin filings after 4:00PM as best practice based on Commerce's then experience. Commerce, ACCESS, Handbook on Electronic Filing Procedures, Enforcement and Compliance, Version 3.9, August 31, 2020, Help Desk at 16 ("we do not recommend starting any filing after 4:00 p.m"). Appx1815, Appx2427. TKT's counsel actions here reflect that Commerce advise based on Commerce then experience.

Later, based on Commerce's experience in all cases with all experienced counsel, Commerce has changed its position to say not to begin filings after 12:00PM, as now indicated in Commerce ACCESS decisions in all cases. Commerce, Tapered Roller Bearings from China, A-570-061, March 3, 2023, ACCESS Barcode 4349546 at 1. Going forward, TKT counsel is now following Commerce's only just now since revised experienced advice, which was announced as a best practice based on Commerce's newfound experience. Commerce's view of what experience means and advise to trade counsel thereon has changed in a

-21-

significant way from what it said to trade counsel at the time of the TKT filing. Commerce applies to TKT counsel a view of experience that even Commerce did not have at the time of the TKT filing.

In addition, the statutory CVD standard applied to respondents "does not require perfection and recognizes that mistakes sometimes occur," and mistakes cannot be the basis of adverse inferences, which are only permissible under the CVD statute if one did not act to the best of one's ability. Nippon Steel Corp. v. United States, 337 F. 3d 1373, 1374 & 1382 (Fed. Cir. 2003); Trade Court Opinion at 29-30 (Appx83-84); Commerce Decision Memorandum at 26 (Appx215). At best, there is no indication other than TKT counsel made a mistake as to timing of filing an extension request (not the case), but that itself does not justify the adverse inference imposed, per the above decision of this Court.

Finally, in the below cited Commerce decisions, counsel was experienced and yet Commerce granted an extension that it denied TKT under similar circumstances. Commerce has not followed its above Next Day 8:30AM view.  Beyond that, the Trade Court in Oman Fasteners (at 14-16) faulted Commerce's Next Day 8:30AM approach given its genesis based on an "off hand comment response with which has never been codified through a regulation or otherwise reasonably communicated to the bar."  Unlike at the time of the TKT filing here, Commerce now advices counsel of this Next Day 8:30AM practice in its questionnaires, since it was never reasonably

-22-

communicated to the bar. See Commerce, <u>Tapered Roller Bearings from China</u>, A-570-061, March 3, 2023, ACCESS Barcode 4349546 at 2.

### F.    Commerce Violates Its Practice

Commerce's "insist{ance} on technical perfection with the filing of its documents on its ACCESS system" is unreasonable and inconsistent with its own precedent, where Commerce "acknowledges that it has allowed for out of time extensions due to technical filing issues in the past despite the language of its regulations." <u>Celik Halat Ve Tel Sonayi A.S. v. United States</u>, 557 F. Supp 3d 1348, 1361 (Ct. Int'l Trade 2022). The Trade Court stresses that "No one who has confronted issues in using automated filing systems will dispute the unanticipated technical difficulties do sometimes occur." <u>Id.</u> at 1362.

Consider the following examples where Commerce accepted questionnaire responses in cases that are similar or less compelling than for acceptance of TKT's questionnaire response here:

- Respondent failed to file by the deadline. The day after the deadline, the respondent by email claimed undefined "technical issues" and "inadvertent mistake." Commerce gave the respondent two more days to file. Commerce, <u>Stainless Steel Flanges from India</u> C-533-878, Jan. 26, 2023, Feb. 17, 2023, ACCESS barcode 4334269,4343287.

- Respondent filed an extension request 39 minutes before the deadline, stating without more "technical difficulties" as to finalizing the

-23-

documents to file, and issues known well earlier. Commerce granted an extension 12 minutes later, 27 minutes before the deadline. Commerce, <u>Preserved Mushrooms from Poland</u> A-455-806, Feb. 2, 2023, ACCESS barcode 4336887,4336898.

- Respondent missed deadline for questionnaire response. After deadline, Commerce on its own and without explanation extended deadline and accepted the questionnaire response. Commerce, <u>Stainless Steel Wire Rod from Korea</u> A-580-829, Dec. 29, 2022, Jan. 13, 2023, ACCESS barcode 4330993,4325570.

- Respondent states without more that, "because of a problem encountered in filing a response," the respondent missed the deadline and without more explanation, did not request an extension until after the deadline, and then just by email. After the deadline, Commerce granted one day extension and accepted the questionnaire response. Commerce, <u>Gas-Powered Pressure Washers from Vietnam</u> A-552-008, February 10, 2023, ACCESS barcode 4341321.

- Respondent said that it had technical difficulties, not further explained. It requested an extension at 4:34PM of the 5:00PM deadline day. Commerce granted at 4:52PM. Commerce, <u>Utility Scale Wind Towers from Malaysia</u> C-557-822, Jan. 10, 2023, ACCESS barcode 4329323, 4329382.

- Respondent sent a 4:30PM email seeking an extension in the 5:00PM deadline to file a questionnaire response. The extension request was filed on Commerce ACCESS six days after the deadline. Commerce granted the extension and accepted the late questionnaire response. Commerce, Ripe Olives from Spain C-469-818), April 30, 2020, ACCESS barcode 3970287.

- Last minute extension request based on "many documents to upload," so another day requested. Commerce held that "good cause" to grant, where Commerce answered in one hour 31 minutes, shortly before 5:00PM deadline for respondent to answer. Commerce, Certain Pasta from Italy C-475-819, Jan. 30, 2023, ACCESS barcode 4335527, 4335434.

- Respondent filed extension request at 4:37PM of deadline day, citing without more "technical difficulties" in making the filing. The next day after the deadline, Commerce granted an extension.  Commerce, Hot Rolled Steel Flat Products from Korea C-580-884, Feb. 23/24, 2023, ACCESS barcode 4345060, 4345176.

- Respondent filed extension request at 4:38PM for 5:00PM deadline, noting events that well preceded the deadline day and saying it needed more time to complete the full response. Commerce granted, seems after

-25-

5:00PM. Commerce, <u>Oil Country Tubular Goods from Russia</u>, A-821-833, Feb. 14/15, 2022, ACCESS barcode 4212296, 4212207.

●    Respondent filed extension request at 3:37PM for 5:00PM deadline, claiming little more than "technical difficulties in finalizing and filing" data files. Commerce granted an extension for the whole questionnaire and accepted questionnaire filed after deadline, and did so after 5:00PM deadline. Commerce, <u>Crystalline Silicon Photovoltaic Cells from China</u> A-570-979, August 10, 2022, ACCESS barcode 4273305, 4273344.

Note the above decisions were after Commerce's Next Day 8:30AM.

The <u>Commerce Decision Memorandum</u> (cmt. 1 at 6, Appx195) claims that this Court's <u>Dongtai Peak</u> is on point, as the basis for its TKT decision.  In <u>Dongtai Peak</u>, the

●    respondent filed an extension request five minutes before the deadline. After the deadline, Commerce accepted the extension request and untimely questionnaire response. <u>Dongtai Peak Heavy Indus. v. United States</u>, 777 F. 3d 1343, 1347 & 1352 (Fed. Cir. 2015). As noted, Commerce (<u>Commerce Decision Memorandum,</u> cmt. 1 at 6, Appx195) rests on <u>Dongtai Peak</u> for its decision on TKT, saying it is "on point," but then cites to the factually inapposite part of <u>Dongtai Peak</u> (at 1347), where as to another questionnaire the same respondent filed an extension request two days <u>after</u> the deadline, based on reasons known well before

-26-

the deadline, and even then did not thereafter file its questionnaire response within its requested extended time, but rather even later. <u>Dongtai Peak</u> (at 1351-52) emphasized that respondents must file extension requests with Commerce <u>before</u> the deadline of the questionnaire response.

This Court in <u>Dongtai Peak</u> (at 1351) also said that the respondent requested the Commerce review and thus should have been prepared to answer the questionnaire earlier. In contrast, here, TKT did not request the CVD investigation; only Petitioner Mississippi Silicon requested the investigation. Appx499.

Moreover, in <u>Dongtai Peak</u> (at 1347, 1352), Commerce said that Commerce could not grant the above second extension request because of particular issues as to that respondent "in the investigation" as to whether sales were bona fide that required time to fully investigate, time which Commerce said was lacking by the time that the respondent submitted its questionnaire response, given the impending statutory deadline in the investigation.  That is not TKT's case. See above.

In short, Commerce relies on this Court's <u>Dongtai Peak</u> decision to assert that this Court says the opposite of what said.  <u>Dongtai Peak</u> actually supports TKT. Yet <u>Dongtai Peak</u> is "at the core of" Commerce's

-27-

decision to reject TKT's questionnaire response. <u>Trade Court Opinion</u> at 18, Appx72.

In addition, as TKT supported before Commerce (Appx2434-2435), Commerce even grants extension requests after the deadline that only claim as the reason for the extension request the below, all cases less compelling than to grant TKT an extension:

- misunderstanding of Commerce ACCESS requirements. Commerce, <u>Certain Steel Nails from Oman,</u> Oct. 1, 2014 letter to respondent granting its Sept. 15, 2014 extension request.

- respondent not timely file a questionnaire response, saying misunderstood European Union long-standing privacy law. After deadline, respondent requested extension and filed the questionnaire response. Commerce accepted. Commerce, <u>Finished Carbon Steel Flanges from Italy,</u> decision as to respondent's Feb. 22, 2019 request for reconsideration and extension March 5, 2019.

- respondent printer jams. Commerce, <u>Carbon and Certain Alloy Steel Wire Rod from Mexico,</u> Aug. 25, 2017, ACCESS barcode 3611780,3611722.

- confused paralegal. Commerce, <u>Certain Steel Nails from Malaysia,</u> Nov. 5, 2014, granting respondent untimely extension request.

-28-

- respondent deadline calendaring error. Commerce, <u>Cold-Rolled Steel Flat Products from Korea,</u> Jan. 11, 2016 memorandum granting Jan. 5, 2016 extension request.

- respondent requested extension for the wrong questionnaire. Commerce, <u>Narrow Woven Ribbons with Woven Selvedge from Taiwan,</u> Feb. 27, 2015 letter granting respondent Feb. 18, 2015 extension request. ACCESS barcode 3260204,3261940-01.

- counsel overlooked a deadline due to unexplained culmination of a number of factors, including inclement weather. Commerce, <u>Certain Softwood Lumber Products from Canada</u>, March 16, & 17, 2017, ACCESS barcode 3552802,3553216.

- deadline missed due to the year-end holiday period, Commerce, <u>Certain Cold-Rolled Steel Flat Products from Korea</u>, Jan. 5 & 16, 2016 ACCESS barcode 3429991,3431804.

- deadline missed because counsel inadvertently overlooked deadline due to the July 4th holiday, and other work by counsel, <u>Carbon and Certain Alloy Steel Wire Rod from the United Kingdom</u>, Jul. 7/10, 2017, ACCESS barcode 3590026, 3591490.

- counsel overlooked deadline. Commerce granted extension after the deadline. <u>Citric Acid and Certain Citrate Salts from Thailand</u>, Nov. 17, 2017, ACCESS barcode 3642674,3642978.

-29-

Finally, <u>Commerce Decision Memorandum</u> (at 19-20, Appx208-209) and <u>Trade Court Opinion</u> at 20 (Appx74) claim that rejection of TKT's questionnaire response rests on "the facts in <u>Bebitz (CVD)"</u> Slip Op. 20-26 (Ct. Int'l Trade March 2, 2020), <u>Bebitz Flanges Works Private Ltd. v. United States</u>, 433 F. Supp. 3d 1297, 1305 (2020) that "parallel those in this {TKT} investigation nearly exactly …

- … Notably, Bebitz was represented by the same counsel" as TKT. But in <u>Bebitz CVD</u> (at 15, fn. 10), the Trade Court said that counsel should not be blamed for what was client Bebitz's own doing, not its lawyer. The <u>Trade Court Opinion</u> at 20 (Appx74) makes the same legal error.

- In <u>Bebitz CVD</u> at 4-8, 12, 14-17 (n. 14) & 19-20, the Trade Court emphasized that the respondent (a) from day one was not forthcoming with Commerce and was intentionally obtuse as to key investigation issues – e.g., failing to reveal cross-owned affiliates key to the CVD investigation; (b) was given multiple opportunities to answer the subsidy questionnaire over two months and did not do so, where (c) Commerce found at the time of its rejecting of the respondent's questionnaire response that only one month remained until Commerce's already extended preliminary CVD decision deadline, such that no more extension could be granted "in the investigation" and still meet statutory deadlines, and that (d) sufficient time and opportunity was given the respondent to respond. And beyond the above in the Commerce

-30-

discussed companion <u>Bebitz (AD)</u> (CIT Slip Op 20-27), (e) after sixteen respondent extension requests, with some after the deadline but Commerce granted, and eight Commerce supplemental questionnaires, the respondent still had not answered half of Commerce's initial questionnaire issued five months prior, information that had been repeatedly requested, with multiple opportunities for the respondent to provide the requested information, with serious respondent misstatement of the facts.

No <u>Bebitz</u> fact applies to TKT. See above. Yet Commerce, per above, says that it bases its decision to reject the TKT Subsidy Questionnaire on <u>Bebitz</u> as factually on point. See above. The <u>Trade Court Opinion</u> does not address that the Commerce TKT decision erroneously rested on <u>Bebitz</u>.

The list goes on. But the point is clear. Commerce practice is to accept questionnaires in situations similar to, indeed less compelling than, TKT's Subsidy Questionnaire. It is well-established that an "agency action is arbitrary" and thus unlawful "when the agency offers insufficient reasons for treating similar situations differently." <u>SKF USA Inc. v. United States</u>, 263 F. 3d. 1369, 1382 (Fed. Cir. 2001); <u>Trade Court Opinion</u> at 24, Appx78. "Consistency has long been a core interest of administrative law, and inconsistent treatment is inherently significant." <u>DAK Americas LLC v. United States,</u> 456 F. Supp. 2d 1340, 1355-56 (Ct. Int'l Trade 2020) (citing <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944)).

-31-

The Commerce Decision Memorandum (at 18, Appx207) notes TKT cites (at Appx2434-2435) "where Commerce accepted untimely submissions" in situations similar to TKT's. Commerce says this Court "confirmed that Commerce is not bound by its actions in prior proceedings, as each proceeding is a separate act of Commerce's authority that allows for different conclusions based on different facts in the record." Qingdao SeaLine Trading Co., Ltd. v. United States, 766 F.3d 1378, 1387 (Fed. Cir. 2014). But the Commerce Decision Memorandum ends its claim there and does not claim different facts in the TKT cited Commerce decisions indicating that TKT's Subsidy Questionnaire should be accepted, much less that any claimed differences make a difference. That is the Commerce Decision Memorandum's sole stated reason to reject precedent. Above are many on point Commerce cases where Commerce accepted respondent questionnaire response under circumstances less compelling than TKT.

Above, Commerce repudiates the principle that similar cases must be decided similarly, even though doing so is required to not be unlawfully arbitrary and capricious. NLRB v. Wash. Star Co., 732 F.2d 974, 977 (D.C. Cir. 1984) (per curiam) ("The present sometimes-yes, sometimes-no, sometimes-maybe policy of {enforcing} due dates cannot, however, be squared with our obligation to preclude arbitrary and capricious management of the {agency}'s mandate."). The Trade Court Opinion (at 25, Appx79) makes the same legal error.

-32-

The Commerce Decision Memorandum also fails to note, much less address, that, in Qingdao SeaLine, this Court said that Commerce "explained the differences" between the records of the cases and "reasonably concluded" that there was a basis for different decisions, thus rendering it "not improper" to reach different decisions. Here, the Commerce Decision Memorandum did not.

Finally, as indicated above, the Commerce Decision Memorandum (at 19, Appx208) claims that Dongtai Peak and Bebitz are exactly on point as to TKT, belying Commerce's claim that every case is different in some way, so it does not have to consider precedent.

## G.    The Trade Court Opinion Unlawfully Affirms Commerce For Reasons Commerce Does Not Say

The Trade Court Opinion (at 15, Appx69) says TKT's third extension request should have more detail (e.g., an affidavit). The Commerce Decision Memorandum did not say that. It is "well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." Motor Vehicle Mfrs. Ass 'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983); Prime Time Corn. LLC v. United States, 43 CIT n. 14, 396 F. Supp. 3d 1319, 1331 n.14 (Ct. Int'l Trade 2019) ("not for this court to provide a rationale supporting Commerce's determination.").

In fact, TKT's third (and prior) extension requests was comparable to other similarly situated extension requests that Commerce granted. Compare the Trade

-33-

Court Opinion (at 10, Appx64) quote of the TKT third extension request to the above cites where Commerce granted an extension request.

Finally, this counsel, said to be an experienced counsel, and in that regard has filed many extension requests similar to here, would be surprised that after the record closed, the extension request is deemed insufficient, with a new "standard" for an appropriate extension request announced post hoc, at least just for this case, and an impermissible "gotcha policy" where no opportunity was given to address before the record closed. That is unlawful. Böwe–Passat v. United States, 17 CIT 335 (1993) (Commerce not raising unidentified deficiencies until its final decision when too late for a party to address is impermissible "gotcha policy"). But Trade Court Opinion does that.

Notably, the Trade Court in Oman Fasteners, supra at 14, states experienced trade counsel would seem well advised under Commerce's Next Day 8:30AM approach to have a boilerplate (its word) extension request ready to file just before 5:00PM when hard pressed as to a Commerce deadline.

The Trade Court Opinion also seeks to ignore or rewrite the Commerce Final Decision to say that Commerce did not rely on Dongtai Peak and Bebitz. But Commerce Final Decision explicitly did. See above. Again, the Trade Court Opinion cannot rewrite a Commerce decision to affirm it. See above.

-34-

## III.  COMMERCE UNLAWFULLY ENDED THE INCENTIVE TO COOPERATE

The Government of the Republic of Kazakhstan fully cooperated, answering Commerce questionnaires. Appx1192, Appx2087, Appx2364, Appx2421-2422. Then, Commerce unlawfully rejected TKT's Subsidy Questionnaire. At that point, Commerce effectively made clear that no matter what the Kazakh Government did, Commerce would reach the same result – i.e., a 160% adverse inference CVD import duty margin on Kazakh silicon metal. Commerce's unlawful actions as to TKT eliminated any reason or incentive for the Kazakh Government to further cooperate. Appx2444-2445. Thus, the Kazakh Government did not answer Commerce's supplemental questionnaire to verify the Kazakh Government's prior questionnaire responses. Id.; Commerce Decision Memorandum at 2 & 4, Appx191, Appx93. For that reason too, Commerce imposed adverse inferences on Kazakhstan to determine the amount of subsidies per the CVD statute. Id.  That is effectively bootstrapping one impermissible adverse inference (on TKT) on another impermissible adverse inference (on the Government of Kazakhstan).

The sole purpose of adverse inferences is to incentivize cooperation with Commerce. Essar Steel Ltd. v. United States, 678 F.3d 1268, 1276 (Fed. Cir. 2012). Commerce undermined that incentive as to the Kazakh Government. Commerce cannot then impose adverse inferences on the Kazakh Government/Kazakhstan, as here the use of adverse inferences is doing the opposite of what intended. Olympic

-35-

Adhesives v. US, Court No. 89-1367 (Fed. Cir. March 28, 1990); F.11i De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 21 CIT 1124, 980 F. Supp. 485 (1997).

Commerce has a statutory obligation to balance its statutory mandate to find an accurate subsidy margin with inducing compliance. F.11i De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000). An adverse inference may not be drawn merely from failure to respond, but rather only where it is reasonable for Commerce to expect a more forthcoming response under the specific circumstances. Nippon Steel Corp. v. United States, 337 F.3d 1373, 1383 (Fed. Cir. 2003). Again, Commerce eliminated any incentive or reason for the Kazakh Government to cooperate further. Adverse inferences here undermine both the statutory mandate to calculate an accurate subsidy margin and to encourage compliance.

Further, Commerce cannot per se impose adverse inferences on a respondent company for the actions of a third party, here a government. Clearon Corp. v. United States, Slip Op. 20-141 (Ct. Int'l Trade Oct. 8, 2020); Guizhou Tyre Co. v. United States, 415 F. Supp. 3d 1402, 1405 (Ct. Int'l Trade 2019).

In reply, Commerce says that:

an adverse inference in a CVD investigation may have "a collateral impact on a cooperating party," without being rendered "improper." Where, as here, an adverse inference made against the {government} "collaterally reaches" a cooperating company that is "within the {country}, benefitting directly from subsidies the {government} may be providing," then the adverse inference is

-36-

permissible, because it "has the potential to encourage the {government} to cooperate so as not to hurt its overall industry."

Commerce Decision Memorandum at 50, Appx239 (citing a Trade Court decision).

Commerce's claim is based on the unsupported assumption that there is more than one Kazakh silicon metal producer.  There is not. There is only one Kazakh silicon metal producer, TKT. Appx502-504, Appx604, Appx2444. And Commerce imposed a 160% adverse inferences CVD duty on TKT. Commerce again acts unsupported by any evidence, much less substantial evidence. Neither Commerce nor the Trade Court address this legal error.

## IV.   COMMERCE APPLIED AN UNLAWFUL ADVERSE, PUNITIVE CVD RATE

Commerce rejection of TKT's Subsidy Questionnaire is further unlawful since grossly disproportionate to any minor, technical, filing infraction – *i.e.*, Commerce imposed a high adverse trade-stopping 160% CVD import cash deposit rate for claimed under two hour late response for which an extension had been timely requested. See above.  For four years and continuing, TKT has been unable to sell to the United States as a consequence, where Commerce has also held that TKT may not seek an administrative review as to the extent of any subsidies received to remedy the situation because TKT is unable to sell to the U.S. because of the 160% CVD. Commerce Final Determination, 86 Fed. Reg. at 11726, Appx138; Commerce, Silicon Metal from The Republic Of Kazakhstan: Recission

-37-

of CVD Review, <u>12/3/20-12/31/2021 Review Period</u>, C-834-811, 81 Fed. Reg.

27861, May 3, 2023; and accompanying Commerce Memorandum thereon, at 2-4, 6

& 11, April 27, 2023, ACCESS barcode 4370716. No substantial evidence supports

that TKT received subsidies, much less 160%, where the adverse inference is based

on the unsupported and unrealistic assumption that a company can gain sales

revenue without incurring any cost. Appx2197-2198, Appx2421.

In <u>Celik Halat ve Tel Sanayi A.S. v United States</u>, 557 F.Supp.3d 1348, 1361

(Ct. Int'l Trade 2022), the Trade Court found that "Commerce imposed a grossly

disproportionate penalty for what essentially was a minor technical violation that

had no discernible effort on the investigation," where Commerce entirely rejected

responses to Commerce's initial questionnaires. In so holding, the Trade Court said

that:

> nothing in that regulation justified the Department's misuse of 19 U.S.C.
> § 1677e. … Commerce abused its discretion … imposing a draconian
> sanction for what essentially was a minor and technical violation that had
> no discernible effect on the investigation. Commerce is not free to apply
> its regulations in a way that exceeds its statutory authority. Nor is it
> justifiable to do what it has done here, … to produce a manifestly
> unwarranted and unjust result. In applying that rule and related
> regulations on the filing of, and rejection of, responses to requested
> information, Commerce must be mindful of the limitations on the
> exercise of its statutory and regulatory powers.

<u>Id.</u> at 1380-81. Accord: <u>Artisan Manufacturing Corp. v. United States</u>,

978 F. Supp. 2d 1334, 1345 & 1348 (Ct. Int'l Trade 2014), where the

respondent's questionnaire response was one day late and no timely

extension request.

Even when Commerce exercises its discretion to apply adverse inferences, the

rate must be consistent with Commerce's obligation to calculate fair and accurate

subsidy margins. <u>Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,</u> 716

F.3d 1370, 1379 (Fed. Cir. 2013). "The purpose of section 1677e(b) is to provide

respondents with an incentive to cooperate, not to impose punitive, aberrational, or

uncorroborated margins." *F.11i De Cecco Di Filippo Fara S. Martino S.p.A. v. United

States,* 216 F.3d 1027, 1032 (Fed. Cir. 2000).  Commerce admits that the TKT 160%

CVD rate here is uncorroborated. Appx2198.

## V.    CONCLUSIONS AND RELIEF SOUGHT

No substantial evidence supports that TKT received subsidies, where the

adverse inference is based on the assumption that a company can gain sales revenue

without incurring any cost. Appx2197-2198, Appx2421. Further, TKT and

Kazakhstan was denied meaningfully participation in the investigation (*i.e.,* to

answer subsidy questionnaires).  See above.  Commerce used on adverse inferences,

not actual facts, to calculate the subsidy import duty. A reasonable person would not

deny the accused a right to answer allegations (here as to subsidies). A negative final

CVD determination is required, per the above review standard.

Alternatively (but erroneously), to bring itself into compliance with law,

Commerce could issue an affirmative subsidy finding where no duties or cash deposits

are imposed pending any later Commerce administrative review when TKT can then sell to the USA, a do-over of what should as a matter of law have been done in the original investigation but was not. With approval of the Trade Court, Commerce has done this approach before, at least where in the original investigation there was substantial evidence of dumping/subsidies as to a particular country found via a lawful questionnaire process and verification as to an exporter (which again was not the case here), but not as to the other exporters. Small Business Telephones from Taiwan, 43 Fed. Reg. 42,543, 42,550 (Dep't of Commerce Oct. 17, 1989), affirmed in Auto Telecom Co., Ltd. v. United States, 765 F. Supp. 1094 (Ct. Int'l Trade 1991). Here though, in this investigation, there is not even substantial evidence of any subsidies as to any exporter, none found by Commerce via a lawful questionnaire and verification procedure, as not done here. See above. Thus, again, as a matter of law, a negative final subsidy determination is warranted.

Finally, alternatively and again erroneously, Commerce could accept TKT's Subsidy Questionnaire response and the Kazakh Government's, and not use any adverse inferences and proceed to calculate a subsidy margin for TKT (if any). But there are three problems in doing so: (a) at the time of the statutory deadline for Commerce to decide in the original investigation, there was no substantial evidence of subsidies (see above) and thus a negative subsidy finding should issue; (b) this approach rewards Mississippi Silicon for pushing for the unlawful imposition of 160% subsidy duties on TKT/Kazakhstan for 4 years that stopped all Kazak/TKT

silicon metal trade to the United States and means Commerce can unlawfully impose 160% duties on Kazakh silicon metal for years without consequence except harm to Kazakhstan/TKT; and (c) this alternative just prolongs the 160% subsidy duty pending a belated Commerce investigation that could take many months.

We appreciate the Court's attention to this matter.

Very truly yours,

Peter Koenig
Counsel to TKT and Ministry

May 8, 2023

010-9233-8739/1/AMERICAS

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2022-2204

**Short Case Caption:** Tau-Ken Temir LLP

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 10558 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 05/08/2023          Signature: /s/ Peter Koenig

Name: Peter Koenig

Save for Filing