22-2204

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

TAU-KEN TEMIR LLP, JSC NMC TAU-KEN SAMRUK, MINISTRY OF TRADE AND INTEGRATION OF THE REPUBLIC OF KAZAKHSTAN,

*Plaintiffs-Appellants*

v.

UNITED STATES, GLOBE SPECIALTY METALS, INC., MISSISSIPPI SILICON LLC,

*Defendants-Appellees*

Appeal from the United States Court of International Trade No. 21-173, Judge Leo M. Gordon

PRINCIPAL BRIEF OF TAU-KEN TEMIR, LLP; MINISTRY OF TRADE AND INTEGRATION OF THE GOVERNMENT OF THE REPUBLIC OF KAZAKHSTAN; AND JSC NMC TAU-KEN SAMRUK, PLAINTIFFS-APPELLANTS

> Counsel to Tau-Ken Temir, LLP; Ministry of Trade and Integration of the Government of the Republic of Kazakhstan; and JSC NMC Tau-Ken Samruk
>
> Peter Koenig, Esq.
> Squire Patton Boggs
> 2550 M Street NW
> Washington DC 20236
> 202 669 1901
> peter.koenig@squirepb.com

May 8, 2023 Corrected (just per Court instruction plus more corrections ordered by Clerk of Court)

TKT)

# CERTIFICATE OF INTEREST PER FEDERAL CIRCUIT RULE 47.4

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 22-2204 |
| **Short Case Caption** | Tau-Ken Temir LLP v. United States |
| **Filing Party/Entity** | Tau-Ken Temir LLP; Ministry of Trade and Integration of the Republic of Kazakhstan; JSC NMC Tau-Ken Samruk |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/28/2022

Signature: /s/ Peter Koenig

Name: Peter Koenig

FORM 9. Certificate of Interest

Form 9 (p. 2)
July 2020

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Tau-Ken Temir LLP | None | JSC NMC Tau-Ken Samruk |
| JSC NMC Tau-Ken Samruk | None | None |
| Ministry of Trade and Integration of the Republic of Kazakhstan | None | None |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable        ☐   Additional pages attached

| Jeremy Dutra | Of Counsel | Squire Patton Boggs |
|---|---|---|
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑   None/Not Applicable        ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable        ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-2204

**Short Case Caption** Tau-Ken Temir LLP v. United States

**Filing Party/Entity** Tau-Ken Temir LLP; Ministry of Trade and Integration of the Republic of Kazakhstan; JSC NMC Tau-Ken Samruk

---

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/28/2022

Signature: /s/ Peter Koenig

Name: Peter Koenig

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Tau-Ken Temir LLP | None | JSC NMC Tau-Ken Samruk |
| JSC NMC Tau-Ken Samruk | None | None |
| Ministry of Trade and Integration of the Republic of Kazakhstan | None | None |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

4

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Jeremy Dutra | Of Counsel | Squire Patton Boggs |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

**Error! Hyperlink reference not valid.**

I.    COMMERCE SHOULD ACCEPT TKT'S QUESTIONNAIRE........6

**Error! Hyperlink reference not valid.**

B.    Commerce Should Have Accepted TKT's Third
Extension Request.........................................................8

**Error! Hyperlink reference not valid.**

1.    Commerce Interest In The Finality Of Its
Investigation ..................................................15

**Error! Hyperlink reference not valid.**

3.    Whether The Information Will Increase The
Accuracy Of The Calculated Subsidy Margin .................18

**Error! Hyperlink reference not valid.**

E.    Commerce Speculation Is Unlawful .......................................22

**Error! Hyperlink reference not valid.**

G.    The Trade Court Opinion Erroneously Affirms The
Commerce Decision For Reasonst Commerce Did Not
State.........................................................38

**Error! Hyperlink reference not valid.**

III.    COMMERCE APPLIED AN UNLAWFUL PUNITIVE CVD
RATE.........................................................43

**Error! Hyperlink reference not valid.**

FEDERAL CIRCUIT RULE 47.5 STATEMENT OF RELATED CASES ...........1

JURISDICTION STATEMENT.........................................................1

ISSUES .........................................................1

-i-

STATEMENT OF CASE ...................................................................... 2

SUMMARY OF ARGUMENT ........................................................... 3

ARGUMENT ......................................................................................... 3

   I.    REVIEW STANDARD ............................................................ 3

   II.    COMMERCE SHOULD ACCEPT TKT'S QUESTIONNAIRE ........ 6

        A.    Commerce Should Have Granted TKT's Initial Two Extension Requests ...................................................... 6

        B.    Commerce Should Have Accepted TKT's Third Extension Request ............................................................... 8

        C.    Commerce Fails To Apply Any Standard, Much Less A Supportable One, To Decide TKT Extension Requests .......... 15

            1.    Commerce Interest In Finality Of Its Decision ............. 15

            2.    The Burden "In The Investigation" To Consider Information ....................................................................... 16

            3.    Whether Information Increases Accuracy Of The Calculated Subsidy Margin ............................................ 18

        D.    The Commerce Regulation Violates The Statute ................... 19

        E.    Commerce Speculation Is Unlawful ....................................... 22

        F.    Commerce Violates Its Practice ............................................. 26

        G.    The Trade Court Opinion Unlawfully Affirms Commerce For Reasons Commerce Does Not Say .................................. 38

   III.    COMMERCE UNLAWFULLY ENDED THE INCENTIVE TO COOPERATE ................................................................. 40

   IV.    COMMERCE APPLIED AN UNLAWFUL ADVERSE, PUNITIVE CVD RATE ........................................................ 43

   V.    CONCLUSIONS AND RELIEF SOUGHT ........................... 46

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

19 U.S.C. 706(2)(A) .................................................................... 4

19 U.S.C. § 1516a(a)(2)(B)(i) ...................................................... 1

19 U.S.C. § 1516a(b)(1)(B)(i) ...................................................... 3

19 U.S.C. § 1677e ................................................................... ~~36~~38

28 U.S.C. § 1295(a)(5) .................................................................. 1

28 U.S.C. § 1581(c) ..................................................................... 1

**~~COMMERCE~~Agency Regulations**

19 CFR § 351.302 (c) ..... 10Extension Of Time Limits, Final Rule, 78 Fed. Reg. ~~19 CFR § 351.302~~ ................................................................. 10

~~19 CFR § 351.303~~ .................................................................. 10

~~Commerce,~~ 57,790 (Dep't of Commerce Sept. 20, 2013)................................*passim*

Modification of Regulation Regarding the Extension of Time Limits, 78 ~~FR~~Fed. Reg. 3367 ~~(~~, 3370 (Dep't of Commerce Jan. 16, 2013).......~~17, 31, 32~~

~~Commerce, Extension Of Time Limits, Final Rule, 78 Fed.~~ 18~~Reg. 57,790, 57793 (Sept. 20, 2013)~~ ................................~~9, 10, 12, 16, 17~~

**Court Cases**

Anderson v. U.S. Sec'y of Agric., 462 F. Supp. 2d 1333 (Ct. Int'l Trade 2006)........................................ 4

Artisan Manufacturing Corp. v. United States, 978 F. Supp. 2d 1334 (Ct. ~~Int'l Trade 2014)~~.........................~~35~~Int'l Trade 2014) .................................................................... 38

Auto Telecom Co., Ltd. v. United States, 765 F. Supp. 1094 (Ct. Int'l Trade 1991).................................... ~~38~~40

*Bebitz Flanges Works Private Ltd. v. United States,*
433 F. Supp. 3d 1297 (2020) .................................................................. *passim*

Böwe–Passat v. United States,
17 CIT 335 (1993) ................................................................... 3~~2~~4

Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,
419 US 281 (1974) ......................................................................... 4

Brenner v. Dept. of Veteran Affairs,
990 F.3d 1313 (Fed. ~~Cir. 2021)~~ .............................................. ~~5~~Cir
2021) .................................................................................... 5

Celik Halat Ve Tel Sonayi A.S. v. United States,
557 F. Supp 3d 1348 (Ct. Int'l Trade 2022) .................................. ~~20, 36~~23, 38

*Celik Halat Ve Tel Sonayi A.S. v. United States,*
Slip Op 22-12, Slip Op 22-13 (Ct. Int'l Trade 2022) ........................ 7

Ceramica Regiomontana v. United States,
10 CIT 399 (1986) .................................................................. ~~6~~5

Christensen v. Harris Cty.,
529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) ..................... 11

Clearon Corp. v. United States,
Slip Op. 20-141 (Ct. Int'l Trade 2020) .......................................... ~~34~~36

CP Kelco v. United States,
949 F.3d 1348 (Fed. Cir. 2020) ..................................................... 4

CS Wind Vietnam Co. v. United States,
832 F. 3d. 1367 ~~1373~~ (Fed. Cir. 2016) ......................................... 3

DAK Americas LLC v. United States,
456 F. Supp. 2d 1340 (Ct. Int'l Trade 2020) ................................... ~~29~~31

Dongtai Peak Heavy Indus. v. United States,
777 F. 3d 1343 (Fed. Cir. 2015) ........................... ~~23, 24, 30, 32~~*passim*

-iv-

Dupont Teijin Films USA, LP v. United States,
407 F.3d 1211 (Fed. Cir.
2005).................................................................32005).
3

Dupont Teijin Films v. United States,
Slip Op. 13-11 (Ct. Int'l Trade 2013)................................................... 5

Essar Steel Ltd. v. United States,
678 F.3d 1268 (Fed. Cir. 2012) ....................................................... 3335

F.11i De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,
980 F. Supp. 485 (Ct. Int'l Trade 1997)............................................ 36

F.11i De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,
216 F.3d 1027 (Fed. Cir.
2000)...............................................................332000).
36, 38, 369

Glycine & More, Inc. v. United States,
880 F.3d 1335 (Fed. Cir. Jan. 23, 2018).............................................. 11

Grobest & I-Mei Indus. (Viet.) Co. v. United States,
815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ..................................... 13

Guizhou Tyre Co. v. United States,
415 F. Supp. 3d 1402 (Ct. Int'l Trade 2019)................................... 3436

Hontex Enterprises, Inc. v. United States,
Slip Op. 03-17 (Ct. Int'l Trade 2003)............................................... 11

Julin Forest Industry Jinqiao Flooring Group Co. Ltd. vs. United
States, Slip Op. 23-14 (Ct. Int'l Trade 2023) ..................................... 15

Kirovo Chepetsky Khimichesky Kombinat, JSC v. United States,
58 F. Supp. 3d 1397 (Ct. Int'l Trade 2015)........................................ 5

Lucent Techs., Inc. v. Gateway, Inc.,
580 F.3d 1301 (Fed. Cir. 2009) ...................................................... 43

Marmen Inc. v. United States,
Slip Op. 21-148 (Ct. Int'l Trade 2021)............................................... 13

Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile
     Insurance Co.,
     463 U.S. 29 (1983) ........................................................ 4, 3133

National Steel Corp. v. United States,
     913 F. Supp. 593 (Ct. Int'l Trade 1996) .................................... 17

Nippon Steel Corp. v. United States,
     337 F. 3d 1373 (Fed. Cir. 2003) ..................................... 19, 3422, 36

Nippon Steel Corp. v. United States,
     458 F.3d 1345 (Fed. Cir. 2006) ........................................... 43

NLRB v. Wash. Star Co.,
     732 F.2d 974 (D.C. Cir. 1984) (per curiam) ............................... 329

NTN Bearing Corp. v. United States,
     74 F.3d 1204 (Fed. Cir. 1995) ..................................... 5, 13, 1718

Olympic Adhesives v. US,
     Court No. 89-1367 (Fed. Cir. 1990) ...................................... 36

Oman Fasteners Prime Time Corn. LLC v. United States,
     Slip Op. 23-17 (Ct. Int'l Trade 2023) ............................ 20, 21, 34

Prime Time Corn. LLC v. United States, 396 F. Supp. 3d 1319 (Ct.
     Int'l Trade 2019) ........................................................ 313

Pro-Team Coil Nail Enterprise Inc. v. United States,
     419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ............................. 1718

Qingdao SeaLine Trading Co., Ltd. v. United States,
     766 F.3d 1378 (Fed. Cir. 2014) ................................ 2931, 3032

SKF USA Inc. v. United States,
     263 F. 3d 1369 (Fed. Cir. 2001) ....................................... 2831

Skidmore v. Swift & Co.,
     323 U.S. 134 (1944) .................................................... 2931

Solar World Americas Inc. v. United States,
      962 F. 3d. 1351 (Fed. Cir.
      2020)............................................................................42020).
      4

Sunpower Corp. v. United States,
      179 F. Supp. 3d 1286 (Ct. Int'l Trade 2016).......................................4

Tau Ken Temir LLP et. al. vs. United States et. al., Slip Op. 22-82, (Ct.
      Int'l Trade July 14, 2022).............................................................passim

Tel Sonayi AS v. United States,
      Slip Op 22-12 (Ct. Int'l Trade 2022)...................................................7

Timken U.S. Corp. v. United States,
      434 F.3d 1345 (Fed. Cir. 2006).................................................13, 18

West Virginia v. EPA,
      142 S. Ct. 2587 (2022) ...........................................................1515

Whitman v. Am. Trucking Ass 'ns,
      531 U.S. 457 (2001)..........................................................................15

Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,
      716 F.3d 1370 (Fed. Cir.
      2013) ....................................................................................362013).
      39

**~~AGENCY~~Commerce Decisions**

~~Silicon Metal from Kazakhstan: Preliminary CVD Determination, 85~~
      ~~Fed.~~ Carbon and Certain Alloy Steel Wire Rod from the United
      Kingdom, A-412-826 (Dep't of Commerce Jul. 7, 2017)...................29

Carbon and Certain Alloy Steel Wire Rod from the United Kingdom,
      A-412-826 (Dep't of Commerce Jul. 10, 2017)...............................29

Carbon and Certain Alloy Steel Wire Rod from Mexico, A-201-830
      (Dep't of Commerce Aug. 25, 2017) ...............................................28

Certain Cold-Rolled Steel Flat Products from Korea, A-580-881 (Dep't
      of Commerce Jan. 5, 2016)...........................................................29

Certain Cold-Rolled Steel Flat Products from Korea, A-580-881 (Dep't of Commerce Jan. 16, 2016) .................................................................... 29

Certain Pasta from Italy, C-475-819 (Dep't of Commerce Jan. 30, 2023) ................................................................................................................ 25

Certain Softwood Lumber Products from Canada, C-122-858 (Dep't of Commerce Mar. 16, 2017) ...................................................................... 29

Certain Softwood Lumber Products from Canada, C-122-858 (Dep't of Commerce Mar. 17, 2017) ...................................................................... 29

Citric Acid and Certain Citrate Salts from Thailand, A-549-833 (Dep't of Commerce Nov. 17, 2017) ...................................................................... 29

Crystalline Silicon Photovoltaic Cells from China, A-570-979 (Dep't of Commerce Aug. 10, 2022) ...................................................................... 26

Final Determination, Reg. 78,121, 78,122 (Dep't of Commerce Dec 3, 2020) ............................................................................................................. 6

Silicon Metal from the Republic of Kazakhstan Final CVD Determination, Inv. C-834-811 .................................................................... passim

Gas-Powered Pressure Washers from Vietnam, A-552-008 (Dep't of Commerce Feb. 10, 2023) ...................................................................... 24

Hot Rolled Steel Flat Products from Korea, C-580-884 (Dep't of Commerce Feb. 23, 2023) ...................................................................... 25

Hot Rolled Steel Flat Products from Korea, C-580-884 (Dep't of Commerce Feb. 24, 2023) ...................................................................... 25

Narrow Woven Ribbons with Woven Selvedge from Taiwan, A-583-844 (Dep't of Commerce Feb. 27, 2015) ............................................... 28

Notice Of Intent To Rescind Administrative Review of the CVD Order On Silicon Metal from The Republic Of Kazakhstan, C-834-811, 12/3/20-12/31/2021 .................................................................... 37

Oil Country Tubular Goods from Russia, A-821-833 (Dep't of Commerce Feb. 14, 2022) ...................................................................... 25

Oil Country Tubular Goods from Russia, A-821-833 (Dep't of Commerce Feb. 15, 2022) ................................................................. 25

Preserved Mushrooms from Poland, A-455-806 (Dep't of Commerce Feb. 2, 2023) .................................................................... 23

Ripe Olives from Spain, C-469-818 (Dep't of Commerce April 30, 2020) ........................................................................................ 25

Small Business Telephones from Taiwan, 43 Fed. Reg. *passim* 42,543, 42,550 (Dep't of Commerce Oct. 17, 1989) ......................... 40

Stainless Steel Flanges from India, C-533-878 (Dep't of Commerce Jan. 26, 2023) .................................................................... 23

Stainless Steel Flanges from India, C-533-878 (Dep't of Commerce Feb. 17, 2023) .................................................................... 23

Stainless Steel Wire Rod from Korea, A-580-829 (Dep't of Commerce Dec. 29, 2022) ................................................................ 24

Stainless Steel Wire Rod from Korea, A-580-829 (Dep't of Commerce Jan. 13, 2023) ................................................................. 24

Tapered Roller Bearings from China, A-570-061 (Dep't of Commerce Mar. 3, 2023) ........................................................... 10, 21, 23

Utility Scale Wind Towers from Malaysia, C-557-822 (Dep't of Commerce Jan. 10, 2023) ......................................................... 24

## <u>FEDERAL CIRCUIT RULE 47.5 STATEMENT OF RELATED CASES</u>

There is no other appeal in or from this civil action or proceeding in the lower court or body ~~that was~~ previously before this or any other appellate court.

## <u>JURISDICTION STATEMENT</u>

Per ~~its~~ Rule 28(a)(5), this Court's jurisdiction rests on ~~the following~~:

The Trade Court ~~possessed~~had jurisdiction ~~to entertain this action per~~here under 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c).  Trade Court Opinion at 2-3; Appx56-57.

The statutory basis for this Court's jurisdiction ~~to entertain this~~for appeal is 28 U.S.C. § 1295(a)(5).

The Trade Court entered ~~its~~ final judgment on July 14, 2022. Appx2-3.  Per Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure, this appeal was timely filed ~~on~~ September 11, 2022.

## <u>~~STATEMENT OF~~ ISSUES</u>

Whether the U.S. Department of Commerce's (~~"~~(Commerce~~"~~)) rejection of Plaintiffs-Appellants TKT extension request and questionnaire response was unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Whether the ~~use of~~adverse facts ~~was~~were unsupported by substantial evidence or otherwise not in accordance with law.

-1-

## STATEMENT OF CASE

Plaintiff-Appellants Tau Ken Temir LLP ("TKT"), Ministry ("Ministry") of Trade and Integration of the Government of the Republic of Kazakhstan ("GOK") and JSC NMC Tau-Ken Samruk ("TKS") (TKT and TKS also collectively referred to as "TKT)") contest the February 26, 2021 U.S. Department of Commerce ("Commerce") Final Determination in the Countervailing Duty (CVD) Investigation Silicon Metal from the Republic of Kazakhstan, Inv. C-834-811, 86 Fed. Reg. 11,725 (Commerce, Feb. 26, 2021) ("Commerce Final Determination")"), Appx136-138, and itsCommerce's accompanying February 22, 2021 Issues and Decision Memorandum[1], ("Commerce Decision Memorandum").[2] Appx189-245. The U.S. Court of International Trade ("Trade Court") sustained the Commerce Final Determination in Tau Ken Temir LLP et. al. vs. United States et. al., Slip Op. 22-82, July 14, 2022 ("Trade Court Opinion"), Appx55-86, which we also contest.

Kazakh silicon metal producer, TKT was subject to a Commerce CVD investigation into whether the Kazakh Government subsidizes Kazakh silicon metal exports to the United States. TKT and the Ministry participated in the investigation, answering Commerce questionnaires. Defendant-Appellees U.S. silicon metal

---

[1] Available at https://enforcement.trade.gov/frn/summary/kazakhstan/2021-04032-1.pdf.(last visited this date).

[2] ACCESS is Commerce's public website record where Commerce investigation documents and decisions are filed. Trade Court Opinion at 5.

producers Mississippi Silicon LLC and Globe Specialty Metals, Inc. (collectively, "Mississippi Silicon") filed the countervailing duty (CVD) subsidy petition that led to this Commerce investigation and participated therein.

## SUMMARY OF ARGUMENT

TKT followed Commerce regulations in its request for an extension to answer the Commerce Subsidy Questionnaire. Thus, the TKT extension requests to answer the Subsidy Questionnaire should have been granted. Further, Commerce imposed adverse inferences on TKT and the Kazakh Government, where substantial evidence was lacking that they did not act to the best of their ability, the statutory condition for adverse inferences.

## ARGUMENT

### I.     REVIEW STANDARD

When reviewing a final Commerce CVD decision, this Court applies the same standard of review as the Trade Court. Dupont Teijin Films USA, LP v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005). By statute, Commerce CVD decisions must be supported by substantial evidence, considering the record as a whole, and otherwise be in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i); CS Wind Vietnam Co. v.

United States, 832 F. 3d. 1367, 1373 (Fed. Cir. 2016).[3]  Speculation is not substantial evidence.  Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1327 (Fed. Cir. 2009).

Per this standard, Commerce decisions must be reasonable. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Commerce must "examine the relevant data and articulate a satisfactory explanation for its action," Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 43 (1983), including "a 'rational connection between the facts found and the choice made." Id.; Trade Court Opinion at 3-4; Appx57-58.

Commerce decisions also cannot be arbitrary and capricious. 19 U.S.C. 706(2)(A); Solar World Americas Inc. v. United States, 962 F. 3d. 1351, 1359 n. 2 (Fed. Cir. 2020); Trade Court Opinion at 7-8, Appx61-62. (addressing TKT argument). A decision is unlawfully arbitrary and capricious when it (a) "fails to consider an important aspect of the problem" (State Farm, 463 U.S. at 43; Sunpower Corp. v. United States, 179 F. Supp. 3d 1286, 1295 (Ct. Int'l Trade 2016)), or (b) treats "similar situations in dissimilar ways." Anderson v. U.S. Sec'y of Agric., 462 F. Supp. 2d 1333, 1339 (Ct. Int'l Trade 2006).

Commerce's decision path must "reasonably be discerned, … the required explanation must reasonably tie the contested determination to the statutory standard

---

[3] As to the issues in this brief, the trade statute covering and Commerce regulations on countervailing duty and antidumping (AD) is are the same.  Trade Court Opinion at 5-7, Appx59-61.

and to the record evidence by indicating what statutory interpretations the agency is adopting and what facts the agency is finding." <u>CP Kelco v. United States</u>, 949 F.3d 1348, 1356 (Fed. Cir. 2020); <u>Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.</u>, 419 US 281, 286 (1974). Commerce's exercise of its discretion must be reasonable in light of its statutory mandate to calculate accurate subsidy margins – Commerce abuses its discretion when its decision is "clearly unreasonable, arbitrary, or fanciful." <u>NTN Bearing Corp. v. United States,</u> 74 F.3d 1204, 1208 (Fed. Cir. 1995).

"The enforcement of . . . deadlines is an exercise of Commerce's discretion, and should therefore be examined to ensure against abuse of discretion." <u>Kirovo Chepetsky Khimichesky Kombinat, JSC v. United States,</u> 58 F. Supp. 3d 1397, 1411 (Ct. Int'l Trade 2015). When considering whether Commerce's application of a non-statutory deadline in a given case is an abuse of discretion, Commerce's discretion "is bounded at the outer limits by the obligation to carry out its statutory duty of determining {CVD} margins as accurately as possible." <u>Dupont Teijin Films v. United States</u>, Slip Op. 13-11 at 13 (Ct. Int'l Trade 2013). An agency abuses its discretion where, inter alia, "'the decision . . . represents an unreasonable judgment in weighing relevant factors.'" <u>Brenner v. Dept. of Veteran Affairs</u>, 990 F.3d 1313, 1324 (Fed. Cir 2021).

"Of course, this Court will not allow an agency, under the guise of lawful discretion, to contravene or ignore the intent of the legislature or the guiding purpose of the statute. Thus, in reviewing a Commerce CVD decision, the court must

ensure that" Commerce "methodology is a reasonable means of assessing the net benefit received as a result of the illegal subsidy." <u>Ceramica Regiomontana v. United States</u>, 10 CIT 399, 405 (1986).

## ~~ARGUMENT~~

~~I~~

## **II**. **COMMERCE SHOULD ACCEPT TKT'S QUESTIONNAIRE**

### A. **Commerce Should Have ~~Fully Accepted~~Granted TKT's Initial Two Extension Requests**

TKT timely ~~filed (~~answered (and ~~without extension request) answers to~~ Commerce's first ~~two questionnaires, identifying five cross-owned affiliates to answer Commerce~~ three questionnaires on ~~any government subsidies.~~cross-owned affiliate companies, to facilitate this matter. Trade Court Opinion at 4, Appx58; Appx607, Appx719, Appx778, Appx830, Appx982, Appx1034, Appx2032, Appx2418. Based on those answers, Commerce ~~then issued to these~~said six companies ~~its~~must answer Commerce's Subsidy Questionnaire as to any government subsidies to TKT. Appx2195.[4]

---

[4] At times, the Trade Court Opinion at 4, 10, 12 (Appx58, Appx64, Appx66) calls this Subsidy Questionnaire the First Supplemental Questionnaire.

Well before the deadline to answer the Subsidy Questionnaire, TKT counsel requested a two-week extension to answer, noting the huge amount of information requested, that the individuals involved were new to the CVD process and, that all had to respect COVID travel and stay at home restrictions, making questionnaire response preparation difficult, all good cause for an extension precluding travel or in person meetings, the fact that six different entities had to respond, COVID furloughs of staff leaving short-staffed, where at the same time Commerce continued adding to the list of companies to answer, and that TKT was working flat out to answer. Appx882, Appx1814-1815, Appx1924, Appx2087, Appx2432-2433, Appx2426-2427, Appx2430, Appx2446, Appx2451-2457. Without explanation, Commerce rejected the two-week extension request, granting only gave a week. Appx932. Then, again, well before that initially granted one-week extended date, TKT counsel requested a second extension to September 17, 2020, for the same reasons as indicated in the first extension request. Appx1091. Without explanation, Commerce again rejected the request, granting only granted to September 15, 2020. Appx1142. Note that counsel filed the extension requests early when the circumstances so permitted, and it was clear an extension was needed. Appx2418.

Commerce should not have denied Commerce's denial of the above full extension requests . That denial is not supported by substantial evidence. Indeed Commerce provides no support otherwise.  Actually, proximate to the time of its rejection of the TKT's full extension requests above and thus questionnaire

-7-

response, Commerce ~~provided no evidence (much less substantial evidence) or~~ ~~explanation for the denial.   In contrast, Commerce granted~~gave itself 4 months extension ~~for COVID reasons~~ when Commerce needed ~~the time.  Calik~~time given the same stay at home COVID restrictions, an inconsistency the Trade Court finds unlawful.  Celik Halat ve Tel Sonayi ~~AS~~A.S. v. United States, Slip Op 22-12 at 24 and Slip Op 22-13 at 33 (Ct. Int'l Trade Feb. 15, 2022~~) (Commerce granting itself~~ ~~extensions as to COVID and not so much for respondents unlawful~~).

If ~~the~~ full extension in the first two TKT extension requests ~~had been~~to September 17 was granted, requests that no one disputes as timely and adequately explained, TKT's September 17 filed Subsidy Questionnaire response ~~here~~ would have been timely and accepted, not rejected. The Trade Court Opinion and Commerce Decision Memorandum fail to mention, much less address, this fatal legal error in Commerce's rejection of TKT's Subsidy Questionnaire response.

## B.    Commerce Should Have Accepted TKT's Third Extension Request

TKT ~~worked hard to answer the questionnaires.   They were finally done and~~ ~~counsel~~ received ~~by TKT's counsel the morning (10AM)~~the final, fully completed TKT questionnaire responses from TKT at 10:58AM of the ~~filing deadline.~~ ~~Counsel~~due date. TKT counsel, experienced ~~in~~, felt this ~~matter (Trade Court Opinion~~ ~~at 14-15), felt~~was received within the time to meet the 5:00PM deadline. Commerce Decision Memorandum at 16, Appx205; Trade Court Opinion at 10-11, 14-15, Appx59-60, Appx64-65, Appx68-69.

-8-

But~~then~~ unanticipated technical file issues emerged – *e.g.*, in the assimilation of the response, file corruption, difficulty creating the requisite searchable PDFs of foreign language documents, etc. Trade Court Opinion at 5-6, 11, Appx59-60, Appx65; Appx 1306, Appx1815. These unanticipated issues had not occurred as to received files from TKT ~~as to~~for the first two filings, ~~further indicating~~ that ~~they~~ were ~~unanticipated.  And while~~timely filed.

While counsel may be experienced in CVD law, these were unanticipated computer document issues. When it became apparent that technical computer issues in the finalization of the received full questionnaire for filing that the 5:00PM deadline could not be met and that an extension was needed, TKT counsel immediately filed (at 3:50PM of the due date) on Commerce ACCESS for internet filings a stand-alone written third extension request for one more day to answer the Subsidy Questionnaire. Trade Court Opinion at 5 &10 (Appx59, Appx64).[5] The Trade Court Opinion at ~~5 &10 (Appx59, Appx64)~~ 4-6 (Appx58-60) correctly said that:

> The parties agree that {TKT} filed a third request for an extension of time on a timely basis. (emphasis added)

---

[5] ACCESS is Commerce's public website record where Commerce investigation documents and decisions appear. Trade Court Opinion at 5, 7, Appx59, Appx61; Commerce CVD Questionnaire at 2,6, Appx605, Appx615.

The Trade Court Opinion at 10-11 (Appx64-65) incorrectly ~~states~~says without support that TKT counsel tried to file ~~at 3:46 PM~~before 5:00PM on the September 15~~, 2023 and that:~~ due date. TKT counsel did not begin to file the questionnaire response until 5:31AM September 16. Commerce Decision Memorandum at 15, Appx204; Trade Court Opinion at 14, Appx68.

Counsel ~~indicated that it experienced technical/computer problems when initially attempting to file on ACCESS; yet again, it continued to believe that these problems were fixable before the 5:00 pm filing deadline on September 15th.~~

~~Actually, the Trade Court Opinion's cited record does not say that.  And no party argued that. At no point did TKT counsel try to file TKT's questionnaire response by 5:00 PM September 15, 2020 filing deadline. Commerce Decision Memorandum at 15, Appx204; Trade Court Opinion at 14, Appx68. The reason was that counsel was working~~sought to address ~~the~~unanticipated technical computer issues as to ~~the~~documents, that preceded then seeking to file them on Commerce ACCESS.  ~~That was the core issue.~~  Commerce ACCESS does not help with questionnaire response document preparation~~.~~ (e.g., file corruption). No one says, much less supports, otherwise. The claim that TKT counsel did not call ACCESS (Trade Court Opinion at 14) on September 15 thus misses the mark. ~~Anyway~~

More significant, the full extent of the problem was not known until after business hours on September 15, when Commerce ACCESS was closed. Appx59, Appx1815, Appx1816, Appx2419, Appx2427. ~~Actually,~~TKT counsel did not start

-10-

to file the submission until 5:31AM September 16. <u>Trade Court Opinion</u> at 14, ~~Appx 68.~~ Appx68; Appx1356-1358. There was no one to call at Commerce, including its ACCESS staff, as they were closed and would not open until 8:30AM, which was when the filing was due such that the deadline is necessarily missed. Appx2427. Commerce now acknowledges this infirmity in its practice and now says that, if request extension for technical difficulties, and Commerce not decide by deadline, then contact the Commerce case analyst at 8:30am the day after the deadline to address/remedy.  Commerce, Tapered Roller Bearings from China, A-570-061, March 3, 2023, Commerce ACCESS ~~was closed. Appx1356-1358~~barcode 4349546 at 2.

By TKT's filing of the extension request on Commerce ACCESS, the many involved Commerce officials immediately learned of the extension request. Commerce, <u>Extension Of Time Limits, Final Rule,</u> 78 Fed. Reg. 57,790, 57793 (Sept. 20, 2013) ("<u>Extension Of Time Limits</u>"). Commerce regulations do not say to do more than that (Trade Court Opinion at 7; Appx61) because Commerce ACCESS is designed to immediately alert all Commerce officials simultaneously (<u>Extension Of Time Limits, at 57793</u>~~Id.; Appx61~~), many of whom the respondent may not even know are working on the case~~, or~~ at that point in time. No phone call can do that, which may be why Commerce regulations do not say to make a phone call, and rather ~~say~~state to file an extension request electronically on Commerce ACCESS for immediate notification to all. See below.

-11-

Commerce regulation 19 CFR § 351.302 (c) states that "before the applicable time limit" to answer a Commerce request "expires, a party may request an extension" via filing a written request on Commerce's internet site ACCESS for filing documents. Any extension "request must be in writing, in a separate, stand-alone submission, filed consistent with § 351.303 {*e.g.*, on ACCESS}, and state the reasons for the request." In its <u>Extension Of Time Limits</u>, 78 Fed. Reg. at 57791-92, Commerce explains that its regulation 19 CFR § 351.302:

> considers that an extension request is untimely if it is filed after the applicable time limit expires. Therefore, we have determined that the term untimely in the final rule is defined as an extension request that is received after the applicable time limit expires

to answer the questionnaire. Similarly, the Commerce ~~Initial~~ Questionnaire Cover Letter ~~at 3~~<u>states</u> (Appx604) ~~to TKT states~~ that any extension request must "be communicated in writing to Commerce; otherwise the original deadline will apply."

~~Following Commerce's regulation~~<u>As discussed above</u>, TKT counsel did all the above outlined in Commerce's regulations to perfect a timely one-day final, third extension request, as soon as ~~knew~~<u>it was known</u> that more time was needed, and how much – *i.e.*, at about 3:50 p.m. of the September 15, 2020 due date.~~–~~

~~Commerce and the Trade Court Opinion (at 14) say that TKT counsel is experienced. They do not explain the significance of that comment. If they mean that counsel was aware of the above regulation, it supports our argument here.~~

Where the regulation

-12-

is clear, no deference {to Commerce claims} is warranted. Deferring to Commerce's position "would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation." <u>Christensen v. Harris Cty.</u>, 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (unambiguous regulation could not be rewritten by agency under guise of interpreting regulation and judiciary owed no deference to agency interpretation).

<u>Glycine & More, Inc. v. United States</u>, 880 F.3d 1335, 1345 (Fed. Cir. Jan. 23, 2018);

<u>Hontex Enterprises, Inc. v. United States</u>, Slip Op. 03-17 at 41 (Ct. Int'l Trade Feb. 13, 2003) (Commerce's "incompatible departure from the clear meaning of the regulation" is unlawful.)

Counsel was able to file ~~the TKT~~TKT's several thousand-page questionnaire response by 10:11AM the next morning, one hour and forty-one minutes after Commerce's 8:30AM opening for business the next business day after the deadline, and before 5:00PM that day requested in the one-day extension request. <u>Trade Court Opinion</u> at 5, Appx59 (TKT "was unable to complete the entirety of the filing until 10.11am on September 16th, one hour and 41 minutes beyond the 8:30 am deadline."); Appx2418.

Two weeks later Commerce said (Appx1712) that:

Commerce was unable to respond to this {TKT extension} request. Therefore, in accordance with the <u>Extension of Time Limits</u> notice, where Commerce is unable to notify the party requesting an extension of the disposition of that request by 5:00 p.m., the submission would be due by the opening of business, i.e., 8:30 a.m., on the next work day. {we call this Next Day 8:30AM}

<u>Commerce Decision Memorandum</u> at 15, 16, 18, Appx204-205, Appx207; <u>Trade Court Opinion</u> at 10-11, Appx65-66. Commerce said that since the questionnaire

response was filed at 10:~~41am~~10AM, and not 8:30AM, it was untimely and so rejected.  Appx1712.[6]

The Commerce (Decision Memorandum (at 17, Appx206) and the Trade Court Opinion (at 14; Appx68) say that TKT counsel did not attempt to contact Commerce. In fact, TKT counsel followed Commerce's regulation and questionnaire, which say to do an ACCESS filing, to contact Commerce and does not say to make a telephone call. That makes sense as the ACCESS filing immediately notifies/contacts all concerned at Commerce. See above. Anyway, as Commerce admits above (Appx1712), no one was available at Commerce ("Commerce was unable to respond" ~~to the ACCESS request that went to many).~~").

~~The Trade Court Opinion at 14-15 just states that Commerce granted multiple extensions but fails to address the above.  The statement just begs the question, to which we further address as follows.~~

---

[6] Commerce also initially claimed TKT's ~~questionnaire~~Subsidy Questionnaire response was incomplete. Appx1712. TKT ~~replied that~~documented that claim was unsupported by substantial or any evidence ~~and indeed wrong~~. Appx1921-1922, Appx2030-2032, Appx2420-2421, Appx2437-2443. ~~ Commerce did not answer~~Commerce did not discuss, much less refute, that TKT reply, instead saying "Commerce is continuing to base its determination to reject TKS/TKT's initial questionnaire response as untimely based on the ~~specific record facts and argument~~lateness of ~~TKT's reply except to say that incompleteness was not~~ the ~~basis for rejection~~submission, rather than the content of the ~~Subsidy Questionnaire response. See~~" filing rendering its completeness "moot." Commerce Decision Memorandum~~, Comment 1~~ at 20-~~21~~, Appx209-~~210~~; Trade Court Opinion at 15, Appx69~~.~~ (Commerce did not rely on any claimed TKT "failure to provide a full version of the submission as a reason for its rejection.").

-14-

### C. Commerce Fails To Apply Any Standard, Much Less A Supportable One, To ~~Deny The~~Decide TKT Extension Requests

It is ~~well~~-established that ~~the~~legal factors that ~~Commerce decisions~~ must ~~consider as~~be considered to ~~whether to~~ reject ~~filings~~a filing as untimely are: (1) Commerce'~~'~~s interest in ~~ensuring~~ finality ~~as to~~of its final (not preliminary) decision, (2) the burden on Commerce "in the investigation" ~~in particular~~at issue (not ~~more~~ broadly) to consider the ~~CVD questionnaire response~~filing to calculate the CVD/antidumping (AD) margin~~,~~ and (3) ~~whether~~if the information ~~will increase~~in the filing increases accuracy of ~~the~~ calculated subsidy margins; Commerce~~'s~~ failure to ~~consider all these factors~~do so is an unlawful abuse of discretion. NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995); Timken U.S. Corp. v. United States, 434 F.3d 1345 (Fed. Cir. 2006); Marmen Inc. v. United States, Slip Op. 21-148 at 15 (Ct. Intl Trade 2021); Grobest & I-Mei Indus. (Viet.) Co. v. United States, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012~~), and the many cases cited therein.~~).

The Commerce ~~effectively~~Decision Memorandum did not consider, much less discuss, any of these ~~three~~ factors ~~as to~~on whether to fully accept any of TKT's three extension requests as to the Subsidy Questionnaire ~~response~~, much less the filed Subsidy Questionnaire, rendering Commerce's ~~decisions thereon~~action unlawful.

Consider each factor:

### 1. Commerce~~'s~~ Interest In ~~The~~ Finality Of Its ~~Investigation~~Decision

~~This information in the~~TKT extension requests were for, and TKT's Subsidy Questionnaire was submitted by, September 16, 2020, well before Commerce's final

-15-

~~determination.~~ decision. See below. So this factor ~~was~~is met to accept ~~the questionnaire response~~it.

### 2. The Burden "In The Investigation" To Consider ~~The~~ Information

Commerce never says that fully granting TKT's ~~three~~first two extension requests to September 17, or TKT's Subsidy Questionnaire filed September 16, would ~~have hindered it "in~~hinder its investigation~~"~~ to meet~~ing~~ its statutory mandate to accurately calculate the ~~accurate~~ subsidy margin in ~~th~~its investigation ~~involving~~of Kazakh silicon metal.~~ ~~by the statutory deadline. Sufficient time remained to complete the investigation and issue a final decision. At the time TKT submitted its Subsidy Questionnaire response, that was also within the period for which TKT ~~had~~requested an extension, Commerce's final decision was 158 to 258 days away (preliminary decision was 73 days away). Commerce Decision Memorandum at 2, Appx191; Appx2419, Appx2425, Appx2463.

Rather, the Commerce Final Determination ~~abstractly~~ says~~ that~~:

Commerce establishes deadlines so that it can conduct this (and its numerous other trade remedy proceedings) in an efficient manner within its statutory and regulatory deadlines. Therefore, it is critical that parties file documents by the established deadline, or timely request an extension of such a deadline such that Commerce can provide a considered response. Timely filings and timely extension requests contribute to Commerce's efficient administration of the numerous cases before it and the AD/CVD laws. Conversely, untimely filings and last-minute extension requests hinder the efficient conduct of our proceedings, and require that Commerce devote additional time and resources to addressing such untimely filings and last-minute requests. Additionally, although the burden associated with a single late-filed questionnaire response may be perceived as minimal, that burden is not minimal when aggregated across all proceedings. Accordingly, for the efficient conduct of its

-16-

proceedings, it is critical that parties adhere to the deadlines established by Commerce.

Commerce does not say the above in ~~the many~~ other cases where ~~have been there are claimed~~ untimely or last-minute extension requests ~~or questionnaire responses,~~ and ~~yet~~ Commerce ~~still~~ accepts the extension request and questionnaire~~,~~ ~~which~~. See below cites. That belies ~~the above~~this claim. ~~See below.~~ It is ~~thus~~ unlawfully arbitrary and capricious to apply the above ~~broad statement~~ to TKT ~~in particular and perhaps an isolated few others,~~ and not others ~~similarly situated.~~ . This claimed reason is also contrary to the above discussed court decisions which ~~solely~~ focus on Commerce's burden "in the investigation~~" at hand,~~" not ~~abstractly and~~abstract generally. A claim that Commerce can simply not decide matters and not satisfy the statutory mandate to calculate CVD/AD margins to conserve resources violates the CVD/AD statute. Zhejiang Native Produce & Animal By-Products Import & Export Corp., 637 F. Supp 2d 1260, 61-63 (Ct. Int'l Trade 2009); Appx1815, Appx1817.

Further, Commerce can and does decide extension requests after the deadline~~,~~ ~~as convenient.~~ See below ~~cited decisions.~~ . So~~,~~ there is no such burden that Commerce claims above. In fact, here, Commerce decided TKT's one-day extension request two weeks after it was filed. See above.

More fundamentally, the ultimate source of authority for ~~the development of~~an agency to develop policy that affects rights is legislative, here the Congress. West

*Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022) ("We presume that ~~'~~Congress intends to make major policy decisions itself, not leave those decisions to agencies"); *Whitman v. Am. Trucking Ass 'ns*, 531 U.S. 457, 468 (2001) (Congress "does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions."); *Julin Forest Industry Jinqiao Flooring Group Co. Ltd. vs. United States*, Slip Op. 23-14 at 33-36 (Ct. Int'l Trade Feb. 9, 2023).  Here, the statutory mandate is ~~to~~ accurately calculat~~e~~ing CVD/AD margins within the statutory deadlines set for an investigation. See above. Congress did not say that Commerce may elect to not meet ~~it~~these statutory obligations to ~~save money or for its own convenience.~~ conserve resources. That is an impermissible Commerce ~~provides no support for such an implicit assumption in its claim~~departure from the statutory scheme.

The Trade Court Opinion does not note, much less defend, this basis of the contested Commerce decision.

### 3.     Whether ~~The~~ Information ~~Will Increase The~~Increases Accuracy Of The Calculated Subsidy Margin

In rejecting the TKT Subsidy Questionnaire response, Commerce did not then have information ~~with which~~ to calculate the subsidy margin and thus used adverse inferences ~~not based on data~~ as to ~~the actual~~claimed subsidy ~~amounts.~~ margin. Accepting the TKT Subsidy Questionnaire response as to any actual subsidies received would necessarily have increased the accuracy of the calculated subsidy margin.

For the above reasons, the TKT Subsidy Questionnaire Response should have been accepted as a matter of law.

———————

Indeed, Commerce admits that it is not applying any standard to decide extension requests. Commerce, Extension of Time Limits, 78 FR at 3369, said that:

> a standard under which untimely-filed {i.e., after the deadline} extension requests will be considered is not provided under the current regulation, and so the inclusion of a standard will provide clarity to parties appearing before the per {Commerce}… If {Commerce} maintained the current rule, then there would be no standard under which {Commerce} would consider untimely-filed extension requests. This would not provide certainty to parties participating in AD and CVD proceedings, and would not address the administrative issues which {Commerce} has encountered.

Here, Commerce admits that it has no standard to decide extension requests, but then now only adds a standard as to extension requests filed after the deadline, not before, the situation here. There is still no Commerce standard as to extension requests filed before the deadline (like TKT's). Commerce ignores the long-established court precedent. Neither Commerce nor the standard discussed above. It is well-established that when an agency acts without standards, that itself is arbitrary and capricious. National Steel Corp. v. United States, 913 F. Supp. 593, 595 (Ct. Int'l Trade Court Opinion address the above. 1996). Commerce unlawfully did so here.

**D.     As Applied, Commerce's The Commerce Regulation Violates The CVD/AD Statute**

Commerce's failure to fully grant any of TKT's timely extension requests and consequent rejection of TKT's filed questionnaire response violates Commerce's

Extension Of Time Limits regulation (78 Fed. Reg. at 57795). That rule ~~state~~says that, notwithstanding "Next Day 8:30AM~~"~~," giving the respondent until 8:30AM the next day to make the filing, if Commerce fails to answer an extension request by the deadline~~. But~~, Commerce still "will continue to grant extensions of time limits to the extent that they are warranted and deadlines for the segment permit." Id. In other words, Commerce can still decide extension requests made close to the deadline after the deadline, and does. See below. Commerce unlawfully, inconsistently failed to do so here.

~~Further, in this spirit~~In like vein, Commerce ~~states as to~~said in its Extension Of Time Limits (at 57795-96) that Commerce will not adopt rules that are "inflexible to permit" Commerce "to effectively and fairly administer the AD and CVD laws" – i.e., Commerce will not adopt rules that unnecessarily hamstring/prevent Commerce to achieve its statutory mandate to calculate accurate subsidy (or dumping) margins. Commerce, Modification of Regulation Regarding the Extension of Time Limits, 78 Fed. Reg. 3367, 3370 (Dep't of Commerce Jan. 16, 2013).

But that is what Commerce's ~~initial~~ rejection of TKT's questionnaire response did, stating that, since Commerce did not decide TKT's extension request by the 5:00PM deadline, then Commerce is inflexibly boxed in by its regulation, where the deadline ~~was~~is inexorably 8:30AM the next day. ~~When this legal error was noted, Commerce seemingly later changed its reason for denying the TKT extension request.~~

-20-

~~That said, the~~The Trade Court Opinion (~~at 17,~~ Appx71~~) and Commerce effectively,~~ said that under the Extension Of Time Limits, the above ~~generally~~general fairness principles mandated by the statute do not apply, meaning that Commerce is not free to be flexible in the above regards and cannot ~~follow its above-stated overarching guiding principles.~~achieve the statutory mandate to accurately calculate the subsidy margin. That position runs afoul of this Court's decisions – i.e., Commerce's exercise of discretion as to extension requests and timeliness of submissions (even late ones) must be reasonable ~~in light of its~~considering the statutory mandate to calculate accurate CVD/AD subsidy/dumping margins within the statutory time limits of the particular investigation. NTN Bearing Corp. v. United States, 74 F.3d. 1204, 1207 (Fed. Cir. 1995); Pro-Team Coil Nail Enterprise Inc. v. United States, 419 F. Supp. 3d 1319, 1332 (Ct. Int'l Trade 2019). "A regulation which is not required by statute … must be waived where failure to do so would amount to an abuse of discretion" as to the statutory mandate to accurately calculate CVD/AD margins. Timken U.S. Corp. v. United States, 434 F.3d 1345, 1353-54 (Fed. Cir. 2006). Failure to waive any regulation deadline here is an unlawful abuse of discretion. The Commerce artificial deadline here was not necessary to satisfy statutory obligations as to the statutory deadlines in the particular investigation~~.~~ to accurately calculate the CVD/AD margin. Id.

-21-

### E.    Commerce Speculation Is Unlawful

The ~~final~~ Commerce Decision Memorandum ~~speculates~~(at 19, Appx208) and Trade Court Opinion at 18-19 (Appx68, 72-73) speculate that TKT counsel "gambled unwisely" (term used) as to when it filed its extension request. ~~Appx208; Appx 72-23.~~ Speculation is not substantial evidence to support a lawful determination. See above.

But TKT counsel did not gamble. There is no substantial evidence otherwise. ~~As counsel stated in a certified statement, it~~Counsel filed ~~the~~its extension request as soon it became apparent that it could not meet the 5:00PM deadline. See above. Commerce Decision Memorandum and ~~the~~ Trade Court Opinion ~~say~~(at 14) provide no reason, much less support, to dispute that ~~TKT counsel is~~ assessment, and indeed effectively support it when they call counsel experienced in CVD ~~and~~. Appx68.

Both then makes~~s~~ the unsupported implicit assumption without explanation or substantial evidence that experienced CVD counsel would be experienced in technical computer file corruption issues~~.~~ (that counsel would only come to see as progressed with the filing throughout the night that it had not experienced before, discussed above). The reason for and timing of the third extension request was solely due to technical computer file corruption issues. See above.

Further, the Trade Court Opinion and Commerce ~~assumes~~Decision Memorandum implicitly assume without support that if TKT counsel had filed the one-day extension request earlier, it would have been granted, even though

-22-

Commerce did not ~~fully~~ grant any of TKT's ~~three~~ extensions as to the time requested. ~~Note that if TKT counsel had filed earlier and it was rejected, then the deadline would be 5:00PM that day versus 8:30AM the next morning and TKT would have been even worse off as to prospects.  Note that~~See above. Further, Commerce had already previously rejected TKT extension requests as to a deadline beyond September 15. See above.

Here, the Commerce ~~and the Trade Court Opinion seem~~Decision Memorandum (at 19, Appx208) seems to question TKT counsel's initial experienced judgement that it could meet the 5:00PM deadline when it received TKT's final, completed questionnaire response the morning of the deadline. ~~Appx208.~~ But ~~they offer~~it offers no explanation or support for such seeming question.

Notably, in <u>Oman Fasteners LLC v. United States</u>, Slip Op. 23-17 at 5-9 (Ct. Int'l Trade February 2, 2023), ~~the long~~experienced counsel in that case thought ~~on receipt of~~that it had sufficient time to file the respondent's final questionnaire response received 50 minutes ~~until~~before the 5:00PM deadline ~~was sufficient to file by the 5:00PM deadline.~~. In response, Commerce "said counsel did not allow enough time because, as is often said on Wall Street, past performance is no guarantee of future results." <u>Id.</u> So, Commerce seems to be saying that experience doesn't ~~count for anything.~~matter. And yet Commerce base~~s~~d its decision there and here on the involvement of experienced counsel. Commerce belies its own decision~~.~~ in that

-23-

explanation. The Trade Court in ~~that case was not impressed with~~ Oman Fasteners reversed Commerce ~~claims, reversing them~~ illogical "experienced" claim. See above.

In addition, at the time of the TKT 3:50PM extension request, Commerce ~~was saying do not~~ advised counsel based on Commerce's experience with all counsel to not to begin filings after 4:~~45PM.~~00PM as best practice based on Commerce's then experience. Commerce, ACCESS, Handbook on Electronic Filing Procedures, Enforcement and Compliance, Version 3.9, August 31, 2020, Help Desk at 16 ("we do not recommend starting any filing after 4:00 p.m"). Appx1815, Appx2427. TKT's counsel actions here reflect that Commerce advise based on Commerce then experience.

Later, based on ~~its~~ Commerce's experience in ~~many~~ all cases with ~~many~~ all experienced counsel, Commerce has ~~since~~ changed its position to say ~~that do~~ not to begin filings after 12:00PM, as now indicated in Commerce ACCESS decisions in all cases. Commerce, Tapered Roller Bearings from China, A-570-061, March 3, 2023, ACCESS Barcode 4349546 at 1. Going forward, TKT counsel is now following ~~that~~ Commerce's only just now since revised experienced advice ~~that Commerce only recently arrived at and~~, which was announced as a best practice based on Commerce's ~~new found~~ newfound experience. Commerce's view of ~~late~~ what experience means and advise to trade counsel thereon has changed in a significant way from what it said to trade counsel at the time of the TKT filing.

-24-

Commerce applies to TKT counsel a view of experience that even Commerce did not have at the time of the TKT filing.

~~Finally~~In addition, the statutory CVD standard applied to respondents "does not require perfection and recognizes that mistakes sometimes occur," ~~which~~and mistakes cannot be the basis of adverse inferences, which are only permissible under the CVD statute if one did not act to the best of one's ability. Nippon Steel Corp. v. United States, 337 F. 3d 1373, 1374 & 1382 (Fed. Cir. ~~2003). Even those so doing do make mistakes~~2003); Trade Court Opinion at 29-30 (Appx83-84); Commerce Decision Memorandum at 26 (Appx215). At best, there is no indication other than TKT counsel made a mistake as to timing of filing an extension request (not the case), but that itself does not justify the adverse inference imposed, per the above decision of this Court.

~~Commerce and the Trade Court Opinion (at 14) say that TKT counsel was experienced and aware of the 8:30AM deadline. Appx68. That misses the mark as to the arguments here. It is not clear where Commerce and the Trade Court are going with the TKT counsel is experienced point as to supporting a lawful Commerce decision. In~~Finally, in the below cited Commerce decisions, counsel was experienced and yet Commerce granted an extension that it denied TKT ~~though the situations were~~under similar circumstances. Commerce has not followed its above Next Day 8:30AM view. Beyond that, the Trade Court in Oman Fasteners (at 14-16) faulted Commerce's Next Day 8:30AM approach given its genesis based on an "off hand comment response with which has never been codified through a regulation or

-25-

otherwise reasonably communicated to the bar." Unlike at the time of the TKT filing here, Commerce now advices counsel of this Next Day 8:30AM practice in its questionnaires, since it was never reasonably communicated to the bar. See Commerce, Tapered Roller Bearings from China, A-570-061, March 3, 2023, ACCESS Barcode 4349546 at 2.

### F.     Commerce Violates Its Practice

In denying the TKT's three extension requests as to the full time requested and rejecting TKT's Subsidy Questionnaire response, Commerce violates its own practice. The Trade Court has held that Commerce's "insist{ance} on technical perfection with the filing of its documents on its ACCESS system" is unreasonable and inconsistent with its own precedent, where Commerce "acknowledges that it has allowed for out of time extensions due to technical filing issues in the past despite the language of its regulations." Celik Halat Ve Tel Sonayi A.S. v. United States, 557 F. Supp 3d 1348, 1361 (Ct. Int'l Trade 2022). The Trade Court stresses that "No one who has confronted issues in using automated filing systems will dispute the unanticipated technical difficulties do sometimes occur." Id. at 1362.

Consider the following examples where Commerce accepted questionnaire responses in cases that are similar or less compelling than for acceptance of TKT's questionnaire response here:

- Respondent failed to make a filingfile by the deadline. The day after the deadline, the respondent by email claimed in an email undefined

-26-

"technical issues~~","~~ and ~~said that it had made an~~ "inadvertent mistake." ~~After the deadline,~~ Commerce gave the respondent two more days to ~~make the filing.~~ file. Commerce, <u>Stainless Steel Flanges from India</u>~~,~~ C-533-878, Jan. 26, 2023, Feb. 17, 2023, ACCESS barcode 4334269,4343287.

- Respondent filed <u>an</u> extension request 39 minutes before the deadline~~.~~, <u>stating without more "technical difficulties" as to finalizing the documents to file, and issues known well earlier.</u> Commerce granted <u>an</u> extension 12 minutes later~~.~~, <u>27 minutes before the deadline.</u> Commerce, <u>Preserved Mushrooms from Poland</u>~~,~~ A-455-806, Feb. 2, 2023, ACCESS barcode 4336887,4336898.

- Respondent missed deadline for questionnaire response. ~~Later, after the~~ <u>After</u> deadline, Commerce on its own ~~initiative~~ and without explanation extended ~~the~~ deadline and accepted the questionnaire response. Commerce, <u>Stainless Steel Wire Rod from Korea</u> ~~(~~A-580-829~~),~~, Dec. 29, 2022, Jan. 13, 2023, ACCESS barcode 4330993,4325570.

- Respondent states without more that, "because of a problem encountered in filing a response," the respondent missed the deadline and ~~also~~ without more explanation, did not request an extension until after the deadline<u>,</u> and then just by email. After the deadline, Commerce granted one day extension and accepted the questionnaire response. Commerce,

-27-

Gas-Powered Pressure Washers from Vietnam, A-552-008, February 10, 2023, ACCESS barcode 4341321.

- Respondent said that it had its own technical ACCESS difficulties, not further explained. It requested an extension at 4:34PM of the 5:00PM deadline day. Commerce granted at 4:52PM. Commerce, Utility Scale Wind Towers from Malaysia, C-557-822, Jan. 10, 2023, ACCESS barcode 4329323, 4329382.

- Respondent sent a 4:30PM email seeking an extension in the 5:00 PM00PM deadline to file a questionnaire response. Extension The extension request was filed on Commerce ACCESS six days after the deadline. Commerce granted the extension and accepted the late questionnaire response. Commerce, Ripe Olives from Spain (C-469-818), April 30, 2020, ACCESS barcode 3970287.

- Last minute extension request based on "many documents to upload[22]," so another day requested. That is Commerce held that "good cause" to grant, where Commerce answersed in one hour 31 minutes., shortly before 5:00PM deadline for respondent to answer. Commerce, Certain Pasta from Italy, C-475-819, Jan. 30, 2023, ACCESS barcode 4335527, 4335434.

- Respondent filed extension request at 4:37 PM37PM of deadline day, citing without much further discussion more "technical difficulties" in

making the filing. The next day after the deadline, Commerce granted ~~the~~an extension.  Commerce, <u>Hot Rolled Steel Flat Products from Korea</u> (C-580-884)~~),~~, Feb. 23/24, 2023, ACCESS barcode 4345060 ~~&~~, 4345176.

- Respondent filed extension request at 4:38PM ~~as to~~for 5:00PM deadline, noting events that well preceded the deadline day and saying it needed more time to complete the full response. Commerce granted, seems after 5:00PM. Commerce, <u>Oil Country Tubular Goods from Russia</u>, A-82~~1~~1-833, Feb. 14/15, 2022, ACCESS barcode 4212296, 4212207.

- ~~Filed~~Respondent filed extension request at 3~~.~~:37PM for 5:00PM deadline, claiming ~~without~~little more than "technical difficulties in finalizing and filing" data files. Commerce granted an extension for the whole questionnaire and accepted questionnaire~~.~~ filed after deadline, and did so after 5:00PM deadline. Commerce, <u>Crystalline Silicon Photovoltaic Cells from China</u>, A-570-979, August 10, 2022, ACCESS ~~bar code~~barcode 4273305 ~~and~~, 4273344.

~~We also especially note~~Note the ~~following case that the Commerce Final Determination (Appx72,195) highlighted as allegedly~~ above decisions were after Commerce's Next Day 8:30AM.

-29-

The Commerce Decision Memorandum (cmt. 1 at 6, Appx195) claims that this Court's Dongtai Peak is on point driving, as the basis for its TKT decision as to TKT: .  In Dongtai Peak, the

- Rrespondent filed an extension request five minutes before the deadline. After the deadline, Commerce accepted the extension request and untimely questionnaire response. Dongtai Peak Heavy Indus. v. United States, 777 F. 3d 1343, 1347 & 1352 (Fed. Cir. 2015). As noted, Commerce (Commerce Decision Memorandum, cmt. 1 at 6, Appx195) rests on this Court's Dongtai Peak decision for its decision as toon TKT, saying it is "on point",," but wrongly insteadthen cites the factually inapposite part (of Dongtai Peak (at 1347)), where as to another questionnaire the same respondent filed an extension request two days after the deadline, based on reasons known well before the deadline, and even then did not thereafter file its questionnaire response within its requested extended time, but rather even later. Dongtai Peak (at 1351-52) emphasized that respondents must file extension requests with Commerce before the deadline of the questionnaire response.

   This Court in Dongtai Peak (at 1351) also said that the respondent requested the Commerce review and thus should have been prepared to answer the questionnaire earlier. In contrast, here, TKT did not request

-30-

the CVD investigation. ~~Appx499. Rather, here~~; only Petitioner Mississippi ~~Chemical~~Silicon requested the investigation. Appx499.

Moreover, in <u>Dongtai Peak</u> (at 1347, 1352), Commerce said that Commerce could not grant the above second extension request because of particular issues as to that respondent "in the investigation" as to whether sales were bona fide that required time to fully investigate, time which Commerce said was ~~now~~ lacking by the time that the respondent submitted its questionnaire response, given the impending statutory deadline in the investigation. <u>That is not TKT's case. See above.</u>

In short, Commerce ~~misuses~~relies on this Court's <u>Dongtai Peak</u> decision to ~~say~~assert that this Court says the opposite of what ~~this Court in fact~~ said~~, where~~. <u>Dongtai Peak</u> actually supports TKT. <u>Yet Dongtai Peak is "at the core of" Commerce's decision to reject TKT's questionnaire response.  Trade Court Opinion at 18, Appx72.</u>

In addition, <u>as TKT supported before Commerce (Appx2434-2435),</u> Commerce even grants extension requests after the deadline that only ~~cite~~claim as the reason for the extension request ~~(Appx2434-2435)~~:<u>the below, all cases less compelling than to grant TKT an extension:</u>

- misunderstanding of Commerce ACCESS requirements. Commerce, <u>Certain Steel Nails from Oman,</u> Oct. 1, 2014 letter to respondent granting its Sept. 15, 2014 extension request.

- respondent ~~refused to~~not timely file a questionnaire response ~~because of misunderstanding of~~, saying misunderstood European Union long-standing privacy ~~laws that long preceded Commerce's issuance of its questionnaire, as to which counsel had not timely addressed.  After the~~law. After deadline, respondent requested extension and filed the questionnaire response.  Commerce accepted ~~the questionnaire response.~~. Commerce, _Finished Carbon Steel Flanges from Italy,_ decision as to ~~Forgital Italy SpA~~respondent's Feb. 22, 2019 request for reconsideration and extension March 5, 2019.

- respondent printer jams. Commerce, _Carbon and Certain Alloy Steel Wire Rod from Mexico,_ Aug. 25, 2017, ~~Aug. 25, 2017~~ ACCESS barcode 3611780~~/~~,3611722.

- confused paralegal ~~of counsels~~. Commerce, _Certain Steel Nails from Malaysia,_ Nov. 5, 2014, granting respondent ~~Nov. 3, 2014~~untimely extension request.

- respondent deadline calendaring error~~s~~. Commerce, _Cold-Rolled Steel Flat Products from Korea,_ Jan. 11, 2016 memorandum granting Jan. 5, 2016 extension request.

- respondent requested extension for the wrong questionnaire. Commerce, _Narrow Woven Ribbons with Woven Selvedge from_

-32-

Taiwan, Feb. 27, 2015 letter granting respondent Feb. 18, 2015 extension request. ACCESS barcode 3260204/,3261940-01.

- counsel "overlooked" a deadline due to a "unexplained culmination of a number of factors" that included, including inclement weather. Commerce, Certain Softwood Lumber Products from Canada, March 16, & 17, 2017, ACCESS barcode 3552802/,3553216.

- deadline missed due to the "year-end holiday period.". Commerce, Certain Cold-Rolled Steel Flat Products from Korea, Jan. 5 & 16, 2016 ACCESS barcode 3429991/,3431804.

- deadline missed because counsel "inadvertently overlooked the specific 10:00 am deadline" due to the July 4th holiday, and also simultaneous other work being done by counsel on other questionnaires. Commerce, Carbon and Certain Alloy Steel Wire Rod from the United Kingdom, Jul. 7/10, 2017, ACCESS barcode 3590026/, 3591490.

- counsel "overlooked" the 10AM filing deadline,. Commerce, granted extension after the deadline. Citric Acid and Certain Citrate Salts from Thailand, Nov. 17, 2017, ACCESS Bbarcode 3642674/,3642978.

Finally, the Commerce Decision Memorandum (at cmt. 1, 19-20, Appx208-209) and Trade Court Opinion at 20 (Appx74, 208-209) states) claim that the rejection of TKT's questionnaire response is basedrests on the fact that the "the facts in Bebitz (CVD)" Slip Op. 20-26 (Ct. Int'l Trade March 2, 2020)), Bebitz Flanges

-33-

Works Private Ltd. v. United States, 433 F. Supp. 3d 1297, 1305 (2020) that "parallel those in this {TKT} investigation nearly exactly …

- … Notably, Bebitz was represented by the same counsel" as TKT. But in Bebitz CVD (at 15, fn. 10), the Trade Court said that counsel should not ~~blame counsel~~ be blamed for what was client Bebitz's own doing, not its lawyer. The Trade Court Opinion at 20 (Appx74) makes the same legal error.

- ~~in~~In Bebitz CVD at 4-8, 12, 14-17 (n. 14) & 19-20, the Trade Court emphasized that the respondent (a) from day one was not forthcoming with Commerce and was intentionally obtuse as to key investigation issues – e.g., failing to reveal cross-owned affiliates key to the CVD investigation; (b) was given "multiple opportunities" to answer the subsidy questionnaire over two months and did not do so, where (c) Commerce found at the time of its rejecting of the respondent's questionnaire response that only one month remained until Commerce's already extended preliminary CVD decision deadline, such that no more extension could be granted "in the investigation" and still meet statutory deadlines ~~in that particular investigation~~, and that (d) sufficient time and opportunity was given the respondent to respond. And beyond the above in the Commerce discussed companion Bebitz (AD) (~~at 1316-26~~CIT Slip Op 20-27), (e) after sixteen respondent extension requests, with

-34-

some after the deadline but Commerce granted, and eight Commerce supplemental questionnaires, the respondent still had not answered half of Commerce's initial questionnaire issued five months prior, information that had been repeatedly requested, with multiple opportunities for the respondent to provide the requested information, with serious respondent misstatement of the facts.

No <u>Bebitz</u> fact applies to TKT. See above. Yet Commerce, per above, says that it bases its decision to reject the TKT Subsidy Questionnaire on <u>Bebitz</u>. as factually on point. See above. The ~~contested~~Trade Court Opinion does not address that the Commerce TKT decision ~~claim that~~erroneously rested on <u>Bebitz</u> ~~must be shown for adverse inferences~~ supports that adverse inferences are not supported for TKT.

The list goes on. But the point is clear. Commerce practice is to accept questionnaires in situations similar to, indeed less compelling than, TKT's Subsidy Questionnaire ~~response.~~. It is well-established that an "agency action is arbitrary" and thus unlawful "when the agency offers insufficient reasons for treating similar situations differently." <u>SKF USA Inc. v. United States</u>, 263 F. 3d. 1369, 1382 (Fed. Cir. 2001); Trade Court Opinion at 24, Appx78. "Consistency has long been a core interest of administrative law, and inconsistent treatment is inherently significant." <u>DAK Americas LLC v. United States,</u> 456 F. Supp. 2d 1340, 1355-56 (Ct. Int'l Trade 2020) (citing <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944~~).~~))).

-35-

The Commerce Decision Memorandum (at ~~cmt 1) responded to~~18, Appx207) notes TKT cites (at Appx2434-2435) ~~that~~ "where Commerce accepted untimely submissions" in situations similar to TKT's. ~~It~~Commerce says ~~that~~ this Court "confirmed that Commerce is not bound by its actions in prior proceedings, as each proceeding ~~'~~is a separate act of Commerce's authority that allows for different conclusions based on different facts in the record.~~'"~~." Qingdao SeaLine Trading Co., Ltd. v. United States, 766 F.3d 1378, 1387 (Fed. Cir. 2014). But the Commerce Decision Memorandum ends its claim there and does not claim different facts in the TKT cited Commerce decisions indicating that TKT's Subsidy Questionnaire should be accepted, much less that ~~the~~any claimed differences make a difference. That is the Commerce Decision Memorandum's sole stated reason to reject precedent. Above are many on point Commerce cases where Commerce accepted ~~the respondent's~~respondent questionnaire response under circumstances less compelling than TKT~~'s~~.

~~Effectively, as the above indicates, the Commerce decision as to TKT~~Above, Commerce repudiates the principle that similar cases must be decided similarly, even though doing so is required to not be unlawfully arbitrary and capricious. ~~Commerce effectively dismisses stare decisis. See~~ NLRB v. Wash. Star Co., 732 F.2d 974, 977 (D.C. Cir. 1984) (per curiam) ("The present sometimes-yes, sometimes-no, sometimes-maybe policy of [{enforcing}] due dates cannot, however, be squared with our obligation to preclude arbitrary and capricious management of the

-36-

[{agency]}'s mandate~~.")~~.").  The Trade Court Opinion (at 25, Appx79) makes the same legal error.

The Commerce Decision Memorandum also fails to note, much less address, that, in Qingdao SeaLine, this Court ~~proceeded to say~~said that ~~in that case~~ Commerce "explained the differences" between the records of the cases and "reasonably concluded" that there was a basis for different decisions, thus rendering it "not improper" to reach different decisions. Here, the Commerce Decision Memorandum did not.~~ Commerce has again miscited and misused this Court's decisions.~~

~~To be sure, since briefing before the Trade Court and then the Trade Court Opinion, yet more Commerce decisions continue to flood in contrary to how Commerce treated TKT and we cite them above as additional confirmation of our argument, beyond the above ones that we cited before Commerce and Commerce ignored.~~

Finally, as indicated above, the Commerce ~~claims (~~Decision Memorandum (at 19, Appx208) claims that Dongtai Peak and Bebitz are exactly on point as to TKT, ~~contradicting its~~belying Commerce's claim that every case is different in some way, so ~~do~~it does not have to ~~distinguish.  In any event, Dongtai Peak (part Commerce cites) and Bebitz are decidedly not on point, and especially compared to the cases TKT cites~~consider precedent.

-37-

**G.    The Trade Court Opinion ~~Erroneously~~Unlawfully Affirms ~~The~~ Commerce ~~Decision~~ For Reasons ~~That~~ Commerce ~~Did~~Does Not State~~y~~**

The Trade Court Opinion (at 15, Appx69) ~~states that in its personal opinion~~says TKT's third extension request should have ~~had~~ more detail~~.~~ (e.g., an affidavit). The Commerce ~~decision~~Decision Memorandum did not say that. It is "well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." Motor Vehicle Mfrs. Ass 'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983); Prime Time Corn. LLC v. United States, 43 CIT n. 14, 396 F. Supp. 3d 1319, 1331 n.14 (Ct. Int'l Trade 2019) ("not for this court to provide a rationale supporting Commerce's determination.").

In fact, TKT's third (and prior) extension request~~s~~ was comparable to other similarly situated extension requests that Commerce granted. Compare the Trade Court Opinion (at 10, Appx64) quote of the TKT third extension request to the above cites where Commerce granted an extension request.

~~Commerce states that~~

~~an extension request is a straightforward and usually concise document, identifying only the material to be submitted, the current time limit, the requested extension of that time limit, and the reason for the extension request.~~

~~The above cited Commerce decisions implement that Commerce standard, and are contrary to the Trade Court Opinion personal view here.~~

~~Further, Commerce, Extension of Time Limits, 78 FR at 3369, states that:~~

~~a standard under which untimely-filed {i.e., after the deadline} extension requests will be considered is not provided under the current regulation, and~~

-38-

~~so the inclusion of a standard will provide clarity to parties appearing before the Department … If the Department maintained the current rule, then there would be no standard under which the Department would consider untimely-filed extension requests. This would not provide certainty to parties participating in AD and CVD proceedings, and would not address the administrative issues which the Department has encountered.~~

~~Note that Commerce admits that it has no standard as to deciding extension requests, but now has added one as to extension requests filed after the deadline. There is still no Commerce standard as to extension requests filed before the deadline (like TKT's) and Commerce ignores the court one discussed above.  It is well-established that when an agency acts without standards, that itself is arbitrary and capricious, which the record of this case illustrates.~~

Finally, this counsel, said to be an experienced counsel, and in that regard has filed many extension requests similar to ~~done~~ here, would be surprised that after the record closed, the extension request is deemed insufficient, <u>with</u> a new "standard" for an <u>appropriate</u> extension request announced post hoc, ~~as~~<u>at</u> least just for this case, and an impermissible "gotcha policy" where ~~an~~<u>no</u> opportunity was ~~not provided~~<u>given</u> to address before the record closed. ~~The Trade Court rejects that.~~ <u>That is unlawful.</u> Böwe–Passat v. United States, 17 CIT 335 (1993) (Commerce ~~refusal to address previously~~<u>not raising</u> unidentified deficiencies ~~is an~~<u>until its final decision when too late for a party to address is</u> impermissible "~~'~~gotcha policy~~" policy).  It would seem that that is what the~~"<u>). But</u> Trade Court Opinion ~~embraces~~<u>does that</u>.

Notably, the Trade Court in <u>Oman Fasteners</u>, <u>supra</u> at 14, ~~said that an~~states experienced trade counsel would seem well advised under Commerce's Next Day 8:30AM approach to have a <u>boilerplate</u> (its word) extension request ready to file just before 5:00PM when hard pressed as to a Commerce deadline. ~~Overall, the Trade Court in Oman Fasteners (at 14-16) seemed deeply troubled by Commerce's Next Day 8:30AM approach with its genesis based on an "off hand comment response with which has never been codified through a regulation or otherwise reasonably communicated to the bar."~~

The <u>Trade Court Opinion</u> also seeks to ignore or rewrite the <u>Commerce Final Decision</u> to say that ~~it~~Commerce did not rely on <u>Dongtai Peak</u> and <u>Bebitz</u>. But ~~the~~ <u>Commerce Final Decision</u> explicitly did~~, and at great length and emphasis.~~. See above. Again, the <u>Trade Court Opinion</u> cannot rewrite a Commerce decision ~~as a vehicle~~ to affirm it. See above.

## III. COMMERCE UNLAWFULLY ENDED THE INCENTIVE TO COOPERATE

The Government of the Republic of Kazakhstan fully cooperated, answering Commerce questionnaires. Appx1192, Appx2087, Appx2364, Appx2421-2422. Then, Commerce unlawfully rejected TKT's Subsidy Questionnaire ~~response.~~. At that point, Commerce effectively made clear that no matter what the Kazakh Government did, Commerce would reach the same result – i.e., a 160% adverse inference CVD import duty margin on Kazakh silicon metal. Commerce's unlawful actions as to TKT

-40-

eliminated any reason or incentive for the Kazakh Government to further cooperate. Appx2444-2445. Thus, the Kazakh Government did not answer Commerce's supplemental questionnaire to verify the Kazakh Government's prior questionnaire responses. Id.; Commerce Decision Memorandum at 2 & 4, Appx191, Appx93. For that reason too, Commerce imposed adverse inferences on Kazakhstan to determine the amount of subsidies per the CVD statute. Id. Appx2444-2445, Appx191, Appx93. That is effectively bootstrapping one impermissible adverse inference (on TKT) on another impermissible adverse inference (on the Government of Kazakhstan).

But theThe sole purpose of use of adverse inferences is to incentivize cooperation with Commerce. Essar Steel Ltd. v. United States, 678 F.3d 1268, 1276 (Fed. Cir. 2012). Commerce itself undermined that incentive as to the Kazakh Government. Commerce cannot then impose adverse inferences on the Kazakh Government/Kazakhstan, as here the use of adverse inferences is doing the opposite of what intended. Olympic Adhesives v. US, Court No. 89-1367 (Fed. Cir. March 28, 1990); F.11i De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 21 CIT 1124, 980 F. Supp. 485 (1997).

Commerce has ana statutory obligation to balance its statutory mandate to find an accurate subsidy margin with inducing compliance. F.11i De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000). An adverse inference may not be drawn merely from failure to respond, but rather only where it is reasonable for Commerce to expect a more forthcoming response under

-41-

the specific circumstances ~~of the case~~. <u>Nippon Steel Corp. v. United States</u>, 337 F.3d 1373, 1383 (Fed. Cir. 2003). Again, Commerce eliminated any incentive or reason for the Kazakh Government to cooperate further. Adverse inferences here undermine both the statutory mandate to calculate an accurate subsidy margin and to encourage compliance. ~~Again, Commerce acts contrary to the decisions of this Court.~~

Further, Commerce cannot *per se* impose adverse inferences on a respondent company for the actions of a third party, here a government. <u>Clearon Corp. v. United States</u>, Slip Op. 20-141 (Ct. Int'l Trade Oct. 8, 2020); <u>Guizhou Tyre Co. v. United States,</u> 415 F. Supp. 3d 1402, 1405 (Ct. Int'l Trade 2019).

In reply, Commerce says that:

> an adverse inference in a CVD investigation may have "a collateral impact on a cooperating party," without being rendered "improper." Where, as here, an adverse inference made against the {government} "collaterally reaches" a cooperating company that is "within the {country}, benefitting directly from subsidies the {government} may be providing," then the adverse inference is permissible, because it "has the potential to encourage the {government} to cooperate so as not to hurt its overall industry."

<u>Commerce Decision Memorandum</u>~~, cmt 8~~ at ~~40~~50~~.~~, Appx239~~.~~ (citing a Trade Court decision).

~~But~~ Commerce's claim is based on the unsupported assumption that there is more than one Kazakh silicon metal producer. There is not. There is only one Kazakh

silicon metal producer, TKT.[7] ~~No others. There is no evidence otherwise, much less substantial evidence otherwise.~~ Appx502-504, Appx604, Appx2444. And Commerce imposed a 160% adverse inferences CVD duty on TKT. Commerce again acts unsupported by any evidence, much less substantial evidence. Neither Commerce nor the Trade Court address this legal error.

## ~~III~~IV. COMMERCE APPLIED AN UNLAWFUL ADVERSE, PUNITIVE CVD RATE

~~The consequence of Commerce's~~ Commerce rejection of TKT's Subsidy Questionnaire ~~response was~~is further unlawful ~~because~~since grossly disproportionate~~, compared~~ to any minor, technical, filing infraction – *i.e.*, ~~an~~Commerce imposed a high adverse trade-stopping 160% CVD import cash deposit rate~~.~~ for claimed under two hour late response for which an extension had been timely requested. See above. For four years and continuing, TKT has been unable to sell to the United States as a consequence, where Commerce has also held that TKT may not seek an administrative review as to the extent of any subsidies received to remedy the situation because TKT is unable to sell to the U.S. because of the 160% CVD. Commerce Final Determination, 86 Fed. Reg. at 11726, Appx138~~. Commerce, Notice Of Intent To Rescind Administrative Review of the CVD Order On~~; Commerce, Silicon Metal from The Republic Of Kazakhstan:

---

[7] ~~Appx502-504, Appx604, Appx2444. (Note that all indicated producers are TKT and its deemed cross owned affiliates). Notably, Commerce only issued a CVD questionnaire to TKT for that reason. No other Kazakh silicon metal respondents.~~

Recission of CVD Review, 12/3/20-12/31/2021 Review Period, C-834-811, ~~June 22, 2022~~81 Fed. Reg. 27861, May 3, 2023; and accompanying Commerce Memorandum thereon, at 2-4, 6 & 11, April 27, 2023, ACCESS barcode ~~4253727 (Commerce proposes to end its first CVD administrative review of Kazakh silicon metal following the original investigation because TKT had no U.S. sales, notwithstanding that that was due to the 160%+ adverse CVD rate of the original investigation).~~

In ~~Artisan Manufacturing Corp. v. United States, 978 F. Supp. 2d 1334, 1345 & 1348 (Ct. Int'l Trade 2014), the Trade Court held that Commerce's rejection of a respondent's questionnaire response as untimely was an unlawful abuse of discretion. Artisan found that the respondent's missing a deadline and not timely requesting an extension (instead requesting after the deadline) was inconsequential and would not have had an adverse impact on the conduct of the investigation, given it was only a one-day delay and given the time remaining in the particular investigation under the statutory deadlines.~~ 4370716. No substantial evidence supports that TKT received subsidies, much less 160%, where the adverse ~~Id. at 1345-1348. Artisan continued (at 1347) that rejection means a consequence that is "grossly disproportionate to the mistake"—i.e., imposition of the high adverse~~ inference ~~margin, and so an unlawful abuse of discretion~~is based on the unsupported and unrealistic assumption that a company can gain sales revenue without incurring any cost. Appx2197-2198, Appx2421.

-44-

~~Similarly, in~~In Celik Halat ve Tel Sanayi A.S. v United States, 557 F.Supp.3d 1348, 1361 (Ct. Int'l Trade 2022), the Trade Court found that "Commerce imposed a grossly disproportionate penalty for what essentially was a minor technical violation that had no discernible effort on the investigation," where Commerce entirely rejected responses to Commerce's initial questionnaires. ~~In making its determination~~In so holding, the Trade Court said that:

> nothing in that regulation justified the Department's misuse of 19 U.S.C. § 1677e. … Commerce abused its discretion … imposing a draconian sanction for what essentially was a minor and technical violation that had no discernible effect on the investigation.  Commerce is not free to apply its regulations in a way that exceeds its statutory authority.  Nor is it justifiable to do what it has done here, … to produce a manifestly unwarranted and unjust result.  In applying that rule and related regulations on the filing of, and rejection of, responses to requested information, Commerce must be mindful of the limitations on the exercise of its statutory and regulatory powers.

Id. at 1380-81.

~~Even when Commerce exercises its discretion to apply adverse inferences, the rate must be consistent with Commerce's obligation to calculate fair and accurate subsidy margins. Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States, 716 F.3d 1370, 1379 (Fed.~~ Accord:~~Cir. 2013).  This Court has affirmed that "the purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins." F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000). Again, Commerce ignores this Court's decisions.~~

-45-

*Artisan Manufacturing Corp. v. United States,* 978 F. Supp. 2d 1334, 1345 & 1348 (Ct. Int'l Trade 2014), where the respondent's questionnaire response was one day late and no timely extension request.

Even when Commerce exercises its discretion to apply adverse inferences, the rate must be consistent with Commerce's obligation to calculate fair and accurate subsidy margins. <u>Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States,</u> 716 F.3d 1370, 1379 (Fed. Cir. 2013). "The purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins*." F.11i De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,* 216 F.3d 1027, 1032 (Fed. Cir. 2000). ~~Again, Commerce ignores this Court's decisions~~Commerce admits that the TKT 160% CVD rate here is uncorroborated. Appx2198.

## ~~IV.     CONCLUSION~~V.     CONCLUSIONS **AND RELIEF SOUGHT**

~~As a result of the contested decision, TKT has been subject to a 160% CVD cash deposit rate any silicon metal sales to the United States.  That stops any imports.  TKT has thus not been able to sell silicon metal to the United States for four years.~~

~~There is no~~No substantial evidence supports that TKT ~~has benefited from any~~received subsidies~~.~~, where the adverse inference is based on the assumption that a company can gain sales revenue without incurring any cost. Appx2197-2198, Appx2421. Further, TKT ~~has been~~and Kazakhstan was denied ~~the right to~~ meaningfully participat~~e~~ion in the investigation (*i.e.,* to answer subsidy

questionnaires). See above.  Commerce ~~has just relied~~used on adverse inferences, ~~as opposed to~~not actual facts, to calculate the subsidy import duty. A reasonable person would not deny the accused a ~~fair~~right to ~~respond as to subsidy~~answer allegations ~~and then decide there were~~ (here as to subsidies~~, much less huge ones (160%).~~). A negative final CVD determination ~~should thus issue as a matter of law. Mississippi Silicon has enjoyed four years of the unjust and unlawful action that it strongly pushed for.  A negative subsidy finding should issue on the basis that there was no substantial (reasonable) evidence of subsidies on the record as created by Commerce and Mississippi Silicon, at the time of the statutory deadline for Commerce to decide in this investigation.~~is required, per the above review standard.

Alternatively~~,~~ (but erroneously~~,~~), to bring itself into compliance with law, Commerce could issue an affirmative subsidy finding where no duties or cash deposits are imposed pending any later Commerce administrative review when TKT can then sell to the USA, a do-over of what should as a matter of law have been done in the original investigation ~~-- to actually determine if there are any subsidies, which by statute should have been done by the statutory deadline in the original investigation~~ but was not. ~~At least that would end the unlawful 160% subsidy duty on Kazakh silicon metal versus continue it further by an investigation that should have properly been done four years ago.~~ With approval of the Trade Court, Commerce has done this approach before, at least where in the ~~consequence of its~~original investigation there was substantial evidence of dumping/subsidies as to a particular country found via ~~the~~a

-47-

lawful questionnaire process and verification as to ~~a particular~~an exporter~~,~~ (which again was not the case here), but not as to the other exporters. Small Business Telephones from Taiwan, 43 Fed. Reg. 42,543, 42,550 (Dep't of Commerce Oct. 17, 1989), affirmed in Auto Telecom Co., Ltd. v. United States, 765 F. Supp. 1094 (Ct. Int'l Trade 1991).  Here though, in this investigation, there is not even substantial evidence of any subsidies as to any exporter, none found by Commerce via ~~is~~a lawful questionnaire and verification procedure, as not done here. See above. Thus, again, as a matter of law, a negative final subsidy determination is warranted.

Finally,~~ again~~ alternatively and again erroneously, Commerce could accept TKT's Subsidy Questionnaire response and the Kazakh Government's, and not use any adverse inferences and proceed to calculate a subsidy margin for TKT (if any). But there are three problems in doing so: (a) at the time of the statutory deadline for Commerce to decide in the original investigation, there was no substantial evidence of subsidies (see above) and thus a negative subsidy finding should issue; (b) this approach rewards Mississippi Silicon for pushing for the unlawful imposition of 160% subsidy duties on TKT/Kazakhstan for 4 years that stopped all Kazak/TKT silicon metal trade to the United States and means Commerce can unlawfully impose 160% duties on Kazakh silicon metal for years without consequence except harm to Kazakhstan~~;~~/TKT; and (c) this alternative just prolongs the 160% subsidy duty pending a belated Commerce investigation that could take many months.

-48-

We appreciate the Court's attention to this matter.

Very truly yours,

Peter Koenig
Counsel to TKT and Ministry

May 8, 2023

-49-

# Comparison Summary

## Comparison Details

| | |
|---|---|
| Title: | Compare Result.docx |
| Date & Time: | May 8, 2023 4:35 PM |
| Original Document: | Correctedpercourt.docx |
| Modified Document: | CorrectedalsobyTKT.docx |

## Statistics

| | |
|---|---|
| Insertions: | 620 |
| Deletions: | 590 |
| Comments | 0 |
| Formatting: | 0 |
| Moves | 20 |
| | |
| Total | 1230 |

## Option Set formats

| | |
|---|---|
| Inserted Text | Double Underline, Blue |
| Deleted Text | Strikethrough, Red |
| Comments | Blue |
| Formatting | Underline, Blue |
| Moved From | Strikethrough, Bright Green |
| Moved To | Double Underline, Bright Green |
| Inserted Cells | Pink |
| Deleted Cells | Light Blue |
| Merged Cells | Light Yellow |
| Split Cells | Light Purple |

