2022-2204

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

_____

## TAU-KEN TEMIR LLP, JSC NMC TAU-KEN SAMRUK, MINISTRY OF TRADE AND INTEGRATION OF THE REPUBLIC OF KAZAKHSTAN,
*Plaintiffs-Appellants*

**v.**

## UNITED STATES, GLOBE SPECIALTY METALS, INC., MISSISSIPPI SILICON LLC,
*Defendants-Appellees*

_____

Appeal from the United States Court of International Trade in No. 1:21-cv-00173-LMG, Senior Judge Leo M. Gordon

_____

## RESPONSE BRIEF OF DEFENDANTS-APPELLEES GLOBE SPECIALTY METALS, INC. AND MISSISSIPPI SILICON LLC

<div style="text-align:right">

Adam H. Gordon
Jennifer M. Smith
**THE BRISTOL GROUP PLLC**
1707 L Street, NW, Suite 570
Washington, DC 20036
202-991-2700

</div>

Dated: August 28, 2023     *Counsel to Defendants-Appellees Globe Specialty Metals, Inc. and Mississippi Silicon LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 22-2204 |
| **Short Case Caption** | Tau-Ken Temir LLP v. US |
| **Filing Party/Entity** | Globe Specialty Metals, Inc. and Mississippi Silicon LLC |

---

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/28/2023                    Signature:    /s/ Adam H. Gordon

                                    Name:        Adam H. Gordon

FORM 9. Certificate of Interest

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Globe Specialty Metals, Inc. | | Globe is a wholly owned subsidiary of Ferroglobe PLC, which is a publicly traded company (NASDAQ:GSM). |
| Mississippi Silicon LLC | | Rima Industrial S.A. is the parent company of Mississippi Silicon. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable              ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑    None/Not Applicable              ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable              ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ......................................................1

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE .................................................................2

  I.  STATEMENT OF FACTS .................................................................2

  II. PROCEDURAL POSTURE ..........................................................10

STANDARD OF REVIEW....................................................................12

SUMMARY OF ARGUMENT ..............................................................14

ARGUMENT ........................................................................................17

  I.  RESPONDENTS FAILED TO EXHAUST ADMINISTRATIVE
      REMEDIES AND WAIVED CLAIMS NOW RAISED BEFORE
      THIS COURT ...............................................................................17

  II. COMMERCE PROPERLY REJECTED TKT'S UNTIMELY AND
      INCOMPLETE RESPONSE ..........................................................20

    A. TKT Failed to File Its Response by the Deadline, Contrary to
       Commerce's Regulations and Instructions .................................20

    B. TKT Also Failed to File the Response in Its Entirety Within the
       Grace Period Ending at 8:30 A.M. the Next Day Under the *Final
       Rule* .............................................................................................23

    C. TKT's Response Was Incomplete ...............................................26

    D. Commerce Properly Exercised Its Discretion to Deny TKT's
       Extension Request .......................................................................27

1. TKT Disregarded Warnings That Any Extension Had to Be Granted Before the Deadline Expired ...................................... 27

2. Respondents Have Not Asserted that TKT's Extension Request Satisfied the Requisite "Good Cause" Standard ...................... 30

E. Commerce's Rejection of TKT's Untimely and Incomplete Response Was Consistent with Established Precedent .............. 32

F. The Cases Cited by Respondents Are Inapposite ........................ 36

G. Commerce Did Not Violate Its Practice Regarding Untimely Submissions .................................................................... 41

III. COMMERCE'S APPLICATION OF TOTAL AFA TO TKT WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW ............................................................ 43

IV. COMMERCE PROPERLY APPLIED AFA BASED ON THE GOK'S FAILURE TO RESPOND TO THE VERIFICATION QUESTIONNAIRE ............................................................ 48

A. The GOK Failed to Cooperate with Verification ........................ 48

B. Commerce Did Not End the GOK's Incentive to Cooperate ....... 49

C. Commerce Can Apply Adverse Inferences to a Foreign Government That Have Adverse Collateral Effects on a Company Respondent .................................................. 51

V. COMMERCE DETERMINED TKT'S TOTAL AFA CVD RATE UNDER THE APPLICABLE LAW AND ITS PRACTICE ............ 53

A. Commerce Selected the Program-Specific AFA Rates in Accordance with the Statute and Its Established Practice ........ 53

B. Commerce Did Not Need to Corroborate the Program-Specific AFA Rates, Which Were Based on Primary Information, or the Aggregate AFA Rate .................................................. 55

C.  There Is No Basis in Law or Fact for the "Relief" Respondents Are Seeking ................................................................ 57

CONCLUSION ........................................................................ 58

# TABLE OF AUTHORITIES

## Cases

*ArcelorMittal USA LLC v. United States,*
  399 F. Supp. 3d 1271 (Ct. Int'l Trade 2019) .........................38

*Aris Gloves, Inc. v. United States,*
  281 F.2d 954 (C.C.P.A. 1958) ...............................................25

*Artisan Manufacturing Corp. v. United States,*
  978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014) ........................38

*Auer v. Robbins,*
  519 U.S. 452 (1997) .............................................................26

*Auto Telecom Co. v. United States,*
  765 F. Supp. 1094 (Ct. Int'l Trade 1991) .............................57

*Bebitz Flanges Works Private Ltd. v. United States,*
  433 F. Supp. 3d 1297 (Ct. Int'l Trade 2020) ..................34, 35

*Bebitz Flanges Works Pvt. Ltd. v. United States,*
  433 F. Supp. 3d 1309 (Ct. Int'l Trade 2020) ...............*passim*

*Celik Halat Ve Tel Sonayi A.S. v. United States,*
  557 F. Supp. 3d 1348 (Ct. Int'l Trade 2022) ..................39, 40

*Chemtall, Inc. v. United States,*
  878 F.3d 1012 (Fed. Cir. 2017) .............................................12

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
  467 U.S. 837 (1984) .............................................................26

*Clearon Corp. v. United States,*
  474 F. Supp. 3d 1339 (Ct. Int'l Trade 2020) ........................52

*Consol. Edison Co. of N.Y. v. NLRB,*
    305 U.S. 197 (1938) ............................................................. 13

*Dongtai Peak Honey Indus. v. United States,*
    777 F.3d 1343 (Fed. Cir. 2015) ..................................... *passim*

*Essar Steel Ltd. v. United States,*
    678 F.3d 1268 (Fed. Cir. 2012) ............................................ 50

*Euzebio v. McDonough,*
    989 F.3d 1305 (Fed. Cir. 2021) ........................................... 25

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States,*
    980 F. Supp. 485 (Ct. Int'l Trade 1997) ............................... 50

*Fed. Crop Ins. Corp. v. Merrill,*
    332 U.S. 380 (1947) ............................................................. 25

*Fine Furniture (Shanghai) Ltd. v. United States,*
    748 F.3d 1365 (Fed. Cir. 2014) ..................................... 51, 52

*Golden Bridge Tech., Inc. v. Nokia, Inc.,*
    527 F.3d 1318 (Fed. Cir. 2008) ........................................... 19

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States,*
    815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012) ....................... 38

*Guizhou Tyre Co. v. United States,*
    415 F. Supp. 3d 1402 (Ct. Int'l Trade 2019) ................. 52–53

*Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi AS v. United States,*
    992 F.3d 1348 (Fed. Cir. 2021) ..................................... 12, 50

*Higashi v. United States,*
    225 F.3d 1343 (Fed. Cir. 2000) ........................................... 25

*Jilin Forest Industry Jinqiao Flooring Group Co. v. United States,*
    617 F. Supp. 3d 1343 (Ct. Int'l Trade 2023) ....................... 36

*King Supply Co. v. United States,*
   674 F.3d 1343 (Fed. Cir. 2012).........................................13–14

*KYD, Inc. v. United States,*
   607 F.3d 760 (Fed. Cir. 2010)..................................................53

*Marmen Inc. v. United States,*
   545 F. Supp. 3d 1305 (Ct. Int'l Trade 2021).........................37

*Nan Ya Plastics Corp. v. United States,*
   810 F.3d 1333 (Fed. Cir. 2016)........................................32, 50

*Neo Solar Power Corp. v. United States,*
   190 F. Supp. 3d 1255 (Ct. Int'l Trade 2016).........................45

*Nippon Steel Corp. v. United States,*
   337 F.3d 1373 (Fed. Cir. 2003).............................................44

*NTN Bearing Corp. v. United States,*
   74 F.3d 1204 (Fed. Cir. 1995)................................................37

*Olympic Adhesives, Inc. v. United States,*
   899 F.2d 1565 (Fed. Cir. 1990)..............................................50

*Oman Fasteners, LLC v. United States,*
   2023 WL 2233642 (Ct. Int'l Trade Feb. 15, 2023)...........24, 25, 26

*Oman Fasteners, LLC v. United States,*
   Ct. No. 23-1661 ....................................................................24

*PAM, S.p.A. v. United States,*
   582 F.3d 1336 (Fed. Cir. 2009)..............................................13

*POSCO v. United States,*
   296 F. Supp. 3d 1320 (Ct. Int'l Trade 2018).........................56

*Pro-Team Coil Nail Enterprise v. United States*,
　419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019) ......................................... 37

*PSC VSMPO-Avisma Corp. v. United States*,
　688 F.3d 751 (Fed. Cir. 2012) .................................................. 21, 33, 37

*Qingdao Sea-Line Trading Co. v. United States*,
　766 F.3d 1378 (Fed. Cir. 2014) ........................................................ 18, 20

*Rosemount, Inc. v. USITC*,
　910 F.2d 819 (Fed. Cir. 1990) ................................................................. 13

*RZBC Grp. Shareholding Co. v. United States*,
　222 F. Supp. 3d 1196 (Ct. Int'l Trade 2017) ....................................... 53

*Sandvik Steel Co. v. United States*,
　164 F.3d 596 (Fed. Cir. 1998) ................................................................. 18

*Singleton v. Wulff*,
　428 U.S. 106 (1976) .................................................................................. 19

*Suntec Indus. Co. v. United States*,
　857 F.3d 1363 (Fed. Cir. 2017) ............................................................... 25

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,
　298 F.3d 1330 (Fed. Cir. 2002) ............................................................... 13

*Timken U.S. Corp. v. United States*,
　434 F.3d 1345 (Fed. Cir. 2006) ............................................................... 37

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
　435 U.S. 519 (1978) .................................................................................. 21

*West Virginia v. EPA*,
　142 S. Ct. 2587 (2022) .............................................................................. 36

*Whitman v. American Trucking Ass'ns*,
　531 U.S. 457 (2001) .................................................................................. 36

*Xi'an Metals & Mins. Imp. & Exp. Co. v. United States*,
   50 F.4th 98 (Fed. Cir. 2022) ........................................... 19, 20

*Yancheng Baolong Biochemical Prods. Co. v. United States*,
   406 F.3d 1377 (Fed. Cir. 2005) .......................................... 13

*Yantai Timken Co. v. United States*,
   521 F. Supp. 2d 1356 (Ct. Int'l Trade 2007) ......................... 32

*Zhejiang Native Produce & Animal By-Products Import & Export Corp.
   v. United States*,
   637 F. Supp. 2d 1260 (Ct. Int'l Trade 2009) ......................... 36

## Statutes

19 U.S.C. § 1516a(b)(1)(B)(i) ............................................ 13

19 U.S.C. § 1677e(a) ..................................................... 43

19 U.S.C. § 1677e(a)(1) .................................................. 46

19 U.S.C. § 1677e(a)(2)(B)–(C) ........................................... 46

19 U.S.C. § 1677e(a)(2)(B)–(D) ........................................... 48

19 U.S.C. § 1677e(b) ..................................................... 48

19 U.S.C. § 1677e(b)(1)(A) ....................................... 44, 47, 53

19 U.S.C. § 1677e(c) ..................................................... 56

19 U.S.C. § 1677e(c)(1) .................................................. 55

19 U.S.C. § 1677e(d)(1)(A) ............................................... 53

19 U.S.C. § 1677e(d)(2) .................................................. 53

19 U.S.C. § 1677e(d)(3) ................................................................56

19 U.S.C. § 1677f-1(c)(2) .........................................................36

28 U.S.C. § 2637(d) ................................................................18

## Rules

*Extension of Time Limits,*
    78 Fed. Reg. 57,790 (Dep't of Commerce Sept. 20, 2013) (final rule)
    ...................................................................................*passim*

## Regulations

19 C.F.R. § 351.301(c)(1) ...............................................21, 22, 41

19 C.F.R. § 351.302(b) ...........................................................30

19 C.F.R. § 351.302(d)(1)(i) ............................................21, 41

19 C.F.R. § 351.303(b)(1) ...........................................21, 26, 41

19 C.F.R. § 351.309(c)(2) ......................................................18

## Administrative Determinations and Publications

*Final Determination of Sales at Less Than Fair Value: Certain Small
Business Telephone Systems and Subassemblies Thereof From Taiwan,*
    54 Fed. Reg. 42,543 (Dep't of Commerce Oct. 17, 1989) ...............57, 58

*Modification of Regulation Regarding the Extension of Time Limits,*
    78 Fed. Reg. 3367 (Dep't of Commerce Jan. 16, 2013) .........................30

*Silicon Metal From Australia, Brazil, Kazakhstan, and Norway,*
    83 Fed. Reg. 16,382 (Int'l Trade Comm'n Apr. 16, 2018) ...................55

*Silicon Metal from the Republic of Kazakhstan: Final Affirmative Countervailing Duty Determination*,
    83 Fed. Reg. 9831 (Dep't of Commerce Mar. 8, 2018), and accompanying Issues and Decision Memorandum, *available at* https://access.trade.gov/Resources/frn/summary/kazakhstan/2018-04664-1.pdf ...................................................................................54–55

## Other Authorities

Statement of Administrative Action accompanying the Uruguay Round Agreements Act,
    H.R. Rep. No. 103-316 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 . 50

**RESPONSE BRIEF OF DEFENDANTS-APPELLEES
GLOBE SPECIALTY METALS, INC. AND
MISSISSIPPI SILICON LLC**

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, there is no other appeal in or from this action or proceeding in the originating tribunal that was previously before this or any other appellate court, and counsel for Defendants-Appellees Globe Specialty Metals, Inc. ("Globe") and Mississippi Silicon LLC ("Mississippi Silicon") is not aware of any other case that is pending in this or any other tribunal that will directly affect or be directly affected by this court's decision in this case.

## STATEMENT OF THE ISSUES

(1)    Whether Plaintiffs-Appellants Tau-Ken Temir LLP ("TKT"), JSC NMC Tau-Ken Samruk ("TKS"), and the Ministry of Trade and Integration of the Republic of Kazakhstan ("the Ministry") (collectively, "Respondents") failed to exhaust administrative remedies and waived arguments raised for the first time on appeal.

(2)     Whether the U.S. Department of Commerce ("Commerce") abused its broad discretion in rejecting TKT's untimely and incomplete initial subsidy questionnaire response.

(3)     Whether Commerce's application of total adverse facts available ("AFA") to TKT is supported by substantial evidence and in accordance with law.

(4)     Whether the Commerce's application of AFA based on the failure of the Government of Kazakhstan ("GOK") to respond to the Supplemental Questionnaire In Lieu of Verification ("Verification Questionnaire") is supported by substantial evidence and in accordance with law.

(5)     Whether the total AFA rate that Commerce assigned to TKT is supported by substantial evidence and in accordance with law.

## STATEMENT OF THE CASE

## I.     STATEMENT OF FACTS[1]

This appeal involves a trade case, and Commerce's authority to reject an untimely-filed questionnaire response and to use adverse

---

[1] Respondents' brief lacks a statement of the relevant facts and procedural history and often mischaracterizes the facts it does reference.

inferences when one respondent fails to file a response on time, and another fails to respond to a questionnaire at all.

In the underlying countervailing duty ("CVD") investigation, Commerce issued an initial questionnaire requiring TKT and the GOK to report information regarding countervailable subsidies that TKT (including its cross-owned affiliates) may have received. *See* Appx604–710. The questionnaire specified that TKT's response to the section regarding affiliated companies was due on August 6, 2020, and the remaining portions of its response were due on August 31, 2020. Appx607.

Commerce's initial questionnaire explicitly required that each of TKT's responses must be filed electronically using Commerce's Antidumping and Countervailing Duty Centralized Electronic Service System ("ACCESS") and "must be received successfully in its entirety by ACCESS by 5:00pm Eastern Time (ET)" on the due date. Appx611; *accord* Appx604. The questionnaire noted that "{i}t is essential . . . that Commerce receive complete information early in the proceeding to ensure a thorough and accurate analysis, and to provide all parties the

fullest opportunity to review and comment on your submission and

Commerce's analysis." Appx610.

The questionnaire provided explicit instructions:

> If you are unable to respond completely to every
> question in the attached questionnaire by the
> established deadlines, or are unable to provide all
> requested supporting documentation by the same date,
> you must notify the officials in charge and submit a
> written request for an extension of the deadline for all
> or part of the questionnaire response. . . . All extension
> requests must be in writing and should state the
> reasons for the request pursuant to 19 CFR 351.302(c).
> <u>Any extension granted in response to your request will
> be communicated in writing by Commerce; otherwise
> the original deadline will apply</u>.

> If Commerce does not receive either the requested
> information or a written extension request before
> 5:00pm ET on the established deadline, we may
> conclude that you have decided not to cooperate in this
> proceeding.  Commerce will not accept any requested
> information submitted after the established deadlines.
> As required by 19 CFR 351.302(d), we will reject such
> submissions as untimely.  Therefore, <u>failure to properly
> request extensions for all or part of a questionnaire
> response may result in the application of partial or
> total facts available</u>, pursuant to section 776(a) of the
> Act, <u>which may include adverse inferences</u>, pursuant to
> section 776(b) of the Act.

Appx618 (emphases added); *accord* Appx605–606.

The questionnaire further stated:

> {I}f you are unable to comply with the electronic filing requirement, as provided in 19 CFR 351.103(c) and in accordance with section 782(c) of the Act, you must promptly notify the officials in charge and submit a full written explanation of the reasons you are unable to file the document electronically. You must also suggest alternative forms in which to submit the information. Commerce will consider the ability of a submitter and may modify the electronic filing requirement on a case-by-case basis.

Appx614.

TKT timely responded to the affiliation portion of the questionnaire and to supplemental questionnaires regarding affiliates. *See* Appx719–728, Appx778–780, Appx830–832, Appx982–984, Appx1034–1041.

On August 25, 2020, TKT requested an extension until September 14, 2020, to respond to the remaining portions of the initial questionnaire. Appx882. Commerce granted a partial extension, until September 10, 2020. Appx932.

On September 9, 2020, TKT requested a second extension, until September 17, 2020, to respond to the remaining portions of the initial questionnaire. *See* Appx1091–1092. Commerce granted a second

partial extension, setting a deadline of September 15, 2020. *See*
Appx1142.

TKT's counsel reportedly received the final portions of the
response from TKT at 10:58 a.m. on September 15. *See* Appx1815.
Despite receiving the information just over six hours before the 5 p.m.
filing deadline, TKT's counsel chose not to file an extension request that
morning, assuming that the response could still be timely filed. *See*
Appx1815.

At 3:46 p.m., TKT's counsel apparently tried to start filing the
response, but encountered a (single) technical filing error. *See*
Appx1358. At 3:50 p.m., TKT filed a third extension request. *See*
Appx1306. The extension request simply stated:

> Tau-Ken Temir LLP (TKT) requests a one day
> extension from today September 15, 2020 to tomorrow
> September 16, to answer the subsidy questionnaire,
> including as to cross-owned companies. They have
> worked flat out to get this done. We have now received
> full response but are some technical/computer issues to
> resolve to file it. The prior extension requests indicate
> the need for time to answer the questionnaire.

Appx1306.

TKT's counsel did not attempt to contact Commerce officials or the ACCESS Help Desk regarding its technical issues or last-minute extension request before the deadline expired. *See* Appx205–206.

Commerce was unable to respond to TKT's third extension request before the deadline expired. *See* Appx204, Appx1712, Appx2139. Consequently, TKT received an automatic extension until 8:30 a.m. the next day, September 16. *See* Appx204 (citing *Extension of Time Limits*, 78 Fed. Reg. 57,790, 57,792 (Dep't of Commerce Sept. 20, 2013) (final rule) ("*Final Rule*")).

TKT's counsel asserted in Commerce filings that it "worked through much of the night" to try to file the response. Appx2419, Appx2438; *accord* Appx1921, Appx2429. Yet Respondents now assert to this Court that "TKT counsel did not begin to file the questionnaire response until 5:31AM September 16." Pls.-Appellants' Br. 9.

Regardless, TKT did not file the response by 8:30 a.m. on September 16. *See* Appx195. TKT filed two parts of the business proprietary version, and, with the exception of the narrative, all sections of the public version, <u>after</u> 8:30 a.m. on September 16, 2020. *See* Appx1409–1410, Appx1712. TKT ultimately finished filing at 10:10

a.m. on September 16. *See* Appx195, Appx204–205, Appx1815, Appx2139.

Moreover, TKT <u>never</u> filed the response in its entirety. *See* Appx209–210. TKT failed to file an exhibit that should have contained <u>TKT's</u> "Financial Reports, Tax Reports, & Registrations" in the business proprietary version of the response; instead, TKT filed an exhibit pertaining to its parent company, <u>TKS</u>, in duplicate. *See* Appx1410, Appx1975, Appx2438.

Commerce rejected TKT's untimely response and removed it from the record.[2] *See* Appx1712–1713, Appx1763–1764, Appx2138–2139.

As a result, Commerce relied on the facts otherwise available with adverse inferences ("AFA") to determine TKT's subsidy rate in the preliminary determination. *See* Appx2194–2195. As AFA, Commerce concluded that TKT benefited from six subsidy programs. *See* Appx2196–2197, Appx2200–2206. Commerce selected an AFA rate for a Corporate Income Tax Exemption program equal to Kazakhstan's

---

[2] Respondents incorrectly assert that "Commerce gave itself <u>4 months</u> extension when Commerce needed time given . . . stay at home COVID restrictions." Pls.-Appellants' Br. 7. Commerce did not give itself a four-month extension due to COVID-19 or otherwise toll its deadlines in this investigation. *See* Appx406–430.

standard corporate income tax rate of 20 percent, which was the only rate Commerce had ever determined for a Kazakh subsidy program. *See* Appx2197.  Commerce then applied the 20 percent AFA rate to each of the five other programs.  *See* Appx2197.  TKT's preliminary subsidy rate thus totaled 120 percent.  *See* Appx2197, Appx2260.

Commerce preliminarily found that the remaining two subsidy programs — the Provision of Water for Less Than Adequate Remuneration ("LTAR") and Provision of Drainage System Services for LTAR — were not countervailable based on information provided by the GOK in its own questionnaire responses.  *See* Appx2207.

Commerce subsequently issued a Verification Questionnaire to the GOK regarding those two programs, as well as the Provision of Electricity for LTAR program.  *See* Appx2310–2313.  The Verification Questionnaire stated:

> If we do not receive the requested information before the established deadline, we may conclude that your government has decided not to cooperate in this proceeding. . . . Further, failure to submit a response to all requests in this document may result in the application of partial or total facts available pursuant to section 776(a) of the Tariff Act of 1930, as amended (the Act), which may include adverse inferences pursuant to section 776(6) of the Act.

9

Appx2311.  The GOK never responded to the Verification

Questionnaire.  *See* Appx191, Appx193.

In the final determination, Commerce reaffirmed its decision to

apply total AFA to TKT based on TKT's failure to file a timely response

in its entirety.  *See* Appx193, Appx195, Appx204–210.  Commerce also

determined that the two remaining LTAR programs were

countervailable as AFA based on the GOK's failure to respond to the

Verification Questionnaire.  *See* Appx193, Appx244–245.  Commerce

selected the 20 percent AFA rate for each of those programs.  *See*

Appx245.  Commerce assigned TKT and its crossed-owned companies a

total AFA subsidy rate of 160 percent.  *See* Appx138, Appx245.

## II.    PROCEDURAL POSTURE

On April 19, 2021, TKT and TKS challenged Commerce's final

determination before the U.S. Court of International Trade ("the Trade

Court").  *See* Appx351.  They timely filed their brief before the Trade

Court on July 21, 2021, but did not file their motion for judgment on the

agency record until a week later.  *See* Appx354.  The Ministry, which

intervened on behalf of Plaintiffs, did not file its own motion or an

opening or reply brief but appeared to join and support TKT and TKS's motion, briefs, and arguments. *See* Appx56 n.2, Appx352–353.

On July 14, 2022, the Trade Court denied the motion for judgment on the agency record and affirmed Commerce's final determination. *See* Appx2–3, Appx55–86. The Trade Court found that Commerce's rejection of TKT's untimely and incomplete questionnaire response and Commerce's application of total AFA to TKT and the GOK was lawful. *See* Appx55–86.

On September 11, 2022, TKT, TKS, and the Ministry appealed the Trade Court's decision. *See* Appx355. The appeal was docketed the next day. *See* ECF No. 1.

Entries of appearance and certificates of interest were due on September 28, 2022. *Id.* TKT, TKS, and the Ministry filed their entry of appearance and certificate of interest late, along with a motion requesting acceptance of the untimely filings. *See* ECF Nos. 5–6. The Court granted the motion. *See* ECF No. 11.

TKT, TKS, and the Ministry filed their opening brief on the extended deadline of February 28, 2023. *See* ECF No. 30. They subsequently filed four "corrected" briefs. *See* ECF Nos. 32, 34, 36, 41-

3.  Their fourth "corrected" brief, filed on May 8, contained 1,230 changes from the version originally filed on February 28.  *See* ECF No. 41-5 at 68.  Upon their motion, the Court accepted the May 8 fourth "corrected" brief.  *See* ECF Nos. 41-1, 54.  This brief responds to the arguments in the May 8 "corrected" brief.

## STANDARD OF REVIEW

This Court applies the same standard of review that was applied by the Trade Court when reviewing Commerce's CVD investigations. *See Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi AS v. United States*, 992 F.3d 1348, 1352 (Fed. Cir. 2021).  This Court "give{s} great weight to the informed opinion of that court, which has expertise in international trade matters."  *Chemtall, Inc. v. United States*, 878 F.3d 1012, 1018 (Fed. Cir. 2017) (internal quotation marks and citation omitted).

The Trade Court "upholds Commerce's exercise of its discretion to set and enforce the timelines of its investigations unless that discretion has been abused."  *Bebitz Flanges Works Pvt. Ltd. v. United States*, 433 F. Supp. 3d 1309, 1325 (Ct. Int'l Trade 2020) ("*Bebitz AD*") (citing *Dongtai Peak Honey Indus. v. United States*, 777 F.3d 1343, 1351 (Fed.

Cir. 2015)).  "Abuse of discretion will be found when there is an error of law, a clear error of judgment, or findings that were clearly erroneous." *Yancheng Baolong Biochemical Prods. Co. v. United States*, 406 F.3d 1377, 1380 (Fed. Cir. 2005).  A clear error of judgment is a decision that "is patently unreasonable, arbitrary, or fanciful."  *Rosemount, Inc. v. USITC*, 910 F.2d 819, 821 (Fed. Cir. 1990).

The court reviews Commerce's application of AFA under the substantial evidence standard.  *See Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1335 (Fed. Cir. 2002).  Commerce's determination must be sustained unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with the law."  19 U.S.C. § 1516a(b)(1)(B)(i).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009) (internal quotation marks and citations omitted); *accord Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938).  A party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal."  *King Supply Co.*

*v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012) (internal

quotation marks and citations omitted).

## SUMMARY OF ARGUMENT

Respondents failed to exhaust and waived arguments raised for

the first time in their brief before this Court regarding TKT's first two

extension requests and corroboration of TKT's CVD rate. TKS also

failed to exhaust administrative remedies because TKS did not submit

any arguments before Commerce. This Court should decline to consider

the unexhausted, waived arguments and dismiss TKS as a party.

Commerce properly exercised its discretion when it rejected TKT's

initial subsidy questionnaire response because TKT failed to file the

response in its entirety by the deadline or by 8:30 a.m. the next day,

contrary to Commerce's rules and instructions in the initial

questionnaire, which expressly warned of the consequences of an

untimely filing. TKT <u>never</u> filed part of its response.

The extension request that TKT filed shortly before the deadline

does not insulate TKT from the consequences of its subsequent failure

to timely file a complete response. Commerce made clear that if

Commerce did not act to grant an extension request, then the original

deadline would apply. Consistent with Commerce's *Final Rule*, TKT's last-minute extension request was filed too late for Commerce to consider it, and it did not excuse TKT's untimely and incomplete response or require Commerce to accept the response. Respondents have not even asserted that the requisite good cause existed for TKT's extension requests.

Commerce's rejection of TKT's untimely and incomplete questionnaire response was consistent with established case law and Commerce's practice of deciding extensions on a case-by-case basis. The cases and prior Commerce proceedings cited by Respondents are inapposite.

Commerce properly applied AFA to TKT because TKT failed to cooperate by not acting to the best of its ability to comply with the request for information in the initial questionnaire. TKT failed to:

(1) comply with Commerce's instructions to contact Commerce officials in case of a filing difficulty,

(2) file an extension request early enough for Commerce to consider it, even though TKT's counsel did not receive the final information until about six hours before the deadline,

(3) file the initial questionnaire response by the deadline or 8:30 a.m. the next day under the *Final Rule*,

15

(4)  provide complete information, or

(5)  provide the missing information after realizing its error.

Commerce also properly applied AFA based on the GOK's separate failure to respond to the Verification Questionnaire. Commerce may apply adverse inferences based on a foreign government's failure to cooperate that have collateral effects on a company respondent.

TKT's total rate is not unduly punitive because it is the result of TKT's and the GOK's failures to cooperate to the best of their ability. Commerce properly determined TKT's total AFA rate as the aggregate of program-specific rates selected in accordance with the statute, Commerce's established practice, and the methodology that Commerce applied in a prior *Silicon Metal from Kazakhstan* CVD investigation. The program-specific rates do not need to be corroborated because they are based on primary information from this investigation. Commerce properly calculated TKT's total AFA rate as the aggregate of the program-specific rates. TKT's total rate does not need to be corroborated.

16

Respondents ignore relevant facts and authorities and
mischaracterize others in a fantastical attempt to avoid CVD liability
entirely.

## ARGUMENT

## I.    RESPONDENTS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AND WAIVED CLAIMS NOW RAISED BEFORE THIS COURT

Respondents have failed to exhaust administrative remedies and
waived two arguments contained in their brief.  Respondents argue for
the first time in their opening brief submitted before this Court that:

(1) Commerce should have granted its first two requests to extend
the questionnaire response deadline in full, and

(2) TKT's CVD rate "is uncorroborated."

Pls.-Appellants' Br. 6–7, 39.  No party briefed those arguments before
Commerce or the Trade Court.  *See* Appx2364–2365, Appx2415–2464,
Appx2671–2714.

Further, TKS is not a proper party to assert the remaining
arguments in Respondents' brief.  TKS was not a signatory to TKT's
administrative case brief and did not submit <u>any</u> arguments to
Commerce.  *See* Appx2415, Appx2464.  TKS was not included in TKT's
Entry of Appearance before Commerce.  *See* Appx718.  Arguments in

TKT's administrative case brief cannot be retroactively applied to TKS where there was no indication that the arguments also applied to TKS.

Commerce's regulations require that the administrative "case brief must present all arguments that continue in the submitter's view to be relevant to {Commerce}'s final determination . . . , including any arguments presented before the date of publication of the preliminary determination." 19 C.F.R. § 351.309(c)(2). This Court has "held that a party's failure to raise an argument before Commerce constitutes a failure to exhaust its administrative remedies." *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1388 (Fed. Cir. 2014). "When administrative remedies have not been exhausted, judicial review of administrative action is inappropriate, since it is a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998) (internal quotation marks and citations omitted); *see also* 28 U.S.C. § 2637(d) (providing that the Trade Court "shall, where appropriate, require the exhaustion of administrative remedies").

Arguments that were not raised before the Trade Court or Commerce are also waived because parties cannot "raise{} issues for the first time on appeal." *Xi'an Metals & Mins. Imp. & Exp. Co. v. United States*, 50 F.4th 98, 110 n.3 (Fed. Cir. 2022) (quotation marks and citation omitted). "It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Although this Court has discretion to decide when to deviate from this general rule, *see Singleton*, 428 U.S. at 121, the U.S. Supreme Court has counseled against hearing new arguments for the first time on appeal absent limited circumstances, *see Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322–23 (Fed. Cir. 2008) (citations omitted).

As Respondents did not raise the arguments regarding TKT's first two extension requests and corroboration in their briefs before Commerce or the Trade Court, they have failed to exhaust administrative remedies and waived those arguments. TKS also failed to exhaust administrative remedies because it did not present any arguments to Commerce. No exception applies, and Respondents have not argued for any exception. Accordingly, this Court should disregard

those arguments and dismiss TKS as a party. *See Xi'an Metals*, 50 F.4th at 110 n.3; *Qingdao Sea-Line*, 766 F.3d at 1388.[3]

## II.  COMMERCE PROPERLY REJECTED TKT'S UNTIMELY AND INCOMPLETE RESPONSE

Commerce did not abuse its discretion when it rejected TKT's initial subsidy questionnaire response because TKT failed to timely file its response in its entirety by the submission deadline, September 15, 2020, or by 8:30 a.m. on the next day, September 16, 2020.

### A. TKT Failed to File Its Response by the Deadline, Contrary to Commerce's Regulations and Instructions

"Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion

---

[3] Globe and Mississippi Silicon have not waived any arguments presented in this brief. The Trade Court instructed Globe and Mississippi Silicon (as Defendant-Intervenors) not to repeat arguments made by the Government and limited the length of their response brief to half of the other parties' briefs. *See* Appx2590, Appx2594, Appx2751. In compliance with that instruction, Globe and Mississippi Silicon stated that they "agree with and incorporate by reference all arguments in" the Government's brief and summarized all relevant arguments in their response brief before the Trade Court. Appx2906–2909.

If this Court believes that anything more should have been required to preserve arguments for appeal, Globe and Mississippi Silicon respectfully suggest that this Court signal to the Trade Court that it should not limit Defendant-Intervenors' ability to present arguments.

their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978) (internal quotation marks and citation omitted). "Accordingly, absent such constraints or circumstances, courts will defer to the judgment of an agency regarding the development of the agency record. To do otherwise would run{} the risk of propel{ling} the court{s} into the domain which Congress has set aside exclusively for the administrative agency." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (internal quotation marks and citations omitted).

Commerce has established reasonable rules of procedure and timelines for submitting requested information. Commerce's regulations require that "{a}n electronically filed document must be received successfully in its entirety by the Department's electronic records system, ACCESS, by 5 p.m. Eastern Time on the due date." 19 C.F.R. § 351.303(b)(1). Its regulations also require that Commerce "will reject any untimely filed . . . questionnaire response" and "not consider or retain in the official record of the proceeding" untimely filed factual information. *Id.* §§ 351.301(c)(1), 351.302(d)(1)(i).

21

Commerce's initial questionnaire reiterated that TKT's response "must be received successfully in its entirety by ACCESS by 5:00pm Eastern Time (ET) on the due date," and Commerce "will reject" information submitted after the deadline as untimely.[4]  Appx606, Appx611, Appx618; *accord* Appx604.

Despite receiving two extensions totaling an additional 15 days to prepare and submit the questionnaire response, and the warning in the questionnaire that Commerce would reject an untimely submission, TKT failed to file its initial subsidy questionnaire response by 5 p.m. on the deadline.  *See* Appx1712.  Accordingly, Commerce properly rejected TKT's untimely filed response, *see* Appx1712–1713, as required under 19 C.F.R. § 351.301(c)(1).

---

[4] Respondents cite guidance in the ACCESS *Handbook on Electronic Filing Procedures* and letters issued by Commerce in recent proceedings.  *See* Pl.-Appellants' Br. 21; TKT Fed. R. App. P. 28j Supplemental Authority, ECF No. 52, June 12, 2023.  None of this guidance contradicts Commerce's regulations, *Final Rule*, or instructions in the initial questionnaire.

**B. TKT Also Failed to File the Response in Its Entirety Within the Grace Period Ending at 8:30 A.M. the Next Day Under the *Final Rule***

Instead of timely filing the response, TKT filed a <u>third</u> extension request at 3:50 p.m. — one hour and ten minutes before the 5 p.m. deadline. *See* Appx1306. Commerce was unable to respond to that request before the deadline expired. *See* Appx1712.

Commerce explicitly addressed such a last-minute extension request scenario in the *Final Rule*, which was promulgated in September 2013. *See Extension of Time Limits*, 78 Fed. Reg. at 57,791–92. The *Final Rule* was adopted after Commerce "frequently encountered the situation in which a party filed an extension request so close to the time limit that {Commerce} did not have the opportunity to respond to the request before the time limit expires." *Id.* at 57,791. The *Final Rule* states: "For submissions that are due at 5:00 p.m., if {Commerce} is not able to notify the party requesting the extension of the disposition of the request by 5:00 p.m., then the submission would be due by the opening of business (8:30 a.m.) on the next work day." *Id.* at 57,792.

23

TKT failed to file the response in its entirety by 8:30 a.m. on September 16, 2020, the next work day.  *See* Appx1409–1410, Appx1712.  As Commerce noted, TKT did not complete the filing process "until 10:10 a.m., well after the grace period provided for in the {*Final Rule*}."  Appx2139.

Respondents note that "Commerce now advices counsel of this Next Day 8:30AM practice in its questionnaires," and the Trade Court stated in *Oman Fasteners, LLC v. United States*, 2023 WL 2233642, at *5 (Ct. Int'l Trade Feb. 15, 2023), that "Commerce's Next Day 8:30AM approach" was "based on an 'off hand comment response—which has never been codified through a regulation or otherwise reasonably communicated to the bar.'"[5]  Pls.-Appellants' Br. 22.

Yet the 8:30 a.m. "grace period" was "reasonably communicated to the bar" because it was published in the Federal Register.  Courts have repeatedly held that "{t}he publication of rules and regulations in the

---

[5] The Trade Court in *Oman Fasteners* made this observation in order to excuse a respondent's failure to file a questionnaire response on time but before 8:30 am the next day, even though the respondent did not file a timely extension request.  *See* 2023 WL 2233642, at *5 & n.10.  The Trade Court's decision in *Oman Fasteners* has been appealed and is pending before this court.  *See Oman Fasteners, LLC v. United States*, Ct. No. 23-1661.

Federal Register gives legal notice of their contents to those subject to, or affected by, them, 'regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance.'" *Higashi v. United States*, 225 F.3d 1343, 1349 (Fed. Cir. 2000) (quoting *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947)); *accord Euzebio v. McDonough*, 989 F.3d 1305, 1314 (Fed. Cir. 2021); *see also Suntec Indus. Co. v. United States*, 857 F.3d 1363, 1370 (Fed. Cir. 2017) (recognizing "a broad, non-agency-specific default rule that Federal Register notices are treated as legally effective notices in a wide range of circumstances"); *Aris Gloves, Inc. v. United States*, 281 F.2d 954, 958 (C.C.P.A. 1958) ("Congress intended a proper publication in the Federal Register to be considered reasonable public notice unless otherwise provided by statute.").

In *Oman Fasteners*, the Trade Court permanently enjoined Commerce from applying an AFA rate to a respondent whose counsel began filing a supplemental questionnaire response 50 minutes prior to the 5 p.m. deadline, finished filing at 5:16 p.m., and neither alerted Commerce of the issue nor sought a retroactive extension.  *See* 2023 WL 2233642, at *1–3, 13.  Commerce rejected the untimely response five

weeks later, prompting the respondent to then request retroactive extensions of the missed deadline, which Commerce denied. *See id.* at *3. The Trade Court emphasized that the respondent would have completed its filing within the 8:30 a.m. grace period if it had submitted an extension request before the deadline had expired. *See id.* at *5 & n.10. As noted above, that case has been appealed to this Court.

Globe and Mississippi Silicon respectfully submit that the *Oman Fasteners* case was wrongly decided. In any event, the Trade Court itself specifically distinguished *Oman Fasteners* from this case on the grounds that TKT's counsel "failed to complete the substantive filing by 8:30 a.m."[6]   2023 WL 2233642, at *5 n.10.

### C. TKT's Response Was Incomplete

TKT <u>never</u> filed the response in its entirety, *see* Appx209–210, as required under 19 C.F.R. § 351.303(b)(1). TKT never filed an exhibit that should have contained TKT's confidential "Financial Reports, Tax Reports, & Registrations." *See* Appx1410, Appx1975, Appx2438. The

---

[6] Respondents have not challenged the legality of the *Final Rule* under the framework of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), or *Auer v. Robbins*, 519 U.S. 452 (1997), nor is there any basis for such a challenge.

missing exhibit should have included information regarding potential

subsidy benefits and sales data, which are critical to Commerce's

subsidy analysis, and information necessary for verification and

reconciliation of other information on the record.  *See* Appx1975.

### D. Commerce Properly Exercised Its Discretion to Deny TKT's Extension Request

Respondents challenge Commerce's denial of TKT's extension

requests in full.  *See* Pls.-Appellants' Br. 6–17.  Respondents argue that

Commerce's denial of the requests was "not supported by substantial

evidence."  Pls.-Appellants' Br. 7.  That is the wrong standard of review.

Decisions whether to grant extension requests rest within Commerce's

discretion.  *See Bebitz AD*, 433 F. Supp. 3d at 1316, 1325.  Commerce

did not abuse its discretion when it only partially granted TKT's

extension requests and when it denied TKT's last-minute third

extension request.

### 1. TKT Disregarded Warnings That Any Extension Had to Be Granted Before the Deadline Expired

This Court has recognized that "{i}t is not for {a respondent} to

establish Commerce's deadlines or to dictate to Commerce whether and

when Commerce actually needs the requested information." *Dongtai Peak*, 777 F.3d at 1352 (quotation marks and citations omitted).

The *Final Rule* and Commerce's initial questionnaire in this investigation make clear that the mere filing of an extension request does not extend the deadline or mean that Commerce will grant an extension.

The *Final Rule* does <u>not</u> indicate that an ACCESS filing immediately alerts all Commerce officials simultaneously of an extension request, as Respondents contend.  *See* Pl.-Appellants' Br. 10, 13.  To the contrary, the *Final Rule* expressly <u>warns</u>:

> Parties should be aware that the likelihood of {Commerce} granting an extension will decrease the closer the extension request is filed to the applicable time limit because {Commerce} must have time to consider the extension request and decide on its disposition.  <u>Parties should not assume that they will receive an extension of a time limit if they have not received a response</u> from {Commerce}.

*Extension of Time Limits*, 78 Fed. Reg. at 57,792 (emphasis added).

Similarly, Commerce's initial questionnaire expressly stated that "{a}ny extension granted in response to {an extension} request will be communicated in writing by Commerce; otherwise the original deadline

28

will apply."[7]  Appx618; *accord* Appx606.  The questionnaire warned of

the consequences, including the possibility of application of AFA, if the

response was not received in its entirety by the deadline.  *See* Appx606,

Appx618.

Despite receiving advance notice that Commerce would have had

to act to grant any extension before the deadline expired, TKT's counsel

waited until 3:50 p.m. — one hour and ten minutes before the deadline

— to submit the third extension request.  *See* Appx1306.  TKT's counsel

did so at his own peril.  *See Extension of Time Limits*, 78 Fed. Reg. at

57,792.  As TKT's counsel knew that he did not have complete

information from his client on the morning of the deadline, *see*

Appx1815, TKT's counsel could have submitted an extension request

earlier in the day or on a previous day.  The decision not to file an

extension request until late in the day the response was due must have

been either a deliberate strategic choice or a significant error in

judgment by TKT or its counsel.  Commerce and the Trade Court

---

[7] Respondents misquote this as referring to "any extension <u>request</u> . . . <u>to</u> Commerce."  Pls.-Appellants' Br. 11 (internal quotation marks omitted).  This quote actually refers to any "<u>extension</u> granted . . . <u>by</u> Commerce."  Appx618 (emphasis added); *accord* Appx606.

therefore properly concluded that TKT's counsel decision not to submit

an earlier extension request "constituted an unwise gamble that did not

justify granting the subsequent last-minute request." Appx73 (citing

Appx208).

### 2. Respondents Have Not Asserted that TKT's Extension Request Satisfied the Requisite "Good Cause" Standard

Respondents incorrectly assert that Commerce does not apply any

standard to decide extension requests. *See* Pls.-Appellants' Br. 13, 16–

17. Respondents cite Commerce's <u>proposed</u> rule, which recognized that

Commerce's regulations did not provide a standard for <u>untimely-filed</u>

extension requests at that time. *See id.* at 16–17 (citing *Modification of

Regulation Regarding the Extension of Time Limits*, 78 Fed. Reg. 3367,

3369 (Dep't of Commerce Jan. 16, 2013)). Although Commerce's *Final

Rule* codified such a standard, *see Extension of Time Limits*, 78 Fed.

Reg. at 57,793, the relevant standard here is Commerce's long-

established standard for <u>timely-filed</u> extension requests.

Commerce evaluates timely-filed extension requests under the

"good cause" standard set forth in 19 C.F.R. § 351.302(b). *See id.*

Respondents did not assert that TKT's extension requests satisfied the "good cause" standard before Commerce, the Trade Court, or this Court.  *See* Appx882, Appx1091, Appx1306, Appx2415–2464, Appx2671–Appx2714; Pl.-Appellants' Br.  Indeed, the Trade Court found that "Plaintiffs fail to develop an argument demonstrating that Plaintiffs satisfied that 'good cause' standard."  Appx63.  The Trade Court also stated that "{t}here is no language in either Plaintiffs' USCIT Rule 56.2 Brief or Reply Brief directly addressing how Commerce abused its discretion."  Appx63.

Even "{g}iving Plaintiffs the benefit of the doubt" regarding this issue, the Trade Court held that "Plaintiffs have not shown that Commerce abused its discretion in denying Plaintiffs' extension request."  Appx63.  The Trade Court properly affirmed Commerce's rationale for rejecting TKT's untimely submission where counsel only received materials from Plaintiffs at approximately 11:00 A.M. on the day due; made "the minimum effort" to inform Commerce of the technical errors and issues it encountered; did not attempt to contact Commerce; received an automatic extension until 8:30 A.M. the following morning (due to the last-minute, though timely, extension

request) but <u>still</u> failed to file the questionnaire response in its entirety by that extended deadline; provided a "5-line barebones extension request" that "did not satisfy the requirement for a full written explanation"; and "had ample notice of the consequences of failing to timely file." Appx63–71.

### E. Commerce's Rejection of TKT's Untimely and Incomplete Response Was Consistent with Established Precedent

Commerce's rejection of TKT's untimely and incomplete initial questionnaire response is consistent with established case law. This Court has recognized that "the burden of creating an adequate record lies with interested parties and not with Commerce." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337–38 (Fed. Cir. 2016) (quotation marks and citation omitted). TKT failed to meet its burden by failing to file a timely and complete response.

This Court has also recognized that Commerce has broad discretion to set and enforce time limits in its proceedings. *See Dongtai Peak*, 777 F.3d at 1351–53; *Yantai Timken Co. v. United States*, 521 F. Supp. 2d 1356, 1370 (Ct. Int'l Trade 2007). "A court cannot set aside application of a proper administrative procedure because it believes

that properly excluded evidence would yield a more accurate result if the evidence were considered." *PSC VSMPO-Avisma*, 688 F.3d at 761. This Court "has made clear Commerce's rejection of untimely-filed factual information does not violate a respondent's due process rights when the respondent had notice of the deadline and an opportunity to reply." *Dongtai Peak*, 777 F.3d at 1353. "Commerce is not required to provide good cause or justification for rejecting untimely submissions and proceeding as if respondent has not provided requested information." *Bebitz AD*, 433 F. Supp. 3d at 1327 (citing *Dongtai Peak*, 777 F.3d at 1352).

Here, TKT had notice of the deadline and the consequences for not meeting the deadline, as well as an opportunity to comply. Accordingly, Commerce properly rejected TKT's untimely initial questionnaire response.

In *Dongtai Peak*, the respondent submitted an untimely extension request after missing a filing deadline due to a national holiday, deadlines for other questionnaire responses, and issues with its translator, U.S.-based attorneys, and computers. *See* 777 F.3d at 1347. Commerce denied the untimely extension request because good cause

33

did not exist, and rejected the untimely filing.  *See id.*  This Court

affirmed, finding that Commerce reasonably determined that the

respondent "was entirely capable of at least submitting an extension

request on time, but simply failed to do so," despite knowing about all of

the issues prior to the deadline.  *Id.* at 1351–52.

As the Trade Court aptly noted, "{h}ere, similarly, it is unclear

why Plaintiffs did not file an extension request earlier," despite

knowing of the delay in receiving information from TKT.  Appx72.

Commerce thus reasonably determined that good cause for the

extension request did not exist because TKT was entirely capable of

submitting an earlier extension request in time for Commerce to

consider it, but simply failed to do so.  *See* Appx72–73.

The Trade Court also aptly noted that "{t}he circumstances here

are parallel to those in" *Bebitz Flanges Works Private Ltd. v. United

States*, 433 F. Supp. 3d 1297 (Ct. Int'l Trade 2020) ("*Bebitz CVD*").

Appx74.  In *Bebitz CVD* (involving the same counsel representing TKT

here), the Trade Court upheld Commerce's rejection of an untimely

questionnaire response where the respondent submitted an additional

extension request shortly before the deadline, but Commerce could not

34

respond by the deadline, and the respondent began filing the response at 10:24 a.m. the next day.  *See* 433 F. Supp. 3d at 1301–02, 1305–07.

The *Bebitz CVD* court found that Commerce did not abuse its discretion by prioritizing the need for finality over the agency's obligation to determine the most accurate CVD rate where, as here, Commerce previously granted the respondent "multiple extensions" and advised the respondent of the potential consequences of failing to meet the agency's deadlines.  *Id.* at 1305.  The Trade Court also found that Commerce did not abuse its "substantial" discretion or otherwise act unlawfully in denying the respondent's additional extension requests "particularly in light of the multiple extensions Commerce did provide." *Id.* at 1305–06.[8]  In this case, the Trade Court properly saw "no reason to differ in the outcome, particularly in light of the multiple extensions already granted to TKT/TKS."  Appx74.

---

[8] The Trade Court also issued a decision on the same day upholding Commerce's rejection of an untimely submission by TKT's counsel in a companion antidumping duty ("AD") case.  *See Bebitz AD*, 433 F. Supp. 3d at 1328.

### F. The Cases Cited by Respondents Are Inapposite

Respondents rely on several inapposite cases. *See* Pls.-Appellants'
Br. 13, 15–16, 19, 23; *see also* Appx78–79; *Bebitz AD*, 433 F. Supp. 3d at
1324 n.6.

Respondents cite four cases that did not involve untimely
submissions. *See* Pls.-Appellants' Br. 15–16.

*Zhejiang Native Produce & Animal By-Products Import & Export
Corp. v. United States*, 637 F. Supp. 2d 1260, 1263–64 (Ct. Int'l Trade
2009), involved Commerce's interpretation and application of 19 U.S.C.
§ 1677f-1(c)(2) regarding Commerce's ability to limit the number of
respondents selected for review.

*West Virginia v. EPA*, 142 S. Ct. 2587, 2607–16 (2022), and
*Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 465–69 (2001),
involved major policy decisions made by the Environmental Protection
Agency absent a clear congressional statement authorizing the agency's
action. *Jilin Forest Industry Jinqiao Flooring Group Co. v. United
States*, 617 F. Supp. 3d 1343, 1367–68 (Ct. Int'l Trade 2023), cited those
cases in determining that Commerce's nonmarket economy presumption

was not authorized by any statute or regulation and was not entitled to deference.

By contrast, Commerce's setting and enforcing deadlines is not a major policy decision. Rather, it is a routine exercise of authority that "Congress has set aside exclusively for the administrative agency." *PSC VSMPO-Avisma*, 688 F.3d at 760 (internal quotation marks and citations omitted).

Respondents' reliance on *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1352–53 (Fed. Cir. 2006); *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208–09 (Fed. Cir. 1995); *Marmen Inc. v. United States*, 545 F. Supp. 3d 1305, 1315–17 (Ct. Int'l Trade 2021); and *Pro-Team Coil Nail Enterprise v. United States*, 419 F. Supp. 3d 1319, 1331–33 (Ct. Int'l Trade 2019), is also misplaced because those cases merely pertain to untimely-submitted <u>corrections</u> of information <u>already on the record</u>. The respondents in those cases did not file untimely or incomplete <u>initial</u> responses — which provide the foundation for the agency's analysis — as TKT did. *Timken U.S.* and *NTN Bearing* also predate both *Dongtai Peak* and the *Final Rule*.

37

Similarly, the Trade Court's decisions in *Artisan Manufacturing Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Int'l Trade 2014), and *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012), cited at pages 13 and 38–39 of Respondents' brief, also predate both *Dongtai Peak* and the *Final Rule*. *See* Appx73, Appx76; *ArcelorMittal USA LLC v. United States*, 399 F. Supp. 3d 1271, 1281 (Ct. Int'l Trade 2019).

The facts in *Artisan* are distinguishable from the facts here. In *Artisan*, the Trade Court found that Commerce had abused its discretion "in the particular circumstances of th{at} investigation" in rejecting a questionnaire response that was filed at 9:00 a.m. the morning after the filing deadline was missed "{d}ue to an inadvertent lapse" by counsel. 978 F. Supp. 2d at 1339, 1344–45 (emphasis added). The Trade Court also found that Commerce was ambiguous in communicating its policy on time extensions, which sent "a mixed message" to respondents. *Id.* at 1347–48. By contrast, here, TKT disregarded Commerce's policy on deadlines, time extensions, and the consequences for failing to file a timely questionnaire response, which

was clearly communicated in Commerce's *Final Rule*, regulations, and questionnaire, and critical parts of TKT's response were never filed.

Finally, the facts underlying the Trade Court's decision in *Celik Halat Ve Tel Sonayi A.S. v. United States*, 557 F. Supp. 3d 1348 (Ct. Int'l Trade 2022), are also distinguishable from those here. In that case, Commerce rejected Celik Halat's initial questionnaire response because its representative filed a single exhibit 21 minutes after the deadline, after Commerce previously <u>foreclosed</u> future extensions, signaling that an additional extension request would have been futile. *See* 557 F. Supp. at 1349, 1359. Commerce informed the respondent that "it <u>would not be able to 'grant any further extension</u> of the deadlines for Celik Halat's initial AD questionnaire response.'" *Id.* at 1359 (citation omitted).

The Trade Court found that:

> This emphatic and unambiguous statement . . . was itself an abuse of discretion on the part of Commerce. It foreclosed any future extension whatsoever (whether or not upon a timely request, even a brief one on an emergency basis) and even one necessitated by what Commerce might consider an "extraordinary circumstance" as described by 19 C.F.R. § 351.302(c). This intimidating language reasonably could be expected to cause Celik Halat's representative, taking Commerce at its word, to conclude five days later that

> Celik Halat would not be granted even a brief
> extension on the afternoon of {the filing deadline}, that
> attempting to obtain one would only delay things
> further, and that the best course of action instead was
> continuing the effort to file before the 5:00 p.m.
> deadline all of the Section B and C Initial
> Questionnaire responses with all associated exhibits in
> a form that would be successfully uploaded in the
> ACCESS system.

*Id.* at 1360. The Trade Court also noted that Commerce's "procedures

as applied in this case insisted on technical perfection in the filing of

documents on its ACCESS system," and that the filing would have

fallen within the 8:30 a.m. grace period under the *Final Rule* if the

respondent had submitted an extension request before the deadline had

expired. *Id.* at 1360–61 (emphasis added). The Trade Court concluded

that Commerce abused its discretion and improperly applied AFA to the

respondent. *See id.* at 1349, 1359–62.[9]

Here, by contrast, Commerce did not foreclose the possibility of

future extensions for TKT's response. *See* Appx1142. TKT simply

ignored the express instructions in Commerce's questionnaire that it

must notify Commerce officials of filing difficulties and that the original

---

[9] *Celik Halat* did not cite this Court's controlling precedential decision
in *Dongtai Peak*. Interestingly, *Celik Halat* was not appealed.

deadline would apply unless Commerce granted an extension in writing. *See* Appx605–606, Appx614, Appx618.  Those instructions were consistent with Commerce's published regulations.  *See* 19 C.F.R. §§ 351.301(c)(1), 351.302(d)(1)(i), 351.303(b)(1).  TKT also filed the response well after the 8:30 a.m. "grace period" from the *Final Rule* expired, and an incomplete one at that.

### G. Commerce Did Not Violate Its Practice Regarding Untimely Submissions

Respondents cite proceedings in which Commerce exercised its discretion to accept untimely questionnaire responses and grant extension requests under circumstances they argue are "less compelling" than those here.[10]  Pl.-Appellants' Br. 23–26, 28–29; *see*

---

[10] Respondents appear to incorrectly include *Certain Steel Nails from Oman*, *Finished Carbon Steel Flanges from Italy*, and *Certain Steel Nails from Malaysia* among the list of proceedings in which Commerce granted untimely extension requests.  *See* Pl.-Appellants' Br. 28.  The first two involve timely-filed extension requests submitted days before the deadline.  *See* Letter from Robert Bolling, Program Manager, Office IV AD/CVD Operations, to Oman Fasteners, LLC, A-523-808, ACCESS barcode 3232202-01 (Dep't of Commerce Oct. 1, 2014); Letter from Ronald M Wisla, Fox Rothschild LLP, *Finished Carbon Steel Flanges from India: Request for an Extension of Time*, A-533-871, ACCESS barcode 3796327-01 (Feb. 22, 2019).  Respondents did not provide an ACCESS barcode citation for the *Certain Steel Nails from Malaysia* document, *see* Pl.-Appellants' Br. 28, and Globe and Mississippi Silicon

*also* Tau-Ken Temir LLP (TKT) Fed. R. App. P. 28j Supplemental Authority to Feb. 28, 2023 opening brief ECF 30, ECF No. 53, June 26, 2023 ("TKT June 26 28j Letter"), at 2.  Their examples do not indicate that Commerce has a practice of accepting untimely-filed responses, as Respondents seem to suggest.  *See* Pl.-Appellants' Br. 23.

The Trade Court correctly observed that Respondents' argument "ignores any factual distinctions between those prior proceedings and the underlying investigation."  Appx78.  In many of those proceedings, the respondent submitted a timely extension request shortly before the deadline or otherwise promptly contacted Commerce, and Commerce granted an extension either before deadline or shortly thereafter.  *See* Pl.-Appellants' Br. 23–26, 28–29; TKT June 26 28j Letter at 2.  There is no indication that any of the responses that were ultimately submitted in those proceedings was incomplete, as TKT's was.

As the Trade Court concluded, those decisions demonstrate that "Commerce has an administrative 'practice' to treat extensions on a case-by-case basis."  Appx79.  Respondents have provided no authority

---

are unable to identify any such document.  Respondents also list *Cold-Rolled Steel Flat Products from Korea* twice.  *See id.* at 29.

to support their argument that "because Commerce 'can' grant an extension in certain scenarios, it 'must' grant them in others, and that the timing of the filing is the only dispositive factor."  Appx79.

This Court previously rejected a similar argument in *Dongtai Peak*, noting that "Commerce also routinely rejects untimely-filed submissions."  777 F.3d at 1352.

## III.   COMMERCE'S APPLICATION OF TOTAL AFA TO TKT WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IN ACCORDANCE WITH LAW

Commerce's application of total AFA to TKT based on TKT's failure to file its response in its entirety before the deadline was reasonable, supported by substantial evidence, and in accordance with law.

Commerce "shall" use "facts otherwise available" ("FA") if:

(1) "necessary information is not available on the record," or

(2) a party "withholds information" requested by Commerce, "fails to provide such information by the deadlines . . . or in the form and manner requested," "significantly impedes" the proceeding, or provides information that "cannot be verified."

19 U.S.C. § 1677e(a)

Commerce "may use" an adverse inference (*i.e.*, AFA) where a party "has failed to cooperate by not acting to the best of its ability to

43

comply with a request for information." 19 U.S.C. § 1677e(b)(1)(A).

This Court has explained that:

> Compliance with the "best of its ability" standard is determined by assessing whether a respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation. While the standard does not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping.

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).

In *Dongtai Peak*, this Court found that a party's failure to submit a questionnaire response before the filing deadline "warranted application of AFA." 777 F.3d at 1356. The Court reasoned: "Because Dongtai Peak was aware of the deadline and had the opportunity to file an extension request prior to its expiration, its failure to do so indicates an inattentiveness or carelessness with regard to its obligations." *Id.* at 1355–56.

Similarly, here, Commerce expressly:

(1) notified TKT of the deadline,

(2) stated that the deadline would apply unless Commerce actually granted an extension in writing,

    (3)   instructed TKT to "promptly notify" Commerce officials of any filing issues,[11] and

    (4)   warned TKT that failure to submit a timely response or properly request an extension "may result in the application of partial or total facts available, . . . which may include adverse inferences," and in a conclusion that TKT "decided not to cooperate in this proceeding."

Appx604–607, Appx611, Appx614, Appx618, Appx1142.

TKT was aware of the deadline and the consequences of an untimely filing. *See* Appx71. TKT had ample opportunity to file an extension request early enough for Commerce to consider it and to contact Commerce officials about its technical filing issues, consistent with Commerce's instructions, but TKT failed to do so. *See* Appx72–73, Appx75; *see also Neo Solar Power Corp. v. United States*, 190 F. Supp. 3d 1255, 1261, 1263 (Ct. Int'l Trade 2016) (concluding that the respondent "could have ameliorated harm caused by technical problems by taking 'reasonable measures,'" including "contact{ing} the ACCESS Help Desk before the deadline expired to receive assistance," and "made not one slip-up but at least three errors, failure to plan for contingencies, failure to call for help on {the deadline}, and failure to

---

[11] Commerce did <u>not</u> instruct TKT not to call Commerce, as Respondents suggest. *See* Pls.-Appellants' Br. 10, 12.

call on" the next day).  TKT failed to file the response by the deadline or 8:30 a.m. the next day under the *Final Rule*.  *See* Appx75.

TKT also failed to provide complete information, as it never filed an important exhibit necessary for Commerce's subsidy analysis and verification and reconciliation of other information on the record.  *See* Appx1410, Appx1975, Appx2438.  TKT further failed to proffer the missing exhibit after realizing its error.

Accordingly, TKT withheld requested information, failed to provide information by the deadline, and significantly impeded the proceeding.  Commerce properly resorted to FA under 19 U.S.C. § 1677e(a)(2)(B)–(C).  *See* Appx214.  Moreover, Commerce had to use FA under 19 U.S.C. § 1677e(a)(1) because necessary information was not available after Commerce properly rejected TKT's untimely and incomplete response and removed it from the record. *See* Appx82, Appx214.

TKT was inattentive or careless with regard to its obligations, did not put forth its maximum effort to provide Commerce with full and complete answers, and failed to cooperate to the best of its ability with Commerce's request for information in the initial questionnaire.  *See*

46

Appx75, Appx82–85.  Commerce's application of total AFA to TKT was supported by substantial evidence and in accordance with 19 U.S.C. § 1677e(b)(1)(A) and the case law.

Respondents' contention that that there is no substantial evidence that TKT received any subsidies, *see* Pls.-Appellants' Br. 38–40, is incorrect.  The GOK's initial questionnaire response indicated that TKT benefited from at least two subsidy programs: the Property Tax Exemption and the Land Tax and Land Use Fee Exemption.  *See* Appx1243–44, Appx1247–48, Appx1250–51, Appx1255, Appx2201–2202.  Of course, the record does not contain the information necessary to determine the extent to which TKT actually benefited from the subsidies under investigation, including those two programs, because Commerce properly rejected TKT's untimely and incomplete questionnaire response, which is precisely why application of total AFA was warranted.  The GOK's questionnaire responses also lacked necessary information and were unverifiable because the GOK failed to respond to Commerce's Verification Questionnaire.  *See* Appx193, Appx234–239, Appx244–245.

## IV.  COMMERCE PROPERLY APPLIED AFA BASED ON THE GOK'S FAILURE TO RESPOND TO THE VERIFICATION QUESTIONNAIRE

### A. The GOK Failed to Cooperate with Verification

In the Verification Questionnaire, Commerce requested information necessary to verify whether three programs — Provision of Electricity, Water, and Drainage Services for LTAR — were countervailable.  *See* Appx2312–2313.  Commerce also notified the GOK that failure to respond could result in a determination that the GOK "decided not to cooperate in this proceeding" and application of AFA. Appx2311.

The GOK's failure to respond to the Verification Questionnaire meant that the information the GOK previously submitted could not be verified, and was an independent basis for application of AFA.  *See* Appx193, Appx245.  Pursuant to 19 U.S.C. § 1677e(a)(2)(B)–(D) and (b), Commerce properly found that the GOK failed to provide information by the deadline or in the requested form and manner, significantly impeded the proceeding, provided information that could not be verified, and failed to cooperate to the best of its ability by not responding to the

questionnaire, and therefore applied AFA to conclude that the three programs were countervailable.  *See* Appx193, Appx244–245.

## B. Commerce Did Not End the GOK's Incentive to Cooperate

Respondents assert that Commerce "eliminated any reason or incentive for the Kazakh Government to further cooperate" because Commerce's rejection of TKT's response "effectively made clear that no matter what the Kazakh Government did, Commerce would reach the same result – i.e., a 160% adverse inference CVD import duty margin on Kazakh silicon metal."  Pls.-Appellants' Br. 35.   Respondents further assert that Commerce thereby undermined the "sole purpose" of AFA, "to incentivize cooperation with Commerce."  *Id.*  Respondents' assertions are factually and legally wrong.

First, in the preliminary determination, Commerce assigned TKT an AFA rate of 120 percent — not 160 percent.  *See* Appx2197, Appx2260.  Commerce preliminarily found that the Provision of Water and Drainage System Services for LTAR programs were not countervailable based on information the GOK provided in its prior questionnaire responses.  *See* Appx2207.  Commerce's preliminary findings indicate that Commerce would have considered and made

49

appropriate findings based on the GOK's response to the Verification Questionnaire in the final determination, if the GOK had submitted it. It would not have been futile for the GOK to respond to the Verification Questionnaire.

Second, incentivizing cooperation with Commerce is not the sole purpose of AFA. The cases Respondent cite, *Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012); *Olympic Adhesives, Inc. v. United States*, 899 F.2d 1565 (Fed. Cir. 1990); and *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 980 F. Supp. 485 (Ct. Int'l Trade 1997), *see* Pls.-Appellants' Br. 35–36, do not say this. To the contrary, "Congress explained, when discussing the legislative purpose of § 1677e, that Commerce 'may employ adverse inferences about the missing information to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully.'" *Habas*, 992 F.3d at 1354 (quoting Statement of Administrative Action accompanying the Uruguay Round Agreements Act ("URAA"), H.R. Rep. No. 103-316, vol. 1, at 870 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4199). Commerce <u>may</u> consider "the deterrent effect of" AFA. *Nan Ya*, 810 F.3d at 1348.

### C. Commerce Can Apply Adverse Inferences to a Foreign Government That Have Adverse Collateral Effects on a Company Respondent

Respondents argue that "Commerce cannot *per se* impose adverse inferences on a respondent company for actions of . . . a government." Pls.-Appellants' Br. 36.  Their argument ignores and is directly contrary to *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365 (Fed. Cir. 2014).

In *Fine Furniture*, this Court held that "on its face, the statute authorizes Commerce to apply adverse inferences when an interested party, <u>including a foreign government</u>, fails to provide requested information."  748 F.3d at 1371 (emphasis added).  The Court noted that "a remedy that collaterally reaches {a company respondent} has the potential to encourage the government . . . to cooperate so as not to hurt its overall industry."  *Id.* at 1373.  The Court concluded that "{a}lthough it is unfortunate that cooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent."  *Id.*

The Court's reference to the "overall industry," *id.*, indicates that the number of producers in the affected industry is irrelevant, even where, as here, there is only one, *see* Pls.-Appellants' Br. 37.  If anything, the collateral effects of AFA based on the GOK's failure to respond here are even less "unfortunate" because TKT, the sole producer, was not a cooperating respondent.  *See* Section III, *supra*.

Respondents cite two Trade Court cases: *Clearon Corp. v. United States*, 474 F. Supp. 3d 1339 (Ct. Int'l Trade 2020), and *Guizhou Tyre Co. v. United States*, 415 F. Supp. 3d 1402 (Ct. Int'l Trade 2019).  *See* Pls.-Appellants' Br. 36.   As the Trade Court noted below, Respondents' reliance on those cases "is misplaced."  Appx84.  Those cases addressed Commerce's factual findings regarding a program not relevant here — the Chinese government's Export Buyer's Credit Program.  *See Clearon*, 474 F. Supp. 3d at 1341; *Guizhou Tyre*, 415 F. Supp. 3d at 1403.  The Trade Court in those cases found that Commerce did not adequately explain why it could not verify non-use of the program based on the government's failure to provide requested information, when the record contained other evidence that the respondents did not use the program. *See Clearon*, 474 F. Supp. 3d at 1349–54; *Guizhou Tyre*, 415 F. Supp. 3d

at 1403–05.  In another case, when such evidence was <u>not</u> on the record,

the Trade Court <u>upheld</u> Commerce's adverse inference that a

respondent benefited from that <u>same</u> program where the government

refused to allow verification.  *See RZBC Grp. Shareholding Co. v.*

*United States*, 222 F. Supp. 3d 1196, 1199–1201, 1203, 1208–09 (Ct.

Int'l Trade 2017).

## V.    COMMERCE DETERMINED TKT'S TOTAL AFA CVD RATE UNDER THE APPLICABLE LAW AND ITS PRACTICE

Finally, Respondents complain that TKT's 160 percent total AFA

subsidy rate is "punitive."  Pls.-Appellants' Br. 37–39.  This Court has

recognized that an AFA rate "determined in accordance with the

statutory requirements is not a punitive measure."  *KYD, Inc. v. United*

*States*, 607 F.3d 760, 768 (Fed. Cir. 2010).  Commerce's calculation of

TKT's AFA subsidy rate comported with statutory requirements, and

therefore, was not punitive.

### A. Commerce Selected the Program-Specific AFA Rates in Accordance with the Statute and Its Established Practice

TKT's 160 percent subsidy rate reflects the sum of program-

specific rates that Commerce properly selected pursuant to 19 U.S.C.

§ 1677e(b)(1)(A), (d)(1)(A), and (d)(2) and its established practice.  *See*

Appx229, Appx245, Appx2196–2197, Appx2200–2206, Appx2209.

Respondents have not challenged Commerce's selection of the

individual program-specific rates.

Commerce properly selected an AFA rate for the Corporate

Income Tax Exemption program equal to Kazakhstan's standard

corporate income tax rate of 20 percent. *See* Appx2197. Commerce

applied an adverse inference that TKT paid no corporate income tax due

to its exemption, and therefore, the highest benefit TKT could have

received from the program was 20 percent. *See* Appx2197. Commerce

then applied that 20 percent rate as the AFA rate for each of the other

programs because that rate reflected the highest — and <u>only</u> — rate

calculated in a CVD proceeding involving Kazakhstan, consistent with

its practice. *See* Appx229, Appx2197.

This was actually the <u>second</u> CVD investigation regarding *Silicon*

*Metal from Kazakhstan. See* Appx2197 & n.44 (citing *Silicon Metal*

*from the Republic of Kazakhstan: Final Affirmative Countervailing Duty*

*Determination*, 83 Fed. Reg. 9831 (Dep't of Commerce Mar. 8, 2018),

and accompanying Issues and Decision Memorandum, *available at*

https://access.trade.gov/Resources/frn/summary/kazakhstan/2018-

54

04664-1.pdf ("*Silicon Metal I IDM*")).[12]  In the prior investigation,

Commerce applied total AFA to TKT, using the same methodology and

program-specific rates applied below.  *See id.*  Obviously, the prior

investigation put TKT and the GOK on notice of the possibility that

their failure to provide requested information could trigger total AFA,

how Commerce would select the program-specific AFA rates, and what

TKT's likely total AFA rate would be.  *See Silicon Metal I IDM* at 5–8.

### B. Commerce Did Not Need to Corroborate the Program-Specific AFA Rates, Which Were Based on Primary Information, or the Aggregate AFA Rate

The statute requires corroboration only where Commerce "relies

on secondary information rather than on information obtained in the

course of an investigation."  19 U.S.C. § 1677e(c)(1).  Here, Commerce

relied only on primary information obtained during this investigation —

*i.e.*, the corporate income tax rate reported by the GOK.  *See* Appx229.

Commerce properly determined that because "this tax rate is not

secondary information, it need not be corroborated."  Appx229.

---

[12] No CVD order was imposed in the prior investigation because the ITC issued a negative injury determination.  *See Silicon Metal From Australia, Brazil, Kazakhstan, and Norway*, 83 Fed. Reg. 16,382 (Int'l Trade Comm'n Apr. 16, 2018).

Even where corroboration is required, "the statute's corroboration requirement is program-specific." *POSCO v. United States*, 296 F. Supp. 3d 1320, 1352 n.47 (Ct. Int'l Trade 2018) (citing 19 U.S.C. § 1677e(c)). Accordingly, Commerce did not need to corroborate TKT's aggregate subsidy rate. *See id.*

Additionally, Commerce did not need to estimate what TKT's subsidy would have been if it had cooperated or demonstrate that the TKT's AKA rate reflected commercial reality. *See* 19 U.S.C. § 1677e(d)(3) (last amended on June 29, 2015). The statute states:

> If {Commerce} uses an adverse inference under {19 U.S.C. § 1677e}(b)(1)(A) in selecting among the facts otherwise available, {Commerce} is not required, for purposes of {19 U.S.C. § 1677e}(c) or for any other purpose—
>
> (A)    to estimate what the countervailable subsidy rate . . . would have been if the interested party found to have failed to cooperate . . . had cooperated; or
>
> (B)    to demonstrate that the countervailable subsidy rate . . . used by {Commerce} reflects an alleged commercial reality of the interested party.

*Id.*

## C. There Is No Basis in Law or Fact for the "Relief" Respondents Are Seeking

Respondents' arguments are divorced from reality. Despite the overwhelming body of authorities and evidence regarding TKT's and the GOK's separate failures to cooperate to the best of their ability detailed above, Respondents seek to escape <u>any</u> CVD liability <u>without ever providing complete information</u> in this investigation — something they could never achieve under the CVD law. *See* Pls.-Appellants' Br. 39–41. Respondents request extraordinary and inappropriate so-called "relief" in the form of an order from the court requiring Commerce to issue a negative CVD determination or impose no duties or cash deposits. *See id.* at 39–40. There is no legal basis for the "relief" Respondents seek.

Respondents rely on a single 34-year-old Commerce proceeding, which predates the URAA: *Final Determination of Sales at Less Than Fair Value: Certain Small Business Telephone Systems and Subassemblies Thereof From Taiwan*, 54 Fed. Reg. 42,543 (Dep't of Commerce Oct. 17, 1989), *aff'd*, *Auto Telecom Co. v. United States*, 765 F. Supp. 1094 (Ct. Int'l Trade 1991). *See id.* at 40. In that proceeding, Commerce decided to deviate from its standard practice in calculating the "All Others" AD rate assigned to producers and exporters of subject

merchandise that were not individually examined.  *See* 54 Fed. Reg. at

42,549–50.  That decision is irrelevant to TKT, which <u>was</u> individually

examined.  In fact, TKT is more similarly situated to the mandatory

respondent in that investigation, which declined to answer Commerce's

questionnaire and consequently received a "best information available"

(now AFA) rate.  *Id.* at 42,544, 42,550.

## CONCLUSION

For the foregoing reasons, the Court should affirm the Trade

Court's decision and affirm Commerce's final determination in all

respects.

Respectfully submitted,

*/s/ Adam H. Gordon*
Adam H. Gordon, Esq.
Jennifer M. Smith, Esq.
**THE BRISTOL GROUP PLLC**
1707 L Street, NW, Suite 570
Washington, DC 20036
202-991-2700

Dated:  August 28, 2023        *Counsel to Defendants-Appellees Globe*
*Specialty Metals, Inc. and Mississippi*
*Silicon LLC*

# <u>CERTIFICATE OF COMPLIANCE</u>

This response brief complies with the type-volume limitation of Rule 32(b)(1) of the Rules of the United States Court of Appeals for the Federal Circuit.

This response brief contains 10,684 words.

This response complies with the typeface requirements Rule 32(a)(5) of the Federal Rules of Appellate Procedure, and the typestyle requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure, in accordance with Rule 27(d)(1)(E) of the Federal Rules of Appellate Procedure.

This response has been prepared in a proportionally spaced type face using Microsoft Word in Century Schoolbook 14-point font.

<div style="margin-left: 40%;">

*/s/ Adam H. Gordon*
Adam H. Gordon, Esq.
Jennifer M. Smith, Esq.
**THE BRISTOL GROUP PLLC**
1707 L Street, NW, Suite 570
Washington, DC 20036
202-991-2700
*Counsel to Defendants-Appellees Globe Specialty Metals, Inc. and Mississippi Silicon LLC*

</div>

Dated:  August 28, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of August, 2023, a copy of the

foregoing brief was served on the following parties by operation of the

Court's electronic-filing system:

Brendan D. Jordan
Trial Attorney
**U.S. Department of Justice**
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Email: brendan.d.jordan@usdoj.gov


Peter John Koenig
Counsel
**Squire Patton Boggs LLP**
2550 M Street NW
Washington DC  20037
Email: peter.koenig@squirepb.com


/s/ Adam H. Gordon
Adam H. Gordon, Esq.
Jennifer M. Smith, Esq.
**THE BRISTOL GROUP PLLC**
1707 L Street, NW, Suite 570
Washington, DC 20036
202-991-2700

Dated: August 28, 2023    *Counsel to Defendants-Appellees Globe Specialty Metals, Inc. and Mississippi Silicon LLC*